*UNITED STATES DISTRICT COURT*

*SOUTHERN DISTRICT OF FLORIDA*

*MIAMI DIVISION*

| | |
|---|---|
| *BANK OF AMERICA, N.A.,* | *. Case No. 09-22384-CV-Jordan* |
| | *.* |
| *Plaintiff,* | *. Miami, Florida* |
| | *. August 28, 2009* |
| *v.* | *. 3:17 p.m.* |
| | *.* |
| *COLONIAL BANK AND* | *.* |
| *JOHN DOES 1-10,* | *.* |
| | *.* |
| *Defendants.* | *.* |

*. . . . . . . . . . . . . . . .*

*- - - -*

*Transcript of Preliminary Injunction and Motion Hearing had*

*before the Honorable Adalberto Jordan,*

*United States District Judge.*

*- - - -*

*VOLUME 1*

*- - - -*

*Proceedings recorded by mechanical stenography, transcript produced by computer.*

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)523-5568

APPEARANCES:

For the Plaintiff:     Martin L. Steinberg, Esq.
                       Patricia Acosta, Esq.
                       Jamie Z. Isani, Esq.
                       Hunton & Williams, LLP
                       1111 Brickell Avenue
                       Suite 2500
                       Miami, Florida  33131
                               and
                       Frank E. Emory, Jr., Esq.
                       Hunton & Williams, LLP
                       Bank of America Plaza, Suite 3500
                       101 South Tryon Street
                       Charlotte, North Carolina  28280


For the Defendant:     Jose I. Rojas, Esq.
                       Alejandro F. Hoyos, Esq.
                       Rojas Law Firm, LLP
                       Two Datran Center, Suite 1209
                       9130 South Dadeland Boulevard
                       Miami, Florida  33131
                               and
                       Susan Kantor Bank, Counsel
                       Legal Division
                       Corporate Goodwill Unit
                       Federal Deposit Insurance Corporation
                       3501 N. Fairfax Drive, Room D-7126
                       Arlington, VA  22226-3500


Court Reporter:        Francine C. Salopek, RMR, CRR
                       Official Court Reporter
                       United States District Court
                       400 North Miami Avenue, Room 10-1
                       Miami, Florida 33128-1807
                       (305)523-5568

                       -  -  -  -  -

1          **FRIDAY, AUGUST 28, 2009, 3:17 P.M.**

2          **THE COURT:**  Good afternoon.  Please be seated.

3          This is Case Number 09-22384, Bank of

4     America vs. the Federal Deposit Insurance Corporation in its

5     capacity as receiver for Colonial Bank.  If you could please

6     announce your appearances.

7          **MR. STEINBERG:**  Your Honor, Marty Steinberg, my

8     partner, Frank Emory, Patricia Acosta, and Jamie Isani from

9     Hunton & Williams for Bank of America.

10         **THE COURT:**  Good afternoon.

11         **MR. ROJAS:**  Good afternoon, your Honor.  Jose Rojas

12     of Rojas Law Firm, along with my partner, Alejandro Hoyos,

13     and also Susan Bank from FDIC, for the defendant FDIC as

14     receiver.

15         **THE COURT:**  Good afternoon.

16         **MR. ROJAS:**  Good afternoon.

17         **THE COURT:**  We're here on the hearing for a

18     preliminary injunction, and also on the FDIC's emergency

19     motion to dissolve the temporary restraining order.  That

20     issue's basically moot, because the TRO expires today.  So,

21     the real question is whether or not that TRO should be

22     converted into a preliminary injunction.

23         But given that you contend that there's no

24     jurisdiction, Mr. Rojas, let me hear from you first, and then

25     I'll let Mr. Steinberg, or someone else on his side, respond

1    before we get to the merits of the request for injunctive

2    relief.

3              **MR. ROJAS:**  Yes, your Honor.  Thank you very much.

4              Essentially, your Honor, what -- we're seeking the

5    dissolution of the TRO, as well as the nonextension of it as

6    a preliminary injunction, on the basis of the lack of subject

7    matter jurisdiction by the Court pursuant to the very express

8    dictates of Congress, as enacted in 12 U.S.C.,

9    Section 1821(j).

10             By way of background, the FDIC is here not in its

11   corporate capacity or regulator capacity, but in its receiver

12   capacity.  FDIC was appointed by the state authority of

13   Alabama to be receiver for Colonial Bank, which is the

14   largest bank failure of the 81 that we've had so far this

15   year, involving over $26 billion in assets.  On August 19th,

16   the FDIC came into this case and was substituted as a

17   receiver instead of Colonial Bank.  The FDIC is an

18   independent agency of the United States government where

19   specifically it's created under the FDIC Act at Title 12,

20   Sections 1811 through 1833.

21             And the functions of the FDIC as a receiver were

22   codified in a comprehensive framework by the U.S. Congress.

23   Under the law, it's known as FIRREA, or the Financial

24   Institutions Reform, Recovery and Enforcement Act of 1989.

25             What FIRREA does -- it's somewhat analogous of the

1    Bankruptcy Act.  It's a comprehensive scheme that governs the

2    entire function of the FDIC as a receiver, and provides

3    certain specific special powers to the FDIC that are very

4    broad with regard to taking over a failed institution,

5    managing the affairs of the institution, liquidating assets,

6    dealing with claims, and essentially doing everything that is

7    necessary in order to liquidate and to deal with the failure

8    of a bank.

9             Now, these special powers include several specific

10   things, including the transfer of any assets or liability of

11   the institution, payment of all valid obligations, payment of

12   creditors' claims in such manner and amounts as it determines

13   to be proper.  These are all laid out specifically by

14   Congress at 1821(d)(2)(B), (E), (G), (H), and then also at

15   1821(d)(10).  So, these are express powers that Congress has

16   seen fit to specifically clothe the FDIC with and say that

17   this is what it shall do as a receiver in performing its

18   functions.

19            Essential to the statutory scheme is that the FDIC

20   have the ability to carry out these basic functions and

21   exercise these special powers free from judicial restraint.

22   And what Congress did was it enacted another subsection,

23   1821(j), which provides as follows:

24            "Except as provided in this section, no court

25       may take any action, except at the request of the

1       board of directors by regulation or order, to

2       restrain or affect the exercise of powers of -- or

3       functions of the agency" -- in this case, the

4       FDIC -- "as a conservator or receiver."

5           **THE COURT:**  So, you believe that provision prevents

6   a federal court from telling the FDIC anything at all in its

7   receivership capacity?

8           **MR. ROJAS:**  With regard to those areas that are

9   specifically enumerated under FIRREA, under 1821, yes.

10          **THE COURT:**  Okay.  Does the FDIC's receivership

11  powers involve safety deposit boxes and what's contained in

12  them?

13          **MR. ROJAS:**  The specifics of the safety deposit

14  boxes and what's contained in them, I don't know that that's

15  specified in the subsection of the Act, but managing the

16  assets, gathering the assets, determining whether there are

17  claims to those assets --

18          **THE COURT:**  Assume that someone doesn't trust the

19  banking system and has stuck a pile of money into a safe

20  deposit box, they now want to get it.  Is that within the

21  FDIC's receivership capacity?

22          **MR. ROJAS:**  It would come within the ambit of the

23  assets of the bank to be determined.  And if there are

24  claims --

25          **THE COURT:**  FDIC decides that it's going to hold a

```
 1    fire sale and just give someone's hundred thousand dollars in

 2    a safety deposit box out to the next person who walks in the

 3    door.  Does a federal judge have authority to restrain that

 4    action?

 5            MR. ROJAS:  The federal court would have authority

 6    only after a certain procedure, similar to bankruptcy, where

 7    there's a claims process --

 8            THE COURT:  No, no, that's not my question to you.

 9            MR. ROJAS:  Yes, your Honor.

10            THE COURT:  The FDIC -- I'm giving you an extreme

11    set of hypotheticals, but that's because I want to try to

12    find out how far your argument goes.

13            Assume the FDIC finds a hundred thousand dollars in

14    a safe deposit box, and it has irate customers.  And in order

15    to satiate those customers and prevent a run on the bank, a

16    literal run on the bank, it decides that it's going to give

17    out that hundred thousand dollars in $5,000 increments to the

18    first 20 people who show up at the bank's doors.  The client

19    to whom that money belongs files an action to restrain the

20    FDIC in its receivership capacity from doling out the money

21    as it sees fit.  Do I have authority to enjoin that action?

22            MR. ROJAS:  The answer is no, your Honor, you would

23    not have authority.  It would be beyond your subject matter

24    jurisdiction, and that's why --

25            THE COURT:  The FDIC decides that it's going to
```

1  level the bank, just tear it down, leave nothing in its wake.

2  Do I have authority to restrain the FDIC?

3        **MR. ROJAS:**  I'm not sure that dealing with the

4  building process is specified in the Act.  If it is, then the

5  answer would be no, you would not have authority, your Honor.

6  It would be beyond the subject matter jurisdiction.

7        **THE COURT:**  The FDIC decides that it is going to

8  trim staff because it needs to conserve resources.  It

9  decides to do so in a racially discriminatory manner, and it

10  says that it's going to fire all Hispanics, or all blacks, or

11  all women, or all blacks, or all people of a certain age.  Do

12  I have authority to restrain the FDIC?

13        **MR. ROJAS:**  No, your Honor, you would not have

14  authority to restrain the FDIC.

15        **THE COURT:**  So, the answer --

16        **MR. ROJAS:**  That doesn't mean there may not be some

17  consequences thereafter, but --

18        **THE COURT:**  So, the answer to my question is that

19  there is no authority on behalf of any federal court to

20  restrain anything the FDIC does in its receivership capacity.

21        **MR. ROJAS:**  If it's in the receivership capacity,

22  and those areas are specified in the enumeration of 1821 --

23  it's a very lengthy and complicated -- and I have not

24  committed it to memory -- but if it's within the provisions

25  of 1821, under FIRREA --

1      **THE COURT:**  18 --

2      **MR. ROJAS:**  -- then the answer is absolutely.

3      **THE COURT:**  Okay.

4      **MR. ROJAS:**  You do not.  It would be beyond the

5  jurisdiction.

6          And that is what the Eleventh Circuit has said in

7  the Bursik vs. One Fourth Street North, Ltd., case, reported

8  at 84 F.3d 1395, in 1996.  In that case, the Eleventh Circuit

9  adopted the district court decision.  And what the district

10  court decision had specifically said is that the Court could

11  not restrict by injunctions or other equitable relief the

12  agency, when the agency acts as a receiver or conservator --

13  and I'm reading here -- "even if the agency violates its own

14  procedures or behaves unlawfully."

15          So, some of the examples your Honor was bringing in

16  the extreme case to focus the issue dealt with acting

17  unlawfully, such as discrimination and so forth.  The

18  Eleventh Circuit has expressly said even if it behaves

19  unlawfully, it is beyond the subject matter jurisdiction, not

20  because it thinks it's right, but because that's what

21  Congress has said.  Now, that doesn't mean there may not be

22  other avenues or other remedies down the road that would have

23  to be -- or might be available to somebody.  As in this case,

24  would be the case for Bank of America.  There is a procedure.

25          And, in fact, interestingly enough, they have

```
 1   provided in their notice of supplemental authority the case

 2   of Merrill Lynch.  And that Merrill Lynch case shows that the

 3   very issue of determination of whether or not a deposit was a

 4   special deposit or a general deposit, to which if it's a

 5   general deposit, it would be a general asset of the bank,

 6   versus a special deposit, like a trust account, that that is

 7   something that is determined under the FIRREA,

 8   Section 1821(d)(3) through (13), that's similar to the

 9   Bankruptcy Code provisions of priorities and other areas.

10         And, further, there is a provision in 1821(d)(6)

11   that allows this Court, or any -- the Court with proper

12   jurisdiction and venue, to consider and determine whether or

13   not the FDIC improperly applied the law.

14         So, it's not that there's no remedy; it's just when

15   is the remedy available and how is it available?  And there

16   are procedures that have to be followed by people like Bank

17   of America to set up their rights to then perfect them and

18   then bring any claims that they would have.

19         What they cannot do, and what Congress has made

20   clear, is to have the FDIC have to try to come in and triage

21   these failed institutions dealing with injunctive remedies

22   throughout the country, because essentially that's what would

23   be happening otherwise.  Creditors would be running to banks,

24   to courts to try to get injunctive relief, to try to

25   interfere, to get specific performance, to get equitable
```

```
 1   relief, injunctions, et cetera, and the FDIC would have its

 2   hands tied.

 3          So, for that reason, Congress has allowed -- or

 4   specifically provided that the courts should not have

 5   jurisdiction to grant that type of relief.  It's not to say

 6   that we're ousting -- or that Congress is ousting forever the

 7   jurisdiction of the courts to have some oversight, but only

 8   at this stage.

 9          And what's happening right here in this case is

10   that the TRO was entered, if it's continued and specifically

11   applied to FDIC, it would be tying the hands of the FDIC, and

12   it would be, in effect, trying to give Bank of America a

13   superpriority or some kind of an advantage over people that

14   may be similarly situated.  There may be 20 or 30, who knows,

15   other creditors that might be in a similar boat as Bank of

16   America, but why should they have an advantage over any other

17   creditor?  They have to go through the procedures.

18          So, for those reasons, your Honor, we would ask

19   that --

20          THE COURT:  Because Bank of America says that it's

21   not a creditor --

22          MR. ROJAS:  Well --

23          THE COURT:  -- in the ordinary sense of the word.

24          MR. ROJAS:  That remains to be determined.  That's

25   part of what this process is about.
```

1              **THE COURT:** Well, I know, but I'm saying that's

2     their allegation.

3              **MR. ROJAS:** Well --

4              **THE COURT:** Their contention is that all Colonial

5     Bank was doing was holding the funds, and because certain

6     contingencies didn't occur, they were required to return the

7     funds or disburse them. And so, in a sense, Colonial Bank

8     never owned the funds in a normal possessory way. That's at

9     least the argument.

10             **MR. ROJAS:** Although in their response motion, I

11    think they make the allegation, which is the issue that has

12    come up in all fairness, that these funds aren't necessarily

13    identifiable. And as your Honor knows, the law is, as clear,

14    that we have cash that's commingled; it's not specifically

15    traceable. It's not usually the type of thing that's subject

16    to injunctions anyhow.

17             But to the extent that that may have been the case

18    here -- and this is part of the sorting out process that FDIC

19    has to go through -- if these funds were not put into a

20    specifically identified segregated account, then they're

21    commingled in there generally with all the general assets and

22    funds of the bank, that's not something that can be easily

23    identified.

24             And that's -- you know, it's a trace and try to

25    forensically identify which funds came from Freddie Mac and

1   were entitled to be paid over to Bank of America, is part of

2   the process that would have to be undertaken by FDIC and part

3   of the claim process that Bank of America can pursue, as the

4   Merrill Lynch folks did in that case.

5            For those reasons, Judge, we would ask that you

6   adhere to -- by the way, all the decisions in the Eleventh

7   Circuit, including decisions from Judge Moreno here,

8   Judge Gonzalez, everything in the Southern District, as well

9   as the Bursik case I cited, and another case which is RPM,

10  which is also an Eleventh Circuit decision, has acknowledged

11  the validity of 1821(j).  And specifically, even though in

12  the case acknowledged by RPM -- let me back up.  RPM, which

13  is an Eleventh Circuit case, cites to another decision,

14  Freeman vs. FDIC, that is 56 F.3d 1394, D.C. Circuit, 1995.

15  And I think it's very illustrative and instructive what the

16  D.C. Circuit said in that case, which was acknowledged by the

17  Eleventh Circuit in RPS (sic), and that is the following.

18  The Court wrote:

19            "Although this limitation on courts' power to

20        grant equitable relief may appear drastic, it

21        fully accords with the intent of Congress at the

22        time it enacted FIRREA in the midst of the savings

23        and loan insolvency crisis to enable the FDIC and

24        the Resolution Trust Corporation, RTC, to

25        expeditiously wind up the affairs of literally

1    hundreds of failed institutions throughout the

2    country."

3         That's cited at page 622 by the Eleventh Circuit in

4    the RPM case, where the Eleventh Circuit acknowledged that in

5    disposing the assets of a bank, the agency is performing a

6    routine receivership function, and that it lacked

7    jurisdiction to restrain or affect the agency's exercise of

8    its statutory powers.  That rationale and public policy, as

9    seen by Congress back with the savings and loan crisis days,

10   applies with equal force today in today's economic

11   environment.

12        Accordingly, we respectfully submit that the Court

13   is without subject matter jurisdiction to, at this point in

14   the proceedings, enter any kind of injunctive remedy or any

15   other order that would affect the functions or the powers of

16   the FDIC under the specific provisions of FIRREA and 1821.

17        Thank you, your Honor.

18        **THE COURT:**  All right.  Thank you very much,

19   Mr. Rojas.

20        **MR. STEINBERG:**  Your Honor, may we approach?

21        **THE COURT:**  Yes.

22        Thank you.

23        **MR. STEINBERG:**  Judge, I think the primary issue

24   here is what is the receivership estate and what does it

25   contain?  Of all the cases cited to you by the FDIC, they've

```
 1    cited no case whatsoever about a bank holding assets merely
 2    as a bailee for a temporary occasion and then having to
 3    return them, i.e., your analogy about the safety deposit box.
 4    They're not holding them as a deposit.
 5          Now, just an analogy is, let's say there's a
 6    consignment dealer, and the consignment dealer sells people's
 7    products for a percentage.  It's like what Colonial did.
 8    Someone wants to sell their stereo, and they call the
 9    consignment dealer and say, "I'm going to give you my stereo,
10    you'll sell it for me, but if you don't sell it within 30
11    days, return it."
12          The consignment dealer enters into a written
13    agreement, they agree to take it, they're a bailee, and they
14    agree if they can't sell it within 30 days, they return it.
15          Thirty days passes and they don't sell it or return
16    it.  The person who gave them the stereo calls them and
17    says -- or faxes them and says, "Look, I only gave you 30
18    days, you're terminated as my consignment agent; I want my
19    goods back."
20          The consignment agent dies.  The receiver or
21    executor of the estate finds the stereo in his garage, and he
22    says it's the asset of the estate.  If the owner of that
23    stereo sues for the return of that asset, it's obvious what's
24    going to happen.  That asset will be returned to the owner of
25    the stereo, because that consignment agent only had a bailee
```

1    relationship.  They had no legal or possessory right to that

2    product.  And that's what we have here.

3         In fact, if you look at the findings made by this

4    Court on the TRO stage, interpreting the unambiguous written

5    agreements, the bailee letters, the termination letters, as a

6    matter of law -- and those findings have not been disputed by

7    the FDIC.  There's no contrary evidence in the record

8    whatsoever.  And those findings were that pursuant to the

9    bailee letters governing the parties' relationship, Colonial

10   would hold possession of the mortgages and the related

11   documents pending Freddie Mac's review of the loans.

12        Second, for each loan that Freddie Mac rejected or

13   refused to purchase, Colonial was obligated to return the

14   mortgage to Bank of America.  In no event was Colonial

15   permitted under the agreement to hold the sale proceeds or

16   the notes at issue for more than 15 days.

17        The Court also found that on August 11, Bank of

18   America sent a letter revoking and terminating this bailee

19   relationship and demanding all of the sale proceeds come

20   back.  That was before there was any receivership, before the

21   FDIC was appointed receiver, or they entered this case.

22        The Court also found that Colonial maintained a

23   clear contractual obligation to return to Bank of America

24   more than $1 billion in assets, but has to this point

25   rebuffed the request by Bank of America.

1        And finally, the key finding, more importantly, the

2   injunctive relief sought by the Bank of America poses very

3   little threat to Colonial, given that Colonial maintains only

4   a temporary custodial interest in the assets at issue and no

5   right to long-term possession.  In other words, no real harm

6   can come to Colonial by enjoining it from encumbering or

7   transferring money that does not belong to it in the first

8   place.

9        And that's exactly our point.  This is not going to

10  be a run on the bank by all the creditors, because we're not

11  a creditor.  These funds, these assets, these loan documents

12  never belonged to Colonial.  The bailee relationship was

13  terminated.  Those assets never entered the receivership

14  estate.  Any injunction you enter, Judge, would not be

15  enjoining the FDIC as a receiver, because they can only act

16  as a receiver to assets that are legitimately and legally

17  within the receivership estate.

18        **THE COURT:**  But isn't that a decision the FDIC gets

19  to make in the first place?

20        **MR. STEINBERG:**  No, your Honor.  Under the Merrill

21  Lynch case we've cited to you, the Court in that case held

22  that that decision could not be a decision by the FDIC.

23        **THE COURT:**  Ultimately.

24        **MR. STEINBERG:**  That the Court would make that

25  decision.

1        **THE COURT:**  Right.   In the end, I agree with you.

2   But the difference is between injunctive relief at the front

3   end and the summary judgment at the back end, which gets you

4   damages, if your argument is ultimately correct.

5        **MR. STEINBERG:**  Well, your Honor --

6        **THE COURT:**  The language of -- everything you said

7   about the facts I accept, because there has been no challenge

8   by the FDIC to the documents or evidence you submitted, or to

9   my TRO order, which was entered before the FDIC came in as

10  receiver.   Their only argument is that under 1812(j) (sic),

11  now that they are in as receiver, I don't have the power to

12  issue an injunction, because that money, which Bank of

13  America claims belongs to it, is within Colonial Bank, and is

14  within the universe of assets that the FDIC is administering

15  as a receiver.

16       **MR. STEINBERG:**  Well, your Honor, actually, the

17  case law is, under Sharpe and Merrill Lynch, that the Court

18  can enjoin the FDIC if the FDIC is acting above and beyond

19  its duties and responsibilities as a statutory receiver.  And

20  here, since the assets have never reached the receivership

21  estate, and do not belong in the receivership estate, they

22  are not acting as a receiver for those assets.

23       **THE COURT:**  Well, what's the best definition you

24  have of the receivership estate that supports your position?

25       **MR. STEINBERG:**  Well, your Honor, actually, the

```
 1   definition of a receivership estate also comes from
 2   admissions by the FDIC in this particular case, where the
 3   FDIC says that they only have authority over disposition of
 4   the assets in the receivership estate, which is exactly what
 5   they claim they're doing here, which they define as the
 6   "assets of the bank."  Clearly, a bailment is not an asset of
 7   the bank.  The hornbook --
 8          THE COURT:  It's a temporary asset.  It's carried
 9   on its books until it disposes of it, right?
10          MR. STEINBERG:  I don't buy -- I do not believe so,
11   your Honor.  I believe under --
12          THE COURT:  If someone went to Colonial Bank at the
13   time that it was holding these billions of dollars, they
14   couldn't find any evidence of it anywhere on Colonial's
15   books.
16          MR. STEINBERG:  Well, they would find an accounting
17   for it.  How they accounted for it may be -- I would assume
18   would be different and distinct as to how they account for
19   depositors' money, because it's not depositor money.  If you
20   look at the bailment laws of any state, the bailment laws of
21   any state says basically it's only a right to temporary
22   possession with immediate response to the bailor, if the
23   bailor requests the funds back or terminates the bailment.
24          So, they have no possessory or legal right to these
25   funds.  They're merely holding them for some -- in this case,
```

```
 1   to vet them for the final purchaser.  They had no legal right
 2   to the funds.  Any right they had under the bailment was
 3   terminated before they became a receiver, clearly.  It was
 4   before this case was filed.
 5           So, those assets don't belong in the receivership
 6   estate.  And they aren't acting as a receiver with respect to
 7   those assets.
 8           THE COURT:  Well, how is your situation different
 9   from a creditor who contends that money is being held
10   unlawfully by Colonial?  For example, someone who wanted to
11   transfer money from a Colonial account to another bank
12   through a wire transfer, had sent in the request, and yet
13   Colonial was holding on to it after they had agreed to submit
14   the wire request?  The claim would be, although not exactly
15   like yours, that Colonial no longer had any interest in those
16   funds, because they were being transferred to another
17   financial institution.  How is your situation different?
18   Legally different?
19           MR. STEINBERG:  The difference here, your Honor, as
20   stated in the Merrill Lynch case and the Sharpe case, is
21   because there was a specific written contract that
22   established a bailee relationship.  And essentially the
23   Merrill Lynch case stated that when you have such a
24   relationship, deposits such as bailments are not the property
25   of the bank, and those deposits, quote, "do not become part
```

1    of the receivership estate."  That's a quote from the case.

2              So, if those assets do not become a part of the

3    receivership estate by definition, then the FDIC is not

4    acting as a receiver with respect to those assets.  And under

5    the Sharpe case, if they're acting beyond the scope of their

6    authority as a statutory receiver, you can enjoin them.  And

7    so, if they have no right to the assets, which they don't

8    here -- they haven't contested any of the facts.  They

9    haven't put one fact in the record.  They haven't contested

10   your interpretation of these unambiguous documents.  And your

11   interpretation is Colonial Bank had absolutely no right to

12   these assets, and the assets must be returned to Bank of

13   America.  They don't contest that.  They merely say that

14   because they were appointed as a receiver on XYZ date, now

15   the landscape changes.  But it's too late.  All of those

16   events happened before they became a receiver.  The bailment

17   was terminated.  Our right to possession of those assets

18   became ripe before they became a receiver.

19             And that's exactly what Merrill Lynch and Sharpe

20   say.  They can't change the landscape just because they

21   became a receiver.  Either the assets are part of the

22   receivership estate or they're not.  And here, you found

23   they're not.  They haven't contested it.

24        **THE COURT:**  No, I didn't make any findings about

25   the estate, because there was no estate at the time.

```
 1            MR. STEINBERG:  Correct.  Well, you said they
 2   didn't belong to Colonial.
 3            THE COURT:  Correct.
 4            MR. STEINBERG:  And, remember, they can only step
 5   into the shoes of Colonial.  They only get the assets of
 6   Colonial.  They don't get anything else.  So, if it wasn't an
 7   asset of Colonial, which you found, they haven't contested
 8   that, then it can't, by definition, become an asset of the
 9   receivership.  That's -- there is no argument they've
10   proposed for that.  And they have no case, Judge -- we've
11   cited two cases for the proposition that assets that did not
12   become part of the receivership estate, like bailments, that
13   the FDIC can be enjoined.  They've cited no case for the
14   proposition that they as a receiver can't be enjoined in a
15   case where there's a bailment or a temporary custody that
16   must be returned.  There is no such case, for obvious
17   reasons.
18            In fact, your Honor, the Merrill Lynch case said
19   that where there is an existence of a written agreement --
20   and ours, by the way, is much stronger than the Merrill Lynch
21   case, because that was like a bailment.  Ours is a bailment.
22   And ours is a stronger case, because we terminated the
23   bailment before there was any receivership.  But in that
24   case, the Court held that the existence of a written
25   agreement explicitly obligating the bank to hold the funds
```

1   for another while leaving legal title in that other party is

2   the dispositive issue as to whether it's a special account.

3   And, of course, ours is a special account.  It isn't

4   possessed by them legally or as to any other right of

5   possession.

6          And the Sharpe case essentially says exactly the

7   same thing, that to allow them to breach these

8   prereceivership obligations, they would be able to keep the

9   benefit of the bargain and escape the consequences by hiding

10  behind FIRREA.

11         Which is the question you ask, what if someone's

12  grandmother held all of their family jewels in a safety

13  deposit box and the bank failed, and the FDIC became a

14  receiver?  Can they claim those jewels as assets of the bank

15  and distribute them out or sell them as assets of the bank?

16  I don't think so.

17         Our second point is that even if these loan

18  proceeds and documents are assets of the bank, which we don't

19  believe there's any reasonable explanation they are, the FDIC

20  has stated quite clearly on page 6 of their motion that the

21  Bank of America is like any other creditor, and they have

22  mandatory administrative procedures.  And then at page 5,

23  they say that we're subject to the claims process, just like

24  anyone else, to seek a determination of our rights.

25         First, obviously, we don't agree we have to go

1  through the claims process, because they're not assets of the

2  estate.  But even assuming, for the sake of argument, that we

3  would, they have offered no explanation why they haven't

4  followed the claims process, as they're required to do, and

5  disbursed hundreds of millions of dollars to their fellow

6  government agencies, giving them some sort of preference over

7  private entities, during the pendency of this Court's TRO.

8  There's no provision that they've cited to in that statute --

9      **THE COURT:**  Well, that's not necessarily a

10  violation of the TRO.

11      **MR. STEINBERG:**  I'm sorry, your Honor?

12      **THE COURT:**  That's not necessarily a violation of

13  the TRO.  It may be a violation of their own claims

14  procedures, but not necessarily a violation of the TRO.

15      I presume Colonial Bank, although it was in

16  difficult financial straits, had funds in addition to those

17  Bank of America funds.

18      **MR. STEINBERG:**  Well, your Honor, we don't know.

19  All we know is that the FDIC has represented to the public

20  and to us that the funds of that bank have been commingled

21  and dissipated.  They were only in possession of the -- they

22  were only in the receivership for a few days before they

23  disbursed hundreds of millions of dollars to these government

24  entities.  I don't know how they could tell which funds are

25  which funds.  The statute requires them to file an accounting

1    when they disburse funds.

2         **THE COURT:**  I know, but all I'm saying is that may

3    be a violation of their statutory duties or of their own

4    internal claims procedures, but it's not necessarily a

5    violation of the TRO.  Because even if funds are commingled,

6    as long as they segregate the amount that was subject of the

7    TRO, any other disbursements are not in violation of the TRO.

8         **MR. STEINBERG:**  But they're claiming that they

9    haven't done that, Judge, that they haven't segregated our

10   assets.  They don't want to segregate our assets.

11        **THE COURT:**  Oh, I know that.

12        **MR. STEINBERG:**  They're not going to segregate our

13   assets.

14        **THE COURT:**  I know that, too.

15        **MR. STEINBERG:**  So --

16        **THE COURT:**  My only point is that a disbursement so

17   far, even in the hundreds of millions of dollars, doesn't

18   necessarily violate the TRO, not without knowing a lot more.

19        **MR. STEINBERG:**  And that's why they're supposed to

20   file an accounting with every disbursement.  But it could

21   violate the TRO.  We simply don't know.

22        But your TRO, Judge, was entered prior to the FDIC

23   being appointed a receiver, because there was substantial

24   risk that Colonial would take actions to dissipate or

25   commingle Bank of America's assets.  And then the FDIC came

```
 1    into the picture, and it appears they've taken steps that put

 2    at risk those very assets that your TRO was intended to

 3    protect.

 4              But someone -- they have to follow their own

 5    procedures, which they haven't to date.

 6              But more important than that, with all due respect

 7    to the FDIC's broad powers, we do not think they have the

 8    power to manage assets that never belonged to Colonial Bank.

 9    They have not disputed that finding by this Court that those

10    assets did not belong to Colonial Bank, and any right, even a

11    temporary possessory right, to those assets terminated before

12    they were appointed receiver.

13              So, any order you enter, Judge, would not be

14    restraining them as a receiver of receivership assets.  So,

15    we're asking the Court to first determine, as it already has,

16    that the Bank of America funds are not part of the

17    receivership estate and must be returned to Bank of America;

18    and in the meantime, to enter a preliminary injunction to

19    protect those assets.  And we believe you have the absolute

20    authority to do that under the case law we've cited to your

21    Honor.

22              Thank you.

23              THE COURT:  All right.  Thank you very much,

24    Mr. Steinberg.

25              MR. ROJAS:  Your Honor, if I may briefly reply.
```

```
 1              The two cases that counsel cites, the Sharpe case
 2   and the Merrill Lynch case, frankly, we believe exactly
 3   support the position that the FDIC is presenting here.  The
 4   Merrill Lynch was not an injunctive case.  Merrill Lynch was
 5   specifically an action that was brought for judicial review
 6   under FIRREA, under Section 1821(d)(6), and I read, it says:
 7              "Which provides for judicial review of
 8         administrative adjudications of claims decided by
 9         FDIC in its role as a receiver for defunct
10         financial institutions."
11              So, there you have the very case they're relying on
12   acknowledging that the determination to be made by the FDIC
13   as to whether the assets were special deposits which would
14   belong to -- in that case Merrill Lynch, or here Bank of
15   America -- is something that is an administrative
16   adjudication that is part of the role of receiver.  And it
17   provides under 1821(d)(6) for a judicial review subsequently
18   de novo.
19              In the Merrill Lynch case, the Court later came in
20   and disagreed with the FDIC's determination.  So, Merrill
21   Lynch was able to come in and obtain whatever relief it was
22   seeking at that time.  But what's clear in the case is that
23   there's an acknowledgment that it is part of that
24   receivership function, and where it is part of the
25   receivership function, then 1821(j) is clear that the Court
```

```
 1   cannot restrain or affect that proceeding.
 2          The second thing is the Sharpe case.  That involved
 3   a post-receivership agreement.  That was after FDIC came in
 4   and they entered into a subsequent settlement agreement, a
 5   post-foreclosure after a stay, and then after the agreement,
 6   FDIC was breaching that agreement.  That's totally different.
 7          Here, we're talking about --
 8          THE COURT:  Why?
 9          MR. ROJAS:  Because it was FDIC coming in as an
10   entity, not acting as a receivership performing its statutory
11   functions.  But entering into a post-receivership agreement
12   that then it fails to live up to is like having the Court
13   review this determination of Merrill Lynch.  That's an
14   after-the-fact thing.  Of course they can't operate beyond
15   the law.  That's never the contention here.  If there's a
16   post-receivership agreement, if FDIC were to today enter into
17   an agreement with Bank of America to do something, and then
18   fail to live up to it, of course Bank of America could come
19   to court and seek redress.  But that's not what's involved
20   here.
21          What's involved here are actions by Colonial Bank
22   taken on its own, and claims being made that arise from
23   before the receivership was created.
24          THE COURT:  I thought Sharpe referred to the FDIC
25   in its capacity as receiver.
```

```
 1              MR. ROJAS:  Well, in a capacity as a receiver, it

 2     then entered into a post-receivership agreement, and there

 3     is --

 4              THE COURT:  So what?

 5              MR. ROJAS:  Well, the courts have made a

 6     distinction as to whether we're dealing with a

 7     post-receivership or a pre-receivership --

 8              THE COURT:  Why does that matter?

 9              MR. ROJAS:  -- type of agreement.  Because --

10              THE COURT:  If your broad reading of 1821(j) is

11     right, it shouldn't make any difference.

12              MR. ROJAS:  Well, the truth is, the position that

13     we would take -- the FDIC would take is that 1821(j) still

14     should prevent that.  What I'm pointing out is that that

15     court in that case made the distinction because it was a

16     post-agreement.  That is not the facts here.  We believe

17     1821(j) is broad enough to cover even that.

18              THE COURT:  1812(j), right?  Isn't it --

19              MR. ROJAS:  12 U.S.C. Section 1821(j).

20              The FDIC says, "Well, our position is that it would

21     not -- that the Court was incorrect in that."  But the point

22     is, we don't need to directly challenge that issue here,

23     because these facts are different in this case than they were

24     in Merrill Lynch.  But they were different in a significant

25     way, in a way that what the Merrill Lynch court -- I'm
```

```
1    sorry -- in the Sharpe case, not Merrill Lynch -- the Sharpe
2    case, because it involved entering into an agreement after
3    the fact.  And, again, as I --
4            THE COURT:  What does "after the fact" mean?
5            MR. ROJAS:  Meaning like if today, after the FDIC
6    has been appointed as a receiver, and today FDIC enters into
7    a new agreement with Bank of America, and then ignores that
8    agreement, breaches that agreement, the question is, can they
9    do that with impunity after the receivership?  As opposed to
10   can the FDIC step into the shoes of Colonial subject to the
11   special powers that FIRREA specifically provides and be able
12   to exercise those powers free of any kind of injunctive
13   interference.  And that's a big difference.  Because one
14   thing is what they knowingly agreed to and knowingly accept,
15   and -- volitional element I guess is the big difference.
16           THE COURT REPORTER:  I'm sorry.  "And...."
17           MR. ROJAS:  And there's a volitional element.  It's
18   a big difference when FDIC is knowingly undertaking an
19   obligation versus saying, oh, you assume this, because you
20   stepped into it.
21           I mean part of the whole thing here that's clear is
22   FDIC has to get in there and sort this thing out.  I mean
23   they say that we didn't object to certain facts or challenge
24   facts.  FDIC has only been in there two weeks.  They're not
25   in the position --
```

```
 1          THE COURT:  I know, but you can ask for more time
 2   to do that.  I mean I can only rule on the record that I have
 3   in front of me.  And the motion you filed was on a legal
 4   basis.  So, as far as I'm concerned, those factual findings,
 5   at least right now, haven't been questioned and aren't being
 6   rebutted.
 7          MR. ROJAS:  And for purposes of this hearing,
 8   you're absolutely right, we're not questioning those facts.
 9   What we're saying is that doesn't mean we necessarily agree,
10   or may not at some point in time, if it's necessary or an
11   appropriate forum, have to address those.  Those could be
12   addressed by FDIC.  But FDIC is coming in here with two weeks
13   of being involved in this largest of all the bank failures of
14   the 81 that have happened so far --
15          THE COURT REPORTER:  I'm sorry.  You have to slow
16   down.
17          MR. ROJAS:  I'm sorry.
18          FDIC is coming in here stepping in with only two
19   weeks into the largest of the bank failures that have
20   happened so far this year of all 81.
21          THE COURT:  How much is held by Colonial right now
22   in total?
23          MR. ROJAS:  That -- we don't know.  I mean I think
24   the total assets were $26 billion that were the reported
25   assets.
```

1          Part of the process is for them to come in and go

2     through and do a forensic investigation and determine -- you

3     know, it's a normal appointment of a receiver.  A receiver

4     has to come in, marshal the assets, find out what assets may

5     be out there that belong to the bank that aren't in the bank

6     that need to be brought in; suits may need to be brought to

7     retrieve those assets, claims may be available against other

8     people.  Until all that process is gone through, the total

9     was not known.  And that's why there's an order we process

10    for that.  And the idea is to allow time for the FDIC to do

11    its job, to go out and then be able to marshal all those

12    assets and bring it out here.

13          **THE COURT:**  How far does the estate extend?

14          **MR. ROJAS:**  I'm not sure I understand your Honor's

15    question.

16          **THE COURT:**  How broad is the estate?  The

17    receivership estate?

18          **MR. ROJAS:**  Any asset that is --

19          **THE COURT:**  What's an asset?

20          **MR. ROJAS:**  Well, there are bank definitions as to

21    what's an asset, but anything --

22          **THE COURT:**  But what's the definition you're

23    relying on, and where can I find it?

24          **MR. ROJAS:**  It would be in the FDIC Act and in

25    FIRREA and under the banking laws.

```
1              THE COURT:  What is it?

2              MR. ROJAS:  I can't answer off the top of my head.

3   I haven't memorized that part of it, your Honor.

4              THE COURT:  No, that's okay.  I'm not asking you

5   for a rote memorization.

6              MR. ROJAS:  It's a term of art as to what's an

7   asset and what's a liability in banking.  There's also --

8              THE COURT:  No, I know there is in general banking,

9   but there may be specific definitions --

10             MR. ROJAS:  Right.

11             THE COURT:  -- with regards to the statutes that

12  govern the FDIC's role as a receiver.

13             MR. ROJAS:  Right.

14             THE COURT:  Do you know where in the 1800 series

15  those might be?

16             MR. ROJAS:  I don't know if Ms. Bank might happen

17  to know that, if she'll perhaps -- because she's with FDIC.

18             THE COURT:  Continue.  Just let me know before you

19  leave today where I can find those.

20             MR. ROJAS:  Absolutely.

21             The other point is, you know, the analogy is made

22  to the grandmother's asset and the estate being sold, or a

23  contingent dealer, those are totally different.  These are

24  not --

25             THE COURT:  I know, but it's the same principle.
```

```
 1   It just sounds worse, but it's the same principle.
 2            MR. ROJAS:  But the difference is that in those
 3   cases, there is no receivership by an entity that Congress
 4   has gone out of its way to say --
 5            THE COURT:  There is.  No, there is, because in my
 6   hypothetical, I made the FDIC come in and sell the lady's
 7   assets in the safe deposit box.
 8            MR. ROJAS:  Oh, yes, yes, and I agree, and we stand
 9   by that position that that is not something subject to
10   injunctive remedy or relief under 1821.  If it's something
11   that is within the ambit of the overall estate of the bank
12   that the FDIC has the responsibility to marshal and
13   distribute -- which, by the way, it may be that their -- you
14   know, that Bank of America is entitled to get every penny of
15   that.
16            I mean part of the role of the receiver coming in
17   here is to stabilize the horror story that they presented in
18   their TRO about banks with criminal allegations, and OIG
19   investigations, and so forth.  That's why the FDIC is in
20   here, is to come in and stabilize the situation, find out
21   what the assets are, and then have an orderly claims process.
22            And it may very well be that they get a hundred
23   cents on the dollar, if they prove their claim.  And if it's
24   misinterpreted by FDIC, they'll come, as did Merrill Lynch,
25   under 1821 and make whatever claim they want to make there.
```

1          Another key thing, though --

2          **THE COURT:**  But the receivership estate can't be as

3  broad as whatever the FDIC says it is, right?

4          **MR. ROJAS:**  Well, it's not what the FDIC says it --

5          **THE COURT:**  Let's imagine a Colonial Bank branch in

6  Birmingham, Alabama.  Okay?  With a parking lot.  And the

7  minute the FDIC comes in -- let's say it's noon on a given

8  day, a Friday, and the parking lot is jammed full, because

9  regular customers don't really know that the FDIC is coming.

10  So, the parking lot is full.  And the FDIC says, "Not only

11  are we taking over the bank, but we're taking over the cars

12  in the parking lot, too, because we think those are part of

13  the receivership estate, at least until we figure out where

14  everything is.  We don't know which cars belong to bank

15  employees, we don't know which belong to delivery persons who

16  are doing something at the bank, we don't know which ones

17  belong to customers.  So, we're taking over all the cars,

18  we're impounding all the cars."  People start filing lawsuits

19  left and right in Birmingham district court asking for their

20  cars back.  What does the district judge do?

21          **MR. ROJAS:**  And the answer to that is what the

22  cases have said, is as long as the FDIC is acting colorably,

23  so it has to be some colorable claim.

24          Now, the issue is -- and this is almost like, you

25  know, we get into -- this is probably a poor analogy, but

1    when we get into the question of the arbitrability (sic) of

2    an arbitration, does the arbitrator have a right to decide?

3         First, in this case, the question of whether or not

4    it is or isn't an asset of the estate is one that has to be

5    made first by the FDIC under the statutory scheme that

6    Congress has laid out.  And then if it determines it is not

7    an asset of the estate, then there are procedures under

8    1821(2)(D) (sic) to distribute that in due course to the

9    proper party.  If it determines that it is an asset of the

10   estate, as they did in Merrill Lynch, then there's a

11   procedure under 1821(2)(D)(6) (sic) for them to challenge

12   that in the courts with a de novo review.

13        **THE COURT:**  So, if the FDIC Monday decided that

14   this sum of money that Bank of America is going after was not

15   an asset of the receivership estate, I could enjoin the FDIC.

16        **MR. ROJAS:**  No.  At that point, it would not give

17   the Court subject matter jurisdiction to enjoin it.  At that

18   point, they would have a procedure by which it gets

19   disbursed --

20        **THE COURT:**  But then it's no longer acting in its

21   receivership capacity if it says it's not part of the estate.

22        **MR. ROJAS:**  Okay.  But the receivership --

23        **THE COURT:**  I'm trying to get my hands around how

24   broad this concept is.

25        **MR. ROJAS:**  I think anything that would appear --

1    and this is based on what -- the case law says that anything

2    that is colorably within the ambit of what the FDIC statute

3    provides, and FIRREA provides, is exempt from the injunctive

4    remedy, even in the Court feels it's unlawful, even if the

5    Court feels that it's violating its own procedure.

6           That's RPM case, the Eleventh Circuit.  Even if

7    your Honor were to feel that, it's still exempt from the

8    injunctive part under 1821(j).  It's not to say it's exempt

9    from other, perhaps, subsequent remedies, but it's exempt

10   from the injunctive relief based on 1821(j), and based on the

11   Bursik case, and based on the RPM case, at least in the

12   Eleventh Circuit.

13          So, that is the biggest distinction.  If at the end

14   of the day, the determination is made, it still requires a

15   time process.  So, even though there may be a determination

16   that it's an asset that the FDIC will concede is not

17   something that there's a general claim to and is subject to

18   being distributed with all the pool of creditors, there's

19   still a timing procedure of when those get paid out in the

20   disbursement.  And that's why in part, you know, it makes

21   sense what Congress has done to say, well, the FDIC will do

22   that, not subject to -- it shouldn't be compelled by a court.

23          **THE COURT:**  You can make the owner of those cars go

24   through that procedure once the FDIC determines that those

25   things are not assets of the estate?

1          **MR. ROJAS:**  Well, Judge --

2          **THE COURT:**  You're not going to hand them back the

3   keys?  And nobody can ask a court to make the FDIC give them

4   back the keys?

5          **MR. ROJAS:**  They will have a procedure.  I mean I

6   think there's a smell test, so to speak, here that you could

7   probably say it's not colorable, it wouldn't be a colorable

8   claim to some employee's car that -- now, if the employee of

9   the car payment was made by the bank (sic), I think that'd be

10  a colorable claim --

11         **THE COURT:**  No, I know.  That's why I said, and I

12  prefaced my hypothetical with all sorts of cars in very

13  different situations.  But, obviously, not all of those cars

14  belong to the FDIC or to Colonial.  So....

15         **MR. ROJAS:**  Right.

16         **THE COURT:**  So, no matter what the FDIC says,

17  people still have to go through the procedure.

18         If the FDIC had come into this case, and some

19  savant had figured out from day one that this money that BoA

20  is claiming did not belong to Colonial, was not an asset of

21  Colonial, and the FDIC had no business regulating it, could I

22  enjoin the FDIC?

23         **MR. ROJAS:**  And the answer is no.  And the good

24  reason for that --

25         **THE COURT:**  So it never ends.

```
 1          MR. ROJAS:  Well, the reason for that, your Honor,
 2   is because there's a further consideration.  It's not just
 3   the ultimate determination of is it an asset or isn't it an
 4   asset.  It's a determination of having the FDIC with its
 5   resources, limited or extensive, whatever they may be -- and
 6   I'm sure they would tell you it's limited -- given the
 7   circumstances, be able to go in and manage all these assets
 8   from all these banks.
 9          So, these are things that -- you know, otherwise
10   somebody can say, "Well, I've got -- you know, the
11   determination is easy to make right now, give me that money
12   now."
13          THE COURT:  Slow down, slow down.  You're going a
14   mile a minute.
15          MR. ROJAS:  I'm sorry.  That's my, you know --
16          THE COURT:  That's okay.  I come from the same
17   background.  We speak fast.
18          MR. ROJAS:  That's exactly right.
19          What we would be doing in that case, Judge, is we
20   would be interfering with the orderly process.  So, then it's
21   not really a question of interfering with title or
22   determination of title.  At that point what the issue becomes
23   is one of having an interference with the orderly process
24   that the FDIC has to do its job.
25          So, for that reason, Congress saw fit to say, let's
```

```
1   keep the private litigation running to get the emergency TROs

2   and injunctions out of this process.  Let the FDIC do its

3   job; let it do it in an orderly way.  There's a procedure for

4   this, and --

5        THE COURT:  See, the problem is that none of you

6   have case law that absolutely supports your position.

7   Because all of the cases you've cited stand for the broad

8   proposition that courts shouldn't interfere with the FDIC in

9   its receivership capacity by entering TROs or injunctions,

10  but none of them deal with a situation where the claim is

11  against an asset which doesn't belong to the receivership

12  estate.  The two cases that Bank of America cites deal with

13  that specific situation, and end up indicating that ultimate

14  relief is available, but don't involve injunctive relief.

15  So, you've both got the void right in the middle.

16       MR. ROJAS:  Except that we would submit to the

17  Court that under the Bursik case, if you wanted to take that

18  as a more blanket application of the rule, I think it does.

19  I think what the Eleventh Circuit says in that case is even

20  if the Court feels that the FDIC is not complying with its

21  own procedures, even if it feels that it's acting

22  unlawfully -- I mean that's a pretty extensive and broad

23  statement to say, but that even if the Court were to find or

24  determine that the FDIC's acting unlawfully, it is still

25  without subject matter jurisdiction to enjoin or enter any
```

```
 1   kind of order that would affect the function --
 2           THE COURT:  I know, but holdings in cases have to
 3   be looked at in the context of the facts in those cases.  And
 4   the counterclaim in Bursik involved claims for injunctive
 5   relief to obtain specific performance of agreements entered
 6   into by the FDIC in its receivership capacity, not a
 7   situation like this one.
 8           So, I respect what the Eleventh Circuit said and
 9   how broad that language is, but it can't be completely
10   unmoored from the facts presented in that case.
11           MR. ROJAS:  Well, let me suggest to the Court the
12   practical reality here is -- and counsel has alluded to it --
13   the issue of these funds being potentially commingled, having
14   to go through that process of sorting out and trying to
15   determine what funds are which and how many other people may
16   have claims that the same thing has happened to them, that
17   funds were thrown in there and commingled.
18           Now, who -- if we're going to determine that Bank
19   of America gets that money first, versus some other creditor
20   who maybe also were entitled to have those funds separated
21   out and not commingled, but if they were -- and I mean I
22   think that's why they sued.  If you look at their complaint,
23   they sue for civil theft, they sue for conversion, they sue
24   for breach of contract.  So, if that's the case as to those,
25   you know, certainly those are creditor-type claims.  If that
```

```
 1   money was commingled, then Colonial did something wrong that
 2   they shouldn't have done.  They're standing in the shoes of
 3   creditors, and they're standing in the same shoes as other
 4   people that may have had this thing happen to them.
 5           And the problem with having the Court give them,
 6   just because they came ahead of the receivership process and
 7   filed, some kind of a superpriority to have this determined
 8   is the risk that then the statutory scheme that Congress saw
 9   as to putting everybody in the same classification, there are
10   other people in the same boat, they have to share pro rata
11   within these classes, that somehow they're going to get ahead
12   of the boat.  And that's --
13           THE COURT:  I know, but their claim is that they're
14   not in the same boat --
15           MR. ROJAS:  We don't know.
16           THE COURT:  -- and you're trying to force them into
17   the boat.
18           MR. ROJAS:  No, the problem is that we don't know.
19           THE COURT:  No, the problem is that right now, as
20   things stand on this record, we do know.
21           MR. ROJAS:  Well, the problem --
22           THE COURT:  Because what I have is their undisputed
23   submissions in support of a TRO, which so far have not yet
24   been challenged.
25           MR. ROJAS:  Well, I understand, your Honor.  First
```

1  of all, as far as the TRO, even though FDIC stands into the

2  shoes of Colonial, FDIC only stands in the shoes of Colonial

3  to the extent that it doesn't have these powers, and it does

4  have these powers.  So, the FDIC is not really bound by that

5  TRO provision or the findings of fact in that, because that's

6  what Congress has specifically pointed out.

7          And the Supreme Court in the Melvin case --

8          **THE COURT:**  But that's a different argument than

9  the one you were previously making.

10         **MR. ROJAS:**  It's a different argument than the one

11 I was making --

12         **THE COURT:**  Yes.  Your contention, the one you just

13 said right now, is consistent with your main argument, which

14 is I have no business getting involved in this case, given

15 the way that Congress has drafted the statutory provisions.

16         **MR. ROJAS:**  Well, we agree that there's no need to

17 get into the facts, because the Court --

18         **THE COURT:**  My point about the facts is that you

19 really can't contest them right now, because you have nothing

20 to contest them with.

21         **MR. ROJAS:**  And we're not here seeking to contest

22 those facts under the TRO.  But then, again, as your Honor

23 said, the TRO is moot, it has expired.

24         The issue is --

25         **THE COURT:**  It will expire in 45 minutes.

```
1          MR. ROJAS:  Okay.

2          THE COURT:  So maybe I should just keep you here

3   for 45 minutes and make that issue go away.

4          MR. ROJAS:  Well, at the end of the day, though,

5   any new findings of facts would be then entering an

6   injunctive remedy against the FDIC, which would be against

7   1821(j).

8          Simply, at the end of the day, there's no -- I

9   cannot -- you're correct, there's no specific case I have

10  said, Judge, this is the exact same facts, here it is.  But I

11  think the fact that -- the Merrill Lynch case, which is cited

12  by Bank of America, shows that it went through the process.

13  They didn't say, Hey, because we felt these were special

14  assets, special deposits in our asset, and, therefore, not

15  part of the estate, that we were entitled to not even have it

16  go into receivership, but acknowledge that it did go through

17  the receivership, and that FDIC went through the procedure,

18  made a determination, which was ultimately reviewed by the

19  Court, is in fact the right way to go (sic).

20         So, the closest case to it, if you will, in that

21  regard is the very Merrill Lynch case cited by them, which

22  shows that the process is there, that it works, and that

23  that's the way it should be handled here.

24         Thank you, your Honor.

25         THE COURT:  Do any of your colleagues have a
```

```
 1    statutory provision for me on how to define an asset in an

 2    FDIC receivership estate?

 3             MS. BANK:  I don't have it, your Honor.  I can get

 4    that for you.

 5             THE COURT:  Is there one?

 6             MS. BANK:  I think --

 7             THE COURT:  There's one right next to your -- it's

 8    to your right.  You've got one to your right there.

 9             MS. BANK:  I don't have a definition handy.  I

10    believe that there's one at an earlier stage of the statute

11    than I have here with me today, and I can --

12             THE COURT:  Somewhere in Title 12?

13             MS. BANK:  I believe so.

14             THE COURT:  Do you know if there are any

15    regulations in the Code of Federal Regulations on this issue?

16             MS. BANK:  Defining asset of a receivership?

17             THE COURT:  Or defining the receivership estate.

18    Giving more guidance as to what the boundaries, if any, are,

19    and who makes the decision about those boundaries.

20             MS. BANK:  I believe there's a definition in

21    Title 12; I just don't have a cite at the handy.  But we can

22    get that for your Honor.

23             THE COURT:  Okay.

24             All right.  Here's what I'm going to do.  I am

25    going to issue a preliminary injunction that runs through the
```

1   end of Monday.  The reason I'm not doing it any further is

2   that I'm going to see you all at 2:30 on Monday.  And at 2:30

3   on Monday, you will be prepared to address the issue of the

4   receivership estate; what assets, if any, belong to the

5   estate; how those terms are defined; and who gets to decide,

6   at least initially, what that estate is made up of.  And to

7   the extent you have any statutes, regulations, case law,

8   opinions from the office of the comptroller or the FDIC,

9   anything else, then you can bring them to the hearing on

10  Monday.

11          So, this is a very limited preliminary injunction,

12  so that I can make a fully informed decision with regards to

13  the issue.  All right?  So, for purposes of today through the

14  close of business on Monday, I am granting a preliminary

15  injunction for the reasons set forth in the temporary

16  restraining order, which I adopt fully.

17          I also find that at least for now, until I get more

18  information on Monday, the cases cited by Colonial -- excuse

19  me -- by Bank of America -- Merrill Lynch vs. the FDIC,

20  293 F.Supp. 2d 98, from the district court in the District of

21  Columbia, from 2003, and Sharpe vs. FDIC, 126 F.3d 1147, from

22  the Ninth Circuit in 1997 -- at least provide general support

23  for the proposition that the FDIC, as a receiver, cannot

24  dispose of assets to which the banking entity did not have

25  title or control, for example, a bailment relationship or a

1    special deposit relationship as in Sharpe.

2           I understand that those two cases are not directly

3    on point, because they don't involve injunctive relief, but

4    the cases cited by the FDIC are not directly on point either,

5    although they cite the general unavailability of injunctive

6    relief pursuant to Section 1821(j).  When the FDIC is acting

7    in its receivership capacity, none of those cases, at least

8    the ones I've been able to look at, deal with the situation

9    where the FDIC is trying to administer a good, an asset, or

10   an item that is not part of the receivership estate.

11          But since the parties are not able to definitively

12   tell me what the estate consists of at today's hearing, how

13   that estate is defined, who defines it and at what point, I

14   think, given all of the preliminary injunction factors that I

15   have to consider, the safest thing to do is to continue the

16   preliminary injunction and issue it through the close of

17   business on Monday.

18          I find that the balance of equities for this very

19   minimal preliminary injunction weighs in favor of Bank of

20   America, and that the public interest is not disserved by a

21   preliminary injunction that extends for one more business

22   day, given the issues that I will decide on Monday afternoon.

23          So, for those reasons, Bank of America's request

24   for a preliminary injunction is granted, in part, through the

25   close of business on Monday.  And I'm going to run it through

1    six p.m. on Monday just in case our hearing lasts longer than

2    anticipated.  So, the preliminary injunction lasts through

3    six p.m. on Monday afternoon.

4            I will enter a short order which essentially says

5    the preliminary injunction is being granted on a temporary

6    basis, on a limited basis, for the reasons stated here in

7    court today, and incorporating the factual findings and legal

8    analysis set forth in the temporary restraining order.

9            Mr. Steinberg, anything else before we adjourn?

10           **MR. STEINBERG:**  No.  We'll address it Monday, your

11   Honor.

12           **THE COURT:**  Okay.  Fair enough.

13           Mr. Rojas?

14           **MR. ROJAS:**  No, your Honor.

15           **THE COURT:**  Okay.

16           We'll see you on Monday at 2:30.  Have a good

17   weekend.

18           **MR. ROJAS:**  Thank you, your Honor.

19           **MR. STEINBERG:**  Thank you, your Honor.

20           **THE COURT:**  To the extent you can.

21           (Laughter.)

22           (Proceedings concluded at 4:20 p.m.)

23                    -  -  -  -  -

24

25

1               C E R T I F I C A T E

2     I certify that the foregoing is a correct transcript from

3     the record of proceedings in the above-entitled matter.

4

5

      /S/Francine C. Salopek                      9-2-09
6     Francine C. Salopek, RMR-CRR        Date
      Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$1 [1]** 16/24
**$1 billion [1]** 16/24
**$26 [2]** 4/15 31/24
**$26 billion [2]** 4/15 31/24
**$5,000 [1]** 7/17

**/**

**/S/Francine [1]** 49/5

**0**

**09 [1]** 49/5
**09-22384-CV-Jordan [1]** 1/4

**1**

**1-10 [1]** 1/7
**10 [2]** 1/7 5/15
**10-1 [1]** 2/17
**101 [1]** 2/7
**11 [1]** 16/17
**1111 [1]** 2/4
**1147 [1]** 46/21
**12 [4]** 4/19 29/19 45/12 45/21
**12 U.S.C [1]** 4/8
**1209 [1]** 2/10
**126 F.3d 1147 [1]** 46/21
**13 [1]** 10/8
**1394 [1]** 13/14
**1395 [1]** 9/8
**15 [1]** 16/16
**18 [1]** 9/1
**1800 [1]** 33/14
**1807 [1]** 2/18
**1811 [1]** 4/20
**1812 [2]** 18/10 29/18
**1821 [26]**
**1833 [1]** 4/20
**1989 [1]** 4/24
**1995 [1]** 13/14
**1996 [1]** 9/8
**1997 [1]** 46/22
**19th [1]** 4/15

**2**

**20 [2]** 7/18 11/14
**2003 [1]** 46/21
**2009 [2]** 1/5 3/1
**22226-3500 [1]** 2/15
**22384 [1]** 3/3
**2500 [1]** 2/4
**28 [2]** 1/5 3/1
**28280 [1]** 2/8
**293 F.Supp. 2d 98 [1]** 46/20
**2:30 [3]** 46/2 46/2 48/16

**3**

**30 [4]** 11/14 15/10 15/14 15/17
**305 [1]** 2/18
**33128-1807 [1]** 2/18
**33131 [2]** 2/5 2/11
**3500 [2]** 2/7 2/15
**3501 [1]** 2/14
**3:17 [1]** 1/6
**3:17 P.M [1]** 3/1

**4**

**400 [1]** 2/17
**45 [2]** 43/25 44/3
**4:20 p.m [1]** 48/22

**5**

**523-5568 [1]** 2/18
**5568 [1]** 2/18
**56 F.3d 1394 [1]** 13/14

**6**

**622 [1]** 14/3

**7**

**7126 [1]** 2/14

**8**

**81 [3]** 4/14 31/14 31/20
**84 F.3d 1395 [1]** 9/8

**9**

**9-2-09 [1]** 49/5
**9130 [1]** 2/11
**98 [1]** 46/20

**A**

**ability [1]** 5/20
**able [1]** 5/20
**about [9]**
**above [2]** 18/18 49/3
**above-entitled [1]** 49/3
**absolute [1]** 26/19
**absolutely [5]**
**accept [2]** 18/7 30/14
**Accordingly [1]** 14/12
**accords [1]** 13/21
**account [6]**
**accounted [1]** 19/17
**accounting [3]** 19/16 24/25 25/20
**acknowledge [1]** 44/16
**acknowledged [4]** 13/10 13/12 13/16
  14/4
**acknowledging [1]** 27/12
**acknowledgment [1]** 27/23
**Acosta [2]** 2/2 3/8
**act [7]**
**acting [12]**
**action [5]**
**actions [2]** 25/24 28/21
**acts [1]** 9/12
**actually [2]** 18/16 18/25
**Adalberto [1]** 1/13
**addition [1]** 24/16
**address [3]** 31/11 46/3 48/10
**addressed [1]** 31/12
**adhere [1]** 13/6
**adjourn [1]** 48/9
**adjudication [1]** 27/16
**adjudications [1]** 27/8
**administer [1]** 47/9
**administering [1]** 18/14
**administrative [3]** 23/22 27/8 27/15
**admissions [1]** 19/2
**adopt [1]** 46/16
**adopted [1]** 9/9
**advantage [2]** 11/13 11/16
**affairs [2]** 5/5 13/25
**affect [5]**
**after [11]**
**after-the-fact [1]** 28/14
**afternoon [7]**
**again [2]** 30/3 43/22
**against [4]** 32/7 40/11 44/6 44/6
**age [1]** 8/11

**agencies [1]** 24/6
**agency [6]**
**agency's [1]** 14/7
**agent [3]** 15/18 15/20 15/25
**agree [7]**
**agreed [2]** 20/13 30/14
**agreement [18]**
**agreements [2]** 16/5 41/5
**ahead [2]** 42/6 42/11
**Alabama [2]** 4/13 35/6
**Alejandro [2]** 2/9 3/12
**all [39]**
**allegation [2]** 12/2 12/11
**allegations [1]** 34/18
**allow [2]** 23/7 32/10
**allowed [1]** 11/3
**allows [1]** 10/11
**alluded [1]** 41/12
**almost [1]** 35/24
**along [1]** 3/12
**already [1]** 26/15
**also [10]**
**although [5]**
**am [2]** 45/24 46/14
**ambit [3]** 6/22 34/11 37/2
**AMERICA [33]**
**America vs. the [1]** 3/4
**America's [2]** 25/25 47/23
**amount [1]** 25/6
**amounts [1]** 5/12
**analogous [1]** 4/25
**analogy [4]** 15/3 15/5 33/21 35/25
**analysis [1]** 48/8
**announce [1]** 3/6
**another [7]**
**answer [8]**
**anticipated [1]** 48/2
**any [35]**
**anyhow [1]** 12/16
**anyone [1]** 23/24
**anything [8]**
**anywhere [1]** 19/14
**appear [2]** 13/20 36/25
**appearances [2]** 2/1 3/6
**appears [1]** 26/1
**application [1]** 40/18
**applied [2]** 10/13 11/11
**applies [1]** 14/10
**appointed [6]**
**appointment [1]** 32/3
**approach [1]** 14/20
**appropriate [1]** 31/11
**arbitrability [1]** 36/1
**arbitration [1]** 36/2
**arbitrator [1]** 36/2
**areas [3]** 6/8 8/22 10/9
**aren't [4]** 12/12 20/6 31/5 32/5
**argument [9]**
**arise [1]** 28/22
**Arlington [1]** 2/15
**around [1]** 36/23
**art [1]** 33/6
**ask [5]**
**asking [3]** 26/15 33/4 35/19
**asset [26]**
**assets [59]**
**assume [4]** 6/18 7/13 19/17 30/19
**assuming [1]** 24/2
**at [49]**
**August [4]** 1/5 3/1 4/15 16/17

## A

**August 11 [1]**  16/17
**August 19th [1]**  4/15
**AUGUST 28 [1]**  3/1
**authority [14]**
**available [5]**
**Avenue [2]**  2/4 2/17
**avenues [1]**  9/22
**away [1]**  44/3

## B

**back [9]**
**background [2]**  4/10 39/17
**bailee [8]**
**bailment [11]**
**bailments [2]**  20/24 22/12
**bailor [2]**  19/22 19/23
**balance [1]**  47/18
**bank [83]**
**bank's [1]**  7/18
**banking [5]**
**bankruptcy [3]**  5/1 7/6 10/9
**banks [3]**  10/23 34/18 39/8
**bargain [1]**  23/9
**based [4]**  37/1 37/10 37/10 37/11
**basic [1]**  5/20
**basically [2]**  3/20 19/21
**basis [4]**  4/6 31/4 48/6 48/6
**became [6]**
**because [44]**
**become [4]**  20/25 21/2 22/8 22/12
**becomes [1]**  39/22
**before [15]**
**behalf [1]**  8/19
**behaves [2]**  9/14 9/18
**behind [1]**  23/10
**being [10]**
**belong [14]**
**belonged [2]**  17/12 26/8
**belongs [2]**  7/19 18/13
**benefit [1]**  23/9
**best [1]**  18/23
**between [1]**  18/2
**big [3]**  30/13 30/15 30/18
**biggest [1]**  37/13
**billion [3]**  4/15 16/24 31/24
**billions [1]**  19/13
**Birmingham [2]**  35/6 35/19
**blacks [2]**  8/10 8/11
**blanket [1]**  40/18
**BoA [1]**  38/19
**board [1]**  6/1
**boat [5]**
**books [2]**  19/9 19/15
**both [1]**  40/15
**Boulevard [1]**  2/11
**bound [1]**  43/4
**boundaries [2]**  45/18 45/19
**box [6]**
**boxes [2]**  6/11 6/14
**branch [1]**  35/5
**breach [2]**  23/7 41/24
**breaches [1]**  30/8
**breaching [1]**  28/6
**Brickell [1]**  2/4
**briefly [1]**  26/25
**bring [3]**  10/18 32/12 46/9
**bringing [1]**  9/15
**broad [10]**

**brought [3]**  27/5 32/6 32/6
**building [1]**  8/4
**Bursik [5]**
**Bursik vs. One [1]**  9/7
**business [6]**
**but [60]**
**buy [1]**  19/10

## C

**call [1]**  15/8
**calls [1]**  15/16
**came [7]**
**can't [9]**
**cannot [4]**  10/19 28/1 44/9 46/23
**capacity [15]**
**car [2]**  38/8 38/9
**Carolina [1]**  2/8
**carried [1]**  19/8
**carry [1]**  5/20
**cars [8]**
**cases [13]**
**cash [1]**  12/14
**Center [1]**  2/10
**cents [1]**  34/23
**certain [5]**
**certainly [1]**  41/25
**certify [1]**  49/2
**cetera [1]**  11/1
**challenge [4]**  18/7 29/22 30/23 36/11
**challenged [1]**  42/24
**change [1]**  21/20
**changes [1]**  21/15
**Charlotte [1]**  2/8
**Circuit [16]**
**circumstances [1]**  39/7
**cite [2]**  45/21 47/5
**cited [14]**
**cites [3]**  13/13 27/1 40/12
**civil [1]**  41/23
**claim [12]**
**claiming [2]**  25/8 38/20
**claims [19]**
**classes [1]**  42/11
**classification [1]**  42/9
**clear [6]**
**clearly [3]**  19/6 20/3 23/20
**client [1]**  7/18
**close [3]**  46/14 47/16 47/25
**closest [1]**  44/20
**clothe [1]**  5/16
**Code [2]**  10/9 45/15
**codified [1]**  4/22
**colleagues [1]**  44/25
**COLONIAL [41]**
**Colonial's [1]**  19/14
**colorable [4]**  35/23 38/7 38/7 38/10
**colorably [2]**  35/22 37/2
**Columbia [1]**  46/21
**come [14]**
**comes [2]**  19/1 35/7
**coming [5]**
**commingle [1]**  25/25
**commingled [8]**
**committed [1]**  8/24
**compelled [1]**  37/22
**complaint [1]**  41/22
**completely [1]**  41/9
**complicated [1]**  8/23
**complying [1]**  40/20
**comprehensive [2]**  4/22 5/1

**comptroller [1]**  46/8
**computer [1]**  1/24
**concede [1]**  37/16
**concept [1]**  36/24
**concerned [1]**  31/4
**concluded [1]**  48/22
**Congress [18]**
**consequences [2]**  8/17 23/9
**conservator [2]**  6/4 9/12
**conserve [1]**  8/8
**consider [2]**  10/12 47/15
**consideration [1]**  39/2
**consignment [7]**
**consistent [1]**  43/13
**consists [1]**  47/12
**contain [1]**  14/25
**contained [2]**  6/11 6/14
**contend [1]**  3/23
**contends [1]**  20/9
**contention [3]**  12/4 28/15 43/12
**contest [4]**  21/13 43/19 43/20 43/21
**contested [4]**  21/8 21/9 21/23 22/7
**context [1]**  41/3
**contingencies [1]**  12/6
**contingent [1]**  33/23
**continue [2]**  33/18 47/15
**continued [1]**  11/10
**contract [2]**  20/21 41/24
**contractual [1]**  16/23
**contrary [1]**  16/7
**control [1]**  46/25
**conversion [1]**  41/23
**converted [1]**  3/22
**corporate [2]**  2/13 4/11
**Corporation [3]**  2/14 3/4 13/24
**correct [5]**
**could [10]**
**couldn't [1]**  19/14
**counsel [3]**  2/12 27/1 41/12
**counterclaim [1]**  41/4
**country [1]**  10/22 14/2
**course [4]**  23/3 28/14 28/18 36/8
**Court's [1]**  24/7
**courts [6]**
**courts' [1]**  13/19
**cover [1]**  29/17
**created [2]**  4/19 28/23
**creditor [7]**
**creditor-type [1]**  41/25
**creditors [5]**
**creditors' [1]**  5/12
**criminal [1]**  34/18
**crisis [2]**  13/23 14/9
**CRR [2]**  2/16 49/6
**custodial [1]**  17/4
**custody [1]**  22/15
**customers [4]**  7/14 7/15 35/9 35/17
**CV [1]**  1/4

## D

**D-7126 [1]**  2/14
**D.C. [2]**  13/14 13/16
**D.C. Circuit [2]**  13/14 13/16
**Dadeland [1]**  2/11
**damages [1]**  18/4
**date [3]**  21/14 26/5 49/6
**Datran [1]**  2/10
**day [6]**
**days [7]**
**de [2]**  27/18 36/12

**D**

de novo [2]  27/18 36/12
deal [4]  5/7 40/10 40/12 47/8
dealer [5]
dealing [4]  5/6 8/3 10/21 29/6
dealt [1]  9/16
decide [3]  36/2 46/5 47/22
decided [2]  27/8 36/13
decides [5]
decision [10]
decisions [2]  13/6 13/7
defendant [2]  2/9 3/13
Defendants [1]  1/8
define [2]  19/5 45/1
defined [2]  46/5 47/13
defines [1]  47/13
defining [2]  45/16 45/17
definition [7]
definitions [2]  32/20 33/9
definitively [1]  47/11
defunct [1]  27/9
delivery [1]  35/15
demanding [1]  16/19
deposit [17]
depositor [1]  19/19
depositors' [1]  19/19
deposits [4]  20/24 20/25 27/13 44/14
determination [12]
determine [6]
determined [4]  6/23 10/7 11/24 42/7
determines [4]  5/12 36/6 36/9 37/24
determining [1]  6/16
dictates [1]  4/8
didn't [5]
dies [1]  15/20
difference [7]
different [11]
difficult [1]  24/16
directly [3]  29/22 47/2 47/4
directors [1]  6/1
disagreed [1]  27/20
disburse [2]  12/7 25/1
disbursed [3]  24/5 24/23 36/19
disbursement [3]  25/16 25/20 37/20
disbursements [1]  25/7
discrimination [1]  9/17
discriminatory [1]  8/9
dispose [2]  46/24
disposes [1]  19/9
disposing [1]  14/5
disposition [1]  19/3
dispositive [1]  23/2
disputed [2]  16/6 26/9
disserved [1]  47/20
dissipate [1]  25/24
dissipated [1]  24/21
dissolution [1]  4/5
dissolve [1]  3/19
distinct [1]  19/18
distinction [3]  29/6 29/15 37/13
distribute [3]  23/15 34/13 36/8
distributed [1]  37/18
district [11]
DIVISION [2]  1/3 2/13
do [30]
documents [5]
doesn't [7]
doling [1]  7/20
dollar [1]  34/23

dollars [7]
done [3]  25/9 37/21 42/2
door [1]  7/3
doors [1]  7/18
drafted [1]  43/15
drastic [1]  13/20
Drive [1]  2/16
due [2]  26/6 36/8
during [1]  24/7
duties [2]  18/19 25/3

**E**

each [1]  16/12
earlier [1]  45/10
easily [1]  12/22
easy [1]  39/11
economic [1]  14/10
effect [1]  11/12
either [2]  21/21 47/4
element [2]  30/15 30/17
Eleventh [13]
else [5]
emergency [2]  3/18 40/1
Emory [2]  2/6 3/8
employee [1]  38/8
employee's [1]  38/8
employees [1]  35/15
enable [1]  13/23
enacted [3]  4/8 5/22 13/22
encumbering [1]  17/6
end [8]
ends [1]  38/25
Enforcement [1]  4/24
enjoin [7]
enjoined [2]  22/13 22/14
enjoining [2]  17/6 17/15
enough [3]  9/25 29/17 48/12
enter [7]
entered [8]
entering [4]  28/11 30/2 40/9 44/5
enters [2]  15/12 30/6
entire [1]  5/2
entities [2]  24/7 24/24
entitled [5]
entity [3]  28/10 34/3 46/24
enumerated [1]  6/9
enumeration [1]  8/22
environment [1]  14/11
equal [1]  14/10
equitable [3]  9/11 10/25 13/20
equities [1]  47/18
escape [1]  23/9
Esq [6]
Essential [1]  5/19
essentially [6]
established [1]  20/22
estate [42]
et [1]  11/1
et cetera [1]  11/1
even [18]
event [1]  16/14
events [1]  21/16
everybody [1]  42/9
everything [4]  5/6 13/8 18/6 35/14
evidence [3]  16/7 18/8 19/14
exact [1]  44/10
exactly [7]
example [2]  20/10 46/25
examples [1]  9/15
except [3]  5/24 5/25 40/16

excuse [1]  46/18
executor [1]  15/21
exempt [4]  37/3 37/7 37/8 37/9
exercise [4]  5/21 6/2 14/7 30/12
existence [2]  22/19 22/24
expeditiously [1]  13/25
expire [1]  43/25
expired [1]  43/23
expires [1]  3/20
explanation [2]  23/19 24/3
explicitly [1]  22/25
express [2]  4/7 5/15
expressly [1]  9/18
extend [1]  32/13
extends [1]  47/21
extensive [2]  39/5 40/22
extent [4]  12/17 43/3 46/7 48/20
extreme [1]  7/10 9/16

**F**

F.3d [3]  9/8 13/14 46/21
F.Supp. [1]  46/20
fact [10]
factors [1]  47/14
facts [14]
factual [2]  31/4 48/7
fail [1]  28/18
failed [4]  5/4 10/21 14/1 23/13
fails [1]  28/12
failure [2]  4/14 5/7
failures [2]  31/13 31/19
Fair [1]  48/12
Fairfax [1]  2/14
fairness [1]  12/12
family [1]  23/12
far [9]
fast [1]  39/17
favor [1]  47/19
faxes [1]  15/17
FDIC [118]
FDIC's [7]
federal [7]
feel [1]  37/7
feels [4]  37/4 37/5 40/20 40/21
fellow [1]  24/5
felt [1]  44/13
few [1]  24/22
figure [1]  35/13
figured [1]  38/19
file [2]  24/25 25/20
filed [3]  20/4 31/3 42/7
files [1]  7/19
filing [1]  35/18
final [1]  20/1
finally [1]  17/1
financial [4]  4/23 20/17 24/16 27/10
find [10]
finding [2]  17/1 26/9
findings [8]
finds [2]  7/13 15/21
fire [2]  7/1 8/10
Firm [2]  2/10 3/12
FIRREA [12]
first [10]
fit [3]  5/16 7/21 39/25
FLORIDA [5]
focus [1]  9/16
folks [1]  13/4
follow [1]  26/4
followed [2]  10/16 24/4

**F**

following [1] 13/17
follows [1] 5/23
force [2] 14/10 42/16
foreclosure [1] 28/5
foregoing [1] 49/2
forensic [1] 32/2
forensically [1] 12/25
forever [1] 11/6
forth [4] 9/17 34/19 46/15 48/8
forum [1] 31/11
found [4] 16/17 16/22 21/22 22/7
Fourth [1] 9/7
framework [1] 4/22
Francine [3] 2/16 49/5 49/6
Frank [2] 2/6 3/8
frankly [1] 27/2
Freddie [3] 12/25 16/11 16/12
free [2] 5/21 30/12
Freeman [1] 13/14
Freeman vs. FDIC [1] 13/14
FRIDAY [2] 3/1 35/8
front [2] 18/2 31/3
full [2] 35/8 35/10
fully [3] 11/21 46/12 46/16
function [5]
functions [6]
funds [25]
further [3] 10/10 39/2 46/1

**G**

garage [1] 15/21
gathering [1] 6/16
gave [2] 15/16 15/17
general [8]
generally [1] 12/21
get [20]
gets [5]
getting [1] 43/14
given [7]
giving [3] 7/10 24/6 45/18
goes [1] 7/12
gone [2] 32/8 34/4
Gonzalez [1] 13/8
good [8]
goods [1] 15/19
Goodwill [1] 2/13
got [3] 39/10 40/15 45/8
govern [1] 33/12
governing [1] 16/9
government [3] 4/18 24/6 24/23
governs [1] 5/1
grandmother [1] 23/12
grandmother's [1] 33/22
grant [2] 11/5 13/20
granted [2] 47/24 48/5
granting [1] 46/14
guess [1] 30/15
guidance [1] 45/18

**H**

hand [1] 38/2
handled [1] 44/23
hands [3] 11/2 11/11 36/23
handy [2] 45/9 45/21
happen [3] 15/24 33/16 42/4
happened [4] 21/16 31/14 31/20 41/16
happening [2] 10/23 11/9
harm [1] 17/5

haven't [11]
having [6]
head [1] 33/2
hear [1] 3/24
hearing [6]
held [5]
Here's [1] 45/24
Hey [1] 44/13
hiding [1] 23/9
Hispanics [1] 8/10
hold [6] 6/25 16/10 16/15 22/25
holding [6]
holdings [1] 41/2
Honor's [1] 32/14
Honorable [1] 1/13
hornbook [1] 19/7
horror [1] 34/17
how [16]
Hoyos [2] 2/9 3/12
hundred [4] 7/1 7/13 7/17 34/22
hundreds [4] 14/1 24/5 24/23 25/17
Hunton [2] 2/3 2/6 3/9
hypothetical [2] 34/6 38/12
hypotheticals [1] 7/11

**I**

i.e [1] 15/3
idea [1] 32/10
identifiable [1] 12/13
identified [2] 12/20 12/23
identify [1] 12/25
ignores [1] 30/7
illustrative [1] 13/15
imagine [1] 35/5
immediate [1] 19/22
important [1] 26/6
importantly [1] 17/1
impounding [1] 35/18
improperly [1] 10/13
impunity [1] 30/9
include [1] 5/9
including [2] 5/10 13/7
incorporating [1] 48/7
incorrect [1] 29/21
increments [1] 7/17
independent [1] 4/18
indicating [1] 40/13
information [1] 46/18
informed [1] 46/12
initially [1] 46/6
injunction [17]
injunctions [5]
injunctive [17]
insolvency [1] 13/23
instead [1] 4/17
institution [4] 5/4 5/5 5/11 20/17
institutions [4] 4/24 10/21 14/1 27/10
instructive [1] 13/15
Insurance [2] 2/14 3/4
intended [1] 26/2
intent [1] 13/21
interest [3] 17/4 20/15 47/20
interestingly [1] 9/25
interfere [2] 10/25 40/8
interference [2] 30/13 39/23
interfering [2] 39/20 39/21
internal [1] 25/4
interpretation [2] 21/10 21/11
interpreting [1] 16/4
into [24]

investigation [1] 32/2
investigations [1] 34/19
involve [3] 6/11 40/14 47/3
involved [7]
involving [1] 4/15
irate [1] 7/14
is [191]
Isani [2] 2/3 3/8
isn't [5]
issue [19]
issue's [1] 3/20
issues [1] 47/22
item [1] 47/10

**J**

Jamie [2] 2/3 3/8
jammed [1] 35/8
jewels [2] 23/12 23/14
job [3] 32/11 39/24 40/3
JOHN [1] 1/7
Jordan [2] 1/4 1/13
Jose [2] 2/9 3/11
Jr [1] 2/6
Judge Gonzalez [1] 13/8
Judge Moreno [1] 13/7
judgment [1] 18/3
judicial [4] 5/21 27/5 27/7 27/17
jurisdiction [13]

**K**

Kantor [1] 2/12
keep [3] 23/8 40/1 44/2
key [2] 17/1 35/1
keys [2] 38/3 38/4
kind [5]
knowing [1] 25/18
knowingly [3] 30/14 30/14 30/18
known [2] 4/23 32/9
knows [2] 11/14 12/13

**L**

lack [1] 4/6
lacked [1] 14/6
lady's [1] 34/6
laid [2] 5/13 36/6
landscape [2] 21/15 21/20
language [2] 18/6 41/9
largest [3] 4/14 31/13 31/19
lasts [2] 48/1 48/2
late [1] 21/15
later [1] 27/19
Laughter [1] 48/21
law [12]
laws [3] 19/20 19/20 32/25
lawsuits [1] 35/18
least [8]
leave [2] 8/1 33/19
leaving [1] 23/1
left [1] 35/19
legal [7]
legally [3] 17/16 20/18 23/4
legitimately [1] 17/16
lengthy [1] 8/23
let [7]
let's [4] 15/5 35/5 35/7 39/25
letter [1] 16/18
letters [3] 16/5 16/5 16/9
level [1] 8/1
liability [2] 5/10 33/7
like [12]

**L**

limitation **[1]** 13/19
limited **[4]** 39/5 39/6 46/11 48/6
liquidate **[1]** 5/7
liquidating **[1]** 5/5
literal **[1]** 7/16
literally **[1]** 13/25
litigation **[1]** 40/1
little **[1]** 17/3
live **[2]** 28/12 28/18
LLP **[3]** 2/3 2/6 2/10
loan **[5]**
loans **[1]** 16/11
long **[3]** 17/5 25/6 35/22
long-term **[1]** 17/5
longer **[3]** 20/15 36/20 48/1
look **[5]**
looked **[1]** 41/3
lot **[5]**
Ltd **[1]** 9/7
Lynch **[25]**
Lynch vs. the **[1]** 46/19

**M**

Mac **[2]** 12/25 16/12
Mac's **[1]** 16/11
main **[1]** 43/13
maintained **[1]** 16/22
maintains **[1]** 17/3
makes **[2]** 37/20 45/19
making **[2]** 43/9 43/11
manage **[2]** 26/8 39/7
managing **[2]** 5/5 6/15
mandatory **[1]** 23/22
manner **[2]** 5/12 8/9
many **[1]** 41/15
marshal **[3]** 32/4 32/11 34/12
Martin **[1]** 2/2
Marty **[1]** 3/7
maybe **[2]** 41/20 44/2
Meaning **[1]** 30/5
meantime **[1]** 26/18
mechanical **[1]** 1/24
Melvin **[1]** 43/7
memorization **[1]** 33/5
memorized **[1]** 33/3
memory **[1]** 8/24
merely **[3]** 15/1 19/25 21/13
merits **[1]** 4/1
Merrill **[25]**
MIAMI **[6]**
middle **[1]** 40/15
midst **[1]** 13/22
mile **[1]** 39/14
millions **[3]** 24/5 24/23 25/17
minimal **[1]** 47/19
minute **[2]** 35/7 39/14
minutes **[2]** 43/25 44/3
misinterpreted **[1]** 34/24
Monday **[14]**
money **[14]**
moot **[2]** 3/20 43/23
Moreno **[1]** 13/7
mortgage **[1]** 16/14
mortgages **[1]** 16/10
motion **[5]**
Mr. **[6]**
Mr. Rojas **[3]** 3/24 14/19 48/13
Mr. Steinberg **[3]** 3/25 26/24 48/9

Ms. **[1]** 33/16
Ms. Bank **[1]** 33/16
must **[3]** 21/12 22/16 26/17

**N**

N.A **[1]** 1/4
necessarily **[7]**
necessary **[2]** 5/7 31/10
need **[4]** 29/22 32/6 32/6 43/16
needs **[1]** 8/8
never **[7]**
next **[2]** 7/2 45/7
Ninth **[1]** 46/22
no **[49]**
nobody **[1]** 38/3
none **[3]** 40/5 40/10 47/7
nonextension **[1]** 4/5
noon **[1]** 35/7
normal **[2]** 12/8 32/3
North **[3]** 2/8 2/17 9/7
notes **[1]** 16/16
nothing **[1]** 41 43/19
notice **[1]** 10/1
novo **[2]** 27/18 36/12
Number **[1]** 3/3
Number 09-22384 **[1]** 3/3

**O**

object **[1]** 30/23
obligated **[1]** 16/13
obligating **[1]** 22/25
obligation **[2]** 16/23 30/19
obligations **[2]** 5/11 23/8
obtain **[2]** 27/21 41/5
obvious **[2]** 15/23 22/16
obviously **[2]** 23/25 38/13
occasion **[1]** 15/2
occur **[1]** 12/6
offered **[1]** 24/3
office **[1]** 46/8
Official **[2]** 2/16 49/6
oh **[3]** 25/11 30/19 34/8
OIG **[1]** 34/18
once **[1]** 37/24
ones **[2]** 35/16 47/8
operate **[1]** 28/14
opinions **[1]** 46/8
opposed **[1]** 30/9
order **[12]**
orderly **[4]** 34/21 39/20 39/23 40/3
ordinary **[1]** 11/23
other **[19]**
otherwise **[2]** 10/23 39/9
ours **[4]** 22/20 22/21 22/22 23/3
ousting **[1]** 11/6 11/6
out **[24]**
overall **[1]** 34/11
oversight **[1]** 11/7
own **[7]**
owned **[1]** 12/8
owner **[3]** 15/22 15/24 37/23

**P**

p.m **[5]**
page **[3]** 14/3 23/20 23/22
page 5 **[1]** 23/22
page 6 **[1]** 23/20
page 622 **[1]** 14/3
paid **[2]** 13/1 37/19
parking **[4]** 35/6 35/8 35/10 35/12

part **[23]**
particular **[1]** 19/2
parties **[1]** 47/11
parties' **[1]** 16/9
partner **[2]** 3/8 3/12
party **[2]** 23/1 36/9
passes **[1]** 15/15
Patricia **[2]** 2/2 3/8
payment **[3]** 5/11 5/11 38/9
pendency **[1]** 24/7
pending **[1]** 16/11
penny **[1]** 34/14
people **[10]**
people's **[1]** 15/6
percentage **[1]** 15/7
perfect **[1]** 10/17
performance **[2]** 10/25 41/5
performing **[3]** 5/17 14/5 28/10
perhaps **[2]** 33/17 37/9
permitted **[1]** 16/15
person **[2]** 7/2 15/16
persons **[1]** 35/15
picture **[1]** 26/1
pile **[1]** 6/19
place **[2]** 17/8 17/19
Plaintiff **[2]** 1/5 2/2
Plaza **[1]** 2/7
please **[2]** 3/2 3/5
pointed **[1]** 43/6
pointing **[1]** 29/14
policy **[1]** 14/8
pool **[1]** 37/18
poor **[1]** 35/25
poses **[1]** 17/2
position **[7]**
possessed **[1]** 23/4
possession **[6]**
possessory **[4]** 12/8 16/1 19/24 26/11
post **[7]**
post-agreement **[1]** 29/16
post-foreclosure **[1]** 28/5
post-receivership **[5]**
potentially **[1]** 41/13
power **[3]** 13/19 18/11 26/8
powers **[13]**
practical **[1]** 41/12
pre **[1]** 29/7
pre-receivership **[1]** 29/7
prefaced **[1]** 38/12
preference **[1]** 24/6
preliminary **[15]**
prepared **[1]** 46/3
prereceivership **[1]** 23/8
presented **[2]** 34/17 41/10
presenting **[1]** 27/3
presume **[1]** 24/15
pretty **[1]** 40/22
prevent **[2]** 7/15 29/14
prevents **[1]** 6/5
previously **[1]** 43/9
primary **[1]** 14/23
principle **[2]** 33/25 34/1
prior **[1]** 25/22
priorities **[1]** 10/9
private **[2]** 24/7 40/1
pro **[1]** 42/10
probably **[2]** 35/25 38/7
problem **[5]**
procedure **[11]**
procedures **[9]**

**P**

**proceeding [1]** 28/1
**proceedings [4]** 1/24 14/14 48/22 49/3
**proceeds [3]** 16/15 16/19 23/18
**process [21]**
**produced [1]** 1/24
**product [1]** 16/2
**products [1]** 15/7
**proper [3]** 5/13 10/11 36/9
**property [1]** 20/24
**proposed [1]** 22/10
**proposition [4]** 22/11 22/14 40/8 46/23
**protect [2]** 26/3 26/19
**prove [1]** 34/23
**provide [1]** 46/22
**provided [3]** 5/24 10/1 11/4
**provides [7]**
**provision [5]**
**provisions [4]** 8/24 10/9 14/16 43/15
**public [3]** 14/8 24/19 47/20
**purchase [1]** 16/13
**purchaser [1]** 20/1
**purposes [2]** 31/7 46/13
**pursuant [3]** 4/7 16/8 47/6
**pursue [1]** 13/3
**put [3]** 12/19 21/9 26/1
**putting [1]** 42/9

**Q**

**question [9]**
**questioned [1]** 31/5
**questioning [1]** 31/8
**quite [1]** 23/20
**quote [2]** 20/25 21/1

**R**

**racially [1]** 8/9
**rata [1]** 42/10
**rationale [1]** 14/8
**reached [1]** 18/20
**read [1]** 27/6
**reading [2]** 9/13 29/10
**real [2]** 3/21 17/5
**reality [1]** 41/12
**reason [1]**
**reasonable [1]** 23/19
**reasons [6]**
**rebuffed [1]** 16/25
**rebutted [1]** 31/6
**receiver [42]**
**receivership [56]**
**record [5]**
**recorded [1]** 1/24
**Recovery [1]** 4/24
**redress [1]** 28/19
**referred [1]** 28/24
**Reform [1]** 4/24
**refused [1]** 16/13
**regard [3]** 5/4 6/8 44/21
**regards [2]** 33/11 46/12
**regular [1]** 35/9
**regulating [1]** 38/21
**regulation [1]** 6/1
**regulations [3]** 45/15 45/15 46/7
**regulator [1]** 4/11
**rejected [1]** 16/12
**related [1]** 16/10
**relationship [8]**
**relief [16]**

**relying [2]** 27/11 32/23
**remains [1]** 11/24
**remedies [3]** 9/22 10/21 37/9
**remedy [1]**
**remember [1]** 22/4
**reply [1]** 26/25
**reported [2]** 9/7 31/24
**Reporter [3]** 2/16 2/16 49/6
**represented [1]** 24/19
**request [6]**
**requests [1]** 19/23
**required [2]** 12/6 24/4
**requires [2]** 24/25 37/14
**Resolution [1]** 13/24
**resources [2]** 8/8 39/5
**respect [4]** 20/6 21/4 26/6 41/8
**respectfully [1]** 14/12
**respond [1]** 3/25
**response [2]** 12/10 19/22
**responsibilities [1]** 18/19
**responsibility [1]** 34/12
**restrain [1]**
**restraining [4]** 3/19 26/14 46/16 48/8
**restraint [1]** 5/21
**restrict [1]** 9/11
**retrieve [1]** 32/7
**return [8]**
**returned [4]** 15/24 21/12 22/16 26/17
**review [6]**
**reviewed [1]** 44/18
**revoking [1]** 16/18
**rights [2]** 10/17 23/24
**ripe [1]** 21/18
**risk [3]** 25/24 26/2 42/8
**RMR [2]** 2/16 49/6
**RMR-CRR [1]** 49/6
**road [1]** 9/22
**Rojas [7]**
**role [4]** 27/9 27/16 33/12 34/16
**Room [2]** 2/14 2/17
**rote [1]** 33/5
**routine [1]** 14/6
**RPM [6]**
**RPS [1]** 13/17
**RTC [1]** 13/24
**rule [2]** 31/2 40/18
**run [4]** 7/15 7/16 17/10 47/25
**running [2]** 10/23 40/1
**runs [1]** 45/25

**S**

**safe [3]** 6/19 7/14 34/7
**safest [1]** 47/15
**safety [5]**
**sake [1]** 24/2
**sale [3]** 7/1 16/15 16/19
**Salopek [3]** 2/16 49/5 49/6
**same [10]**
**satiate [1]** 7/15
**savant [1]** 38/19
**savings [2]** 13/22 14/9
**saw [2]** 39/25 42/8
**say [17]**
**saying [4]** 12/1 25/2 30/19 31/9
**says [18]**
**scheme [4]** 5/1 5/19 36/5 42/8
**scope [1]** 21/5
**seated [1]** 3/2
**second [3]** 16/12 23/17 28/2
**section [6]**

**Section 1821 [5]**
**Sections [1]** 4/20
**Sections 1811 [1]** 4/20
**see [3]** 40/5 46/2 48/16
**seek [2]** 23/24 28/19
**seeking [3]** 4/4 27/22 43/21
**seen [2]** 5/16 14/9
**sees [1]** 7/21
**segregate [3]** 25/6 25/10 25/12
**segregated [2]** 12/20 25/9
**sell [7]**
**sells [1]** 15/6
**sense [3]** 11/23 12/7 37/21
**sent [2]** 16/18 20/12
**separated [1]** 41/20
**series [1]** 33/14
**set [4]** 7/11 10/17 46/15 48/8
**settlement [1]** 28/4
**several [1]** 5/9
**shall [1]** 5/17
**share [1]** 42/10
**Sharpe [12]**
**Sharpe vs. FDIC [1]** 46/21
**she'll [1]** 33/17
**she's [1]** 33/17
**shoes [6]**
**short [1]** 48/4
**should [6]**
**shouldn't [4]** 29/11 37/22 40/8 42/2
**show [1]** 7/18
**shows [3]** 10/2 44/12 44/22
**sic [7]**
**side [1]** 3/25
**significant [1]** 29/24
**similar [3]** 7/6 10/8 11/15
**similarly [1]** 11/14
**simply [2]** 25/21 44/8
**since [2]** 18/20 47/11
**situated [1]** 11/14
**situation [7]**
**situations [1]** 38/13
**six [2]** 48/1 48/3
**six p.m [2]** 48/1 48/3
**slow [3]** 31/15 39/13 39/13
**smell [1]** 38/6
**sold [1]** 33/22
**somebody [2]** 9/23 39/10
**somehow [1]** 42/11
**someone [6]**
**someone's [2]** 7/1 23/11
**something [9]**
**somewhat [1]** 4/25
**Somewhere [1]** 45/12
**sorry [6]**
**sort [2]** 24/6 30/22
**sorting [2]** 12/18 41/14
**sorts [1]** 38/12
**sought [1]** 17/2
**sounds [1]** 34/1
**South [2]** 2/7 2/11
**SOUTHERN [1]** 1/2 13/8
**speak [2]** 38/6 39/17
**special [12]**
**specific [9]**
**specifically [13]**
**specifics [1]** 6/13
**specified [3]** 6/15 8/4 8/22
**stabilize [2]** 34/17 34/20
**staff [1]** 8/8
**stage [3]** 11/8 16/4 45/10

**S**

**stand [3]** 34/8 40/7 42/20
**standing [2]** 42/2 42/3
**stands [2]** 43/1 43/2
**start [1]** 35/18
**state [3]** 4/12 19/20 19/21
**stated [4]** 20/20 20/23 23/20 48/6
**statement [1]** 40/23
**STATES [4]** 1/1 1/14 2/17 4/18
**statute [4]** 24/8 24/25 37/2 45/10
**statutes [2]** 33/11 46/7
**statutory [10]**
**stay [1]** 28/5
**Steinberg [5]**
**stenography [1]** 1/24
**step [2]** 22/4 30/10
**stepped [1]** 30/20
**stepping [1]** 31/18
**steps [1]** 26/1
**stereo [6]**
**still [6]**
**story [1]** 34/17
**straits [1]** 24/16
**Street [2]** 2/7 9/7
**stronger [2]** 22/20 22/22
**stuck [1]** 6/19
**subject [14]**
**submissions [1]** 42/23
**submit [3]** 14/12 20/13 40/16
**submitted [1]** 18/8
**subsection [2]** 5/22 6/15
**subsequent [2]** 28/4 37/9
**subsequently [1]** 27/17
**substantial [1]** 25/23
**substituted [1]** 4/16
**such [5]**
**sue [3]** 41/23 41/23 41/23
**sued [1]** 41/22
**sues [1]** 15/23
**suggest [1]** 41/11
**Suite [3]** 2/4 2/7 2/10
**suits [1]** 32/6
**sum [1]** 36/14
**summary [1]** 18/3
**superpriority [2]** 11/13 42/7
**supplemental [1]** 10/1
**support [3]** 27/3 42/23 46/22
**supports [2]** 18/24 40/6
**supposed [1]** 25/19
**Supreme [1]** 43/7
**sure [3]** 8/3 32/14 39/6
**Susan [2]** 2/12 3/13
**system [1]** 6/19

**T**

**taken [2]** 26/1 28/22
**taking [4]** 5/4 35/11 35/11 35/17
**talking [1]** 28/7
**tear [1]** 8/1
**tell [3]** 24/24 39/6 47/12
**telling [1]** 6/6
**temporary [10]**
**term [2]** 17/5 33/6
**terminated [6]**
**terminates [1]** 19/23
**terminating [1]** 16/18
**termination [1]** 16/5
**terms [1]** 46/5
**test [1]** 38/6

**that'd [1]** 38/9
**theft [1]** 41/23
**thereafter [1]** 8/17
**therefore [1]** 44/14
**they'll [1]** 34/24
**they're [19]**
**they've [5]**
**thing [11]**
**things [4]** 5/10 37/25 39/9 42/20
**thinks [1]** 9/20
**Thirty [1]** 15/15
**this [50]**
**though [5]**
**thought [1]** 28/24
**thousand [3]** 7/1 7/13 7/17
**threat [1]** 17/3
**through [20]**
**throughout [2]** 10/22 14/1
**thrown [1]** 41/17
**tied [1]** 11/2
**time [8]**
**timing [1]** 37/19
**title [7]**
**Title 12 [3]** 4/19 45/12 45/21
**today [9]**
**today's [2]** 14/10 47/12
**too [3]** 21/15 25/14 35/12
**top [1]** 33/2
**total [3]** 31/22 31/24 32/8
**totally [2]** 28/6 33/23
**trace [1]** 12/24
**traceable [1]** 12/15
**transcript [3]** 1/12 1/24 49/2
**transfer [3]** 5/10 20/11 20/12
**transferred [1]** 20/16
**transferring [1]** 17/7
**triage [1]** 10/20
**trim [1]** 8/8
**TRO [23]**
**TROs [2]** 40/1 40/9
**trust [5]** 6/18 10/6 13/24
**truth [1]** 29/12
**trying [5]**
**Tryon [1]** 2/7
**two [8]**
**tying [1]** 11/11
**type [4]** 11/5 12/15 29/9 41/25

**U**

**U.S. [1]** 4/22
**U.S. Congress [1]** 4/22
**U.S.C [2]** 4/8 29/19
**ultimate [2]** 39/3 40/13
**ultimately [3]** 17/23 18/4 44/18
**unambiguous [2]** 16/4 21/10
**unavailability [1]** 47/5
**understand [3]** 32/14 42/25 47/2
**undertaken [1]** 13/2
**undertaking [1]** 30/18
**undisputed [1]** 42/22
**Unit [1]** 2/13
**UNITED [4]** 1/1 1/14 2/17 4/18
**universe [1]** 18/14
**unlawful [1]** 37/4
**unlawfully [6]**
**unmoored [1]** 41/10
**until [4]** 19/9 32/8 35/13 46/17
**up [9]**
**usually [1]** 12/15

**V**

**VA [1]** 2/15
**valid [1]** 5/11
**validity [1]** 13/11
**venue [1]** 10/12
**versus [3]** 10/6 30/19 41/19
**vet [1]** 20/1
**violate [2]** 25/18 25/21
**violates [1]** 9/13
**violating [1]** 37/5
**violation [7]**
**void [1]** 40/15
**volitional [2]** 30/15 30/17
**VOLUME [1]** 1/16
**vs. [5]**

**W**

**wake [1]** 8/1
**walks [1]** 7/2
**want [5]**
**wanted [2]** 20/10 40/17
**wants [1]** 15/8
**We'll [2]** 48/10 48/16
**we're [15]**
**we've [4]** 4/14 17/21 22/10 26/20
**weekend [1]** 48/17
**weeks [3]** 30/24 31/12 31/19
**weighs [1]** 47/19
**what's [13]**
**whatever [4]** 27/21 34/25 35/3 39/5
**whatsoever [2]** 15/1 16/8
**whether [8]**
**while [1]** 23/1
**whole [1]** 30/21
**whom [1]** 7/19
**Williams [3]** 2/3 2/6 3/9
**wind [1]** 13/25
**wire [2]** 20/12 20/14
**women [1]** 8/11
**word [1]** 11/23
**words [1]** 17/5
**works [1]** 44/22
**worse [1]** 34/1
**would [48]**
**wouldn't [1]** 38/7
**written [5]**
**wrong [1]** 42/1
**wrote [1]** 13/18

**X**

**XYZ [1]** 21/14

**Y**

**year [2]** 4/15 31/20
**yet [2]** 20/12 42/23
**you [80]**
**you'll [1]** 15/10
**you're [7]**
**you've [3]** 40/7 40/15 45/8
**yours [1]** 20/15