*UNITED STATES DISTRICT COURT*

*SOUTHERN DISTRICT OF FLORIDA*

*MIAMI DIVISION*

| | |
|---|---|
| *BANK OF AMERICA, N.A.,* | . *Case No. 09-22384-CV-Jordan* |
| | . |
| *Plaintiff,* | . *Miami, Florida* |
| | . *August 31, 2009* |
| *v.* | . *2:56 p.m.* |
| | . |
| *COLONIAL BANK AND* | . |
| *JOHN DOES 1-10,* | . |
| | . |
| *Defendants.* | . |

*. - . . . . . . . . . . . . . . . .*

*- - - - -*

*Transcript of Preliminary Injunction and Motion Hearing had*

*before the Honorable Adalberto Jordan,*

*United States District Judge.*

*- - - - -*

*VOLUME 2*

*- - - - -*

*Proceedings recorded by mechanical stenography, transcript produced by computer.*

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)523-5568

```
APPEARANCES:

For the Plaintiff:      Martin L. Steinberg, Esq.
                        Patricia Acosta, Esq.
                        Jamie Z. Isani, Esq.
                        Hunton & Williams, LLP
                        1111 Brickell Avenue
                        Suite 2500
                        Miami, Florida  33131
                                and
                        Frank E. Emory, Jr., Esq.
                        Hunton & Williams, LLP
                        Bank of America Plaza, Suite 3500
                        101 South Tryon Street
                        Charlotte, North Carolina  28280


For the Defendant:      Jose I. Rojas, Esq.
                        Alejandro F. Hoyos, Esq.
                        Rojas Law Firm, LLP
                        Two Datran Center, Suite 1209
                        9130 South Dadeland Boulevard
                        Miami, Florida  33131
                                and
                        Susan Kantor Bank, Counsel
                        Legal Division
                        Corporate Goodwill Unit
                        Federal Deposit Insurance Corporation
                        3501 N. Fairfax Drive, Room D-7126
                        Arlington, VA  22226-3500


Court Reporter:         Francine C. Salopek, RMR, CRR
                        Official Court Reporter
                        United States District Court
                        400 North Miami Avenue, Room 10-1
                        Miami, Florida 33128-1807
                        (305)523-5568

                            -   -   -   -   -
```

| | |
|---|---|
| 1 | ***MONDAY, AUGUST 31, 2009, 2:56 P.M.*** |
| 2 | **THE COURT:**  Good afternoon.  Please be seated. |
| 3 | This is Case Number 09-22384, Bank of |
| 4 | America vs. the FDIC in its capacity as receiver for Colonial |
| 5 | Bank.  If you could please announce your appearances. |
| 6 | **MR. STEINBERG:**  Marty Steinberg, Frank Emory, |
| 7 | Patricia Acosta and Jamie Isani for Bank of America, your |
| 8 | Honor. |
| 9 | **THE COURT:**  Good afternoon to all of you. |
| 10 | **MS. ISANI:**  Good afternoon, your Honor. |
| 11 | **MR. ROJAS:**  Good afternoon, your Honor.  Jose |
| 12 | Rojas, along with my partner, Alejandro Hoyos, on behalf of |
| 13 | the Federal Deposit Insurance Corporation, as well as Susan |
| 14 | Bank from the FDIC. |
| 15 | **THE COURT:**  Good afternoon. |
| 16 | Mr. Rojas, you can lead off. |
| 17 | **MR. ROJAS:**  Your Honor, to answer specifically your |
| 18 | question where we left off on Friday, no, there is no |
| 19 | provisions specifically in the statute or in any code or |
| 20 | regulation that defines the term "asset."  However, we have |
| 21 | found specific authority that defines what the threshold |
| 22 | inquiry is supposed to be, which is not whether or not there |
| 23 | is an asset, but whether or not there is control or |
| 24 | possession by the bank at the time of the receivership over |
| 25 | some property. |

```
 1            And, in fact, the Court's order here in the TRO and
 2   the complaint filed by the plaintiff had already previously
 3   referred to these accounts as assets.  I think the common
 4   one, there's no specific definition in a statute that would
 5   vary the ordinary understanding of what an asset is.  The
 6   ordinary understanding should apply.  And I think that's what
 7   was done by the plaintiff in the complaint.  And this Court
 8   in its own order at the top of page two, the bottom of that
 9   first paragraph, makes reference to these accounts being
10   assets.
11            I don't think that's a real question as to whether
12   or not that's an asset.  The question is who controls that
13   asset.  And there we have three specific authorities that we
14   have found that we believe are binding -- or not binding --
15   one is binding because it's Eleventh Circuit, but there's one
16   that specifically clarifies -- this is a Third District case
17   of Gross --
18            THE COURT:  Okay, well, read them slowly.
19            MR. ROJAS:  Yes, I will, your Honor.
20            This is Gross vs. Bell Savings Bank PA SA, and
21   that's at 974 F.2d 403, and it's a Third Circuit decision,
22   1992.
23            And, specifically, what the Gross case involved --
24            THE COURT:  Well, tell me the other ones first and
25   then you can discuss them.
```

1          **MR. ROJAS:**  Yes, your Honor.

2          The other one is the Resolution Trust

3   Corporation vs. Clarke, C-L-A-R-K-E.  And that is an

4   unreported decision cited at 1992 WL 245717, from the Eastern

5   District of Pennsylvania.

6          Then there's a statutory reference at

7   12 U.S.C. Section 1821(d), as in "dog," (13), and

8   specifically Subsection C, although the other subsections are

9   of some relevance, too.

10          And then last, but not least, the Eleventh Circuit

11   decision that I referenced, which is Bender vs. CenTrust

12   Mortgage Corporation.  And that is at 51 F.3d 1027, decided

13   by the Eleventh Circuit in 1995, on appeal from an order of

14   Judge Stanley Marcus from the Southern District.

15          If I can address now the authorities, the Gross

16   case specifically said that the issue was -- and I'm

17   referring to page 407 of that opinion -- which is at

18   page five of the Westlaw printout -- it says:

19          "In this case, the Grosses seek an injunction

20      requiring the release of funds under the RTC's

21      control."

22          And the Court then goes on to talk about whether

23   the RTC was acting beyond the scope of its powers in

24   exercising such control over the assets or the funds in

25   question and said that is the function of the RTC in that

1   case, as receiver and under 1821(j), that is not something

2   that we can interfere with or enjoin.  And it specifically

3   does not hinge on our view of the proper exercise of

4   otherwise legitimate powers.

5          And that is gleaned by the court from the extent of

6   the statutory scheme that Congress enacted under FIRREA as

7   discussed further in that case where it went on to deny that

8   relief.

9          By the way, the Court did say that federal courts

10  do have a role -- and this is on page 408 of the opinion,

11  which is page 6 of Westlaw:

12          "That the federal courts do have a role

13      adjudicating the legitimacy of a claim for damages

14      against an insolvent institution, after the

15      injured party exhausts the appropriate

16      administrative proceedings."

17         And then the Court went on specifically to say that

18  that determination under 1821(j) could not be enjoined -- the

19  question of whether or not the exercise of control over the

20  property is appropriate.

21         Then, in the Clarke decision, the Eastern District

22  of Pennsylvania, actually in a decision that was referred to

23  by the Third Circuit from the district court and then in a

24  subsequent motion to certify in an expedited interlocutory

25  appeal, Judge Pollak in the Eastern District of Pennsylvania

1  cites back to Gross, but specifies as follows -- and I'll

2  read it:

3         "The fact that the particular relief sought

4     by these particular counterclaimants is perceived

5     by them as a modest interference with the RTC's

6     operations cannot, in my view, draw the sting from

7     the fact that the relief sought would, if granted,

8     be a direction to RTC as to what to do or not to

9     do with what RTC regards as an asset now in RTC's

10    custody."

11        Next, under Section 1821(d), which deals with the

12 general rights specifically under FIRREA of a receiver, be it

13 a RTC or FDIC, Subsection C says:

14        "No attachment or execution may issue by any

15    court upon assets in the possession of the

16    receiver."

17        That's -- end quote.  No reference there to the

18 ownership or to legal right or entitlements, the word

19 specifically is "possession of receiver."  I'll come back to

20 the statute in a minute, but tied into that is the Eleventh

21 Circuit's --

22        **THE COURT:**  Before you do that, let me just make

23 sure I get the statutory citation you're referring to

24 correct.  It's 12 U.S.C. Section 1821(d)(13)(C).

25        **MR. ROJAS:**  Actually, 1821, your Honor, 1-8-2-1.

```
 1              THE COURT:  I'm sorry, that's what I should have
 2    said.
 3              MR. ROJAS:  Okay.  Yes.
 4              THE COURT:  12 U.S.C. Section 1821(d)(13)(C).
 5              MR. ROJAS:  That's correct, your Honor.
 6              THE COURT:  Okay.
 7              MR. ROJAS:  Small "d" and the "C" is the capital
 8    "C."
 9              THE COURT:  Got it.
10              MR. ROJAS:  That specifically is referred to by the
11    Eleventh Circuit in the case -- what had happened in the
12    Bender case arising out the CenTrust failure, this dealt with
13    the mortgage company, CenTrust Mortgage, and there had been
14    first a request for injunction to protect certain assets of
15    the claimant.  Mr. Bender was president of CenTrust Mortgage
16    that made -- and the injunction was denied by Judge Marcus.
17              However, there was a claim for constructive trust,
18    which remained, not in an injunctive capacity, but being
19    litigated regularly in the court.  And what the Eleventh
20    Circuit said regarding that constructive trust claim was as
21    follows.  It said:
22              "Finally, we note that 12 U.S.C.
23         Section 1821(d)(13)(C) provides that, 'no
24         attachment or execution may issue by any court
25         upon assets in the possession of the receiver.'
```

1      While Bender's position is that this provision is

2      inapplicable because it does not specifically

3      include 'constructive trust,' the relief requested

4      by Bender to carve out a portion of the

5      receivership assets for his benefit constitutes a

6      form of attachment because it would preclude the

7      RTC as receiver from disposing of receivership

8      assets."

9      And for that reason, the Court did not permit the

10  claim to go forward, upheld the denial of the injunction and

11  dismissed the constructive trust claim, which is, as your

12  Honor knows, essentially the claim that's being brought here,

13  to seek to impose upon assets of Colonial a trust and require

14  it to be segregated and designated for the benefit of Bank of

15  America, and to be held there pending the litigation, which

16  would have the equivalent effect, as the Eleventh Circuit has

17  recognized, as an attachment of those assets under

18  1821(d)(13)(C).

19      Now, further, let's talk a little bit about the

20  procedural history here.  If your Honor recalls, there has

21  been no final finding of fact, no final unappealable

22  judgment.  And that is what (13)(A) addresses.  (13)(A) says,

23  if there has first been a court proceeding and a

24  determination has been made by a court, where there's a final

25  unappealable judgment, then the corporation, be it RTC or

1    FDIC, shall abide by that judgment, which was rendered before

2    the appointment of the corporation as conservator or

3    receiver.

4         Here, because all there had been was a TRO without

5    notice, preliminary, with short-term set to self-expire, and

6    that there has been no even evidence submitted by plaintiff

7    to specifically identify the rest of the supposed

8    constructive trust and what assets it would be that would be

9    frozen, certainly we're far, far, far from having had any

10   final unappealable judgment as to what that res is or what it

11   is that they would be arguably entitled to were they to

12   prevail in this type of a constructive trust or replevin or

13   other claim, as they are asserting in their complaint.

14        That being the case, once FDIC steps in to the

15   receivership, as it has happened now, and once we proceed as

16   your Honor has set the order to be, which is that there would

17   be a preliminary injunction hearing, the burden would be now

18   for the plaintiff to come forth and try to identify that res

19   and put in that evidence and have a finding and your Honor to

20   make determinations of fact in law to grant the preliminary

21   injunction.  The reality is that doing that is then invading

22   the province of what it is specifically that Congress has

23   designated to be the role of the receiver under the

24   comprehensive framework of FIRREA.

25        One thing is the TRO and the entry of that

```
 1    temporary until something happened would be a permanent
 2    injunction, et cetera.  What happened here is the FDIC
 3    stepped in, a receiver has stepped in.
 4          Now, Congress has said the public interest --
 5    that's one of the components of injunctions in any case -- is
 6    served by having FDIC be the one to come in free of court
 7    interference, free of any injunctive remedies, et cetera, and
 8    make that kind of determination, make the fact finding,
 9    determine the issue of who's entitled to ultimately the
10    assets.
11          So, the universe -- and if we can go back to your
12    Honor's analogies, you talked about the safe deposit box on
13    Friday or the cars in the parking lot.  Yeah, the answer is,
14    if they're in the control of the bank at the time of the
15    receivership, then the FDIC takes possession of that and has
16    to go through the process of making the findings, hearing the
17    evidence -- and there's a whole procedure laid out in a
18    separate part of FIRREA -- to hear the evidence and to make a
19    determination, subject ultimately to federal court review, in
20    the event that the parties aggrieved are not satisfied with
21    the end result.
22          But --
23          THE COURT:  Well, you may have a better argument
24    with regard to the safe deposit box.  I don't think you have
25    one with regard to the cars.
```

```
 1           MR. ROJAS:  Well, the reality is the parts with the

 2    cars, wouldn't even be the cars -- to make it a good analogy

 3    would be the parts that somehow instead of having separated

 4    cars out, you have a bunch of parts mixed in together.

 5    That's really what we have with our funds.  You have parts

 6    that are out there, some parts that arguably could belong to

 7    some customers and some parts that arguably could belong to

 8    some employees, and some which arguably could belong to the

 9    bank, but they are all stored in the warehouse with all the

10    parts together and somebody has to go through and sort that

11    process and determine, yes, these parts belong to this car

12    which belongs to this person, which case, fine, take it out

13    of here and give it.  If that's the case, that's what the

14    process will call for happening.

15           But the party to make that determination is

16    supposed to be the FDIC free of having people running to

17    court and getting injunctive relief and compelling certain

18    assets to be set aside to them specifically.  So, that

19    essentially is the position.

20           The other thing in Bender specifically, if I can

21    call the Court's attention to the language, which I think is

22    applicable here, at page 1030 of the decision, which is

23    page 4 of the Westlaw printout, that says:

24           "A constructive trust cannot be imposed on

25       general assets.  It is well settled that Florida
```

```
 1          courts will impress property with a constructive

 2          trust only if the trust res is specific,

 3          identifiable property or if it can be clearly

 4          traced in assets of the defendant which are

 5          claimed by the parties seeking such relief.

 6               "Ordinarily" -- and I'm skipping -- "the

 7          general federal rule of equity is that a court may

 8          not reach a defendant's assets unrelated to the

 9          underlying litigation and freeze them, so that

10          they may be preserved to satisfy a potential money

11          judgment."

12               The Court went on to say that the burden is on the

13     plaintiff in that case to show the specific assets which on

14     this record has not yet been done and we respectfully submit

15     is the process to be done, but it should be done pursuant to

16     the provision of FIRREA under the auspices of the FDIC.

17               For that reason, your Honor, we would ask you to

18     not grant the preliminary injunction and terminate whatever

19     remains of the temporary restraining order.

20               Thank you.

21          THE COURT:  All right.  Thank you very much.

22               Mr. Steinberg?  Oh, it's gotten bigger since the

23     last time.

24          MR. STEINBERG:  It's gotten a little bit bigger.

25          THE COURT:  I'm afraid of holding another hearing
```

 1    in this case.

 2             (Laughter.)

 3             **MR. ROJAS:**  Your Honor, can we bring you copies of

 4    our cases that we cited, if you would like?

 5             **THE COURT:**  Of course.  Just hand them up to the

 6    court security officer, please.

 7             **MR. STEINBERG:**  If it please the Court, your Honor.

 8             Let me first deal with the authority just cited.

 9    The Gross case dealt with deposits, not a bailment.  Those

10    were pension funds paid out of the general assets of the bank

11    and not bailed funds.

12             The case merely ruled that the Court cannot enjoin

13    the FDIC in its receivership role.  But it went on to rule

14    that courts can enjoin the RTC when it's acting outside its

15    authority.  That's in the Gross case.

16             And it also deals with the claims process.  And as

17    we'll explain in a moment, our issue doesn't deal with any

18    claim.

19             The Clarke case dealt with a request for specific

20    performance for the contract for the sale of property, not a

21    bailment.  As we all know, the RTC can repudiate those

22    contracts.

23             This case also specifically cites Cummings, on the

24    very last page, with approval saying Cummings is within the

25    ambit of how we decide this case.  I'm going to get to

1    Cummings in a moment, your Honor, because Cummings is on all

2    fours with the situation we're in now.

3          The statutory cite that they provided you,

4    12 U.S.C. 1821(13)(C) is very simple.  It says:

5          "No attachment or execution may issue by any

6       court upon the assets in the possession of the

7       receiver."

8          Which just is a circular argument, brings us back

9    to the question you asked initially, what are the assets?

10          And, finally, the Bender vs. CenTrust is merely an

11   employment agreement.  The fellow who got terminated wanted a

12   constructive trust on the general assets of the bank for what

13   he considered to be the value of his employment contract.

14   And it states right in the case that the FDIC has authority

15   to repudiate employment contracts.  It doesn't deal with a

16   bailment or special deposits or deposits in custody; it deals

17   with a drain on the general assets of the bank.

18          So, with all due respect, I don't believe that the

19   FDIC has addressed any of the questions you asked us on

20   Friday, which were what are the assets of the receivership,

21   and whether the Bank of America bailed loan proceeds and

22   documents are assets of the receivership, two, who gets to

23   decide what the assets of the receivership are and, three,

24   when is that decision made?

25          And those three questions need to be addressed very

1    specifically in light of the record in this case.  Where

2    there was a bailment, there were goods provided temporarily

3    to Colonial Bank.  Colonial Bank was supposed to transfer

4    that property back to Bank of America in 15 days -- at no

5    time did they obtain ownership or any legal right to that

6    property -- they failed to perform their duties.  That right

7    was terminated before any receivership.

8              And all of those assets, that bailed property,

9    should have been transferred to Bank of America the moment

10   the bailment was terminated.  They demonstrated no right in

11   this record to possess those assets after that date.  It was

12   only after that date and after this Court made a number of

13   findings and entered a TRO that the FDIC was appointed

14   receiver.

15             And your Honor made findings on an undisputed

16   record that Colonial Bank had no right to those assets, that

17   there was no legal title, no possessory title, no right,

18   interest, and it would not disturb the assets of Colonial

19   Bank, for those assets that weren't theirs in the first

20   place, to be returned to the bailor.  All those findings have

21   never been disputed by the FDIC, and they remain undisputed

22   in this record.

23             Also, Judge, we have the FDIC's admissions in their

24   brief at page five on their motion to dissolve, they tell the

25   Court that their powers only apply to the assets in the

1  institution, in this case, Colonial, as of the moment they

2  took it.

3           And they say that again at page six of their

4  motion.  And they say on page three and four of their motion,

5  page one of the reply, that their powers only apply over the

6  assets of the receivership estate, which were the assets of

7  Colonial at the time it was taken.  And they continue to say

8  that at page two of their reply.  And they also say that the

9  only reason the Court lacks jurisdiction is because of the

10 FDIC's disposition of the assets of the receivership estate

11 at page two of their reply.  And that's at tab two of the

12 book we handed to you.  So, those are some of the admissions

13 we are dealing with when we get to the questions asked by the

14 Court.

15          As you know, we cited Merrill Lynch for the

16 proposition that where you have a bailed relationship, there

17 is no obtaining of any property right to those bailed assets.

18 And in that case the Court found that this Court has initial

19 jurisdiction to make that decision, whether or not the assets

20 are the assets of the bank, the receivership, or Bank of

21 America.

22          And we also cited Sharpe for the proposition where

23 the receiver's acting outside the receivership authority and

24 not with respect to any assets of Colonial Bank, you have the

25 authority to enjoin them.

1          Now, that comes to the three questions.  How does

2   the FDIC gain their authority?  Under 12 U.S.C. 1821.

3          And with respect to the authority they have, if you

4   look at 1821(d)(13)(2)(A)(sic), that's at tab five, that only

5   gives the FDIC rights, the power and authority, with respect

6   to assets of the failed institution.  That's it.  They can't

7   go beyond that.

8          And if you look at the explanation provided in that

9   statute, it says they can take over the assets, they can

10  preserve the assets, and so forth.  But it's all about the

11  assets.

12         And 1821(d)(13)(2), also at tab five, says then

13  they can proceed to either liquidate or realize upon the

14  assets of the institution.

15         And 1821(d)(13)(g) also says they can only transfer

16  the assets of the institution.

17         So, that's their authority.  It's very limited.

18         Now, let's go on to see what they claim the bar is

19  to your acting and enjoining them in this case.  That's in

20  1821(d)(13)(D) -- and that's at tab five -- and that says:

21         "Except as otherwise provided in this

22      subsection, no court shall have jurisdiction over

23      any claim or action for payment from or any action

24      seeking a determination of rights with respect to

25      the assets of any depository institution for which

1        the corporation has been appointed a receiver."

2              So, once again, the limitation on the Court deals

3   only with the assets of Colonial Bank at the time it was

4   placed into receivership.

5              Now, let's start answering the questions.  The

6   first question you asked, Judge, is what is an asset of the

7   estate?  We agree with counsel that there is no specific

8   definition in the statute.

9              But we do know from FDIC pronouncements itself what

10  the definition of asset is.  Judge, if you look at tab six,

11  there's a FDIC publication, and strangely enough it's

12  entitled to the "FDIC Consumer News, Summer of 2008," and the

13  title of the actual article or publication is "Get a Good

14  Night's Sleep:  Rest Assured, Your Money Is safe in a

15  FDIC-Insured's Account."

16             And, of course, I don't think any of us have gotten

17  much sleep since this started, but that specifically says,

18  and I quote:

19             "Securities and other assets held in trust,

20        fiduciary or custodial accounts at a bank are not

21        assets of the failed bank and are not subject to

22        claims by the failed bank's creditors.  These

23        assets will either be returned to you or

24        arrangements will be made for another institution

25        to become the new custodian or trustee of your

1          accounts."

2                    THE COURT:  You need to tell me where you're

3      reading from in that tab.

4                    MR. STEINBERG:  Yes.  That's it in tab six ...

5                    THE COURT:  I got the publication.  I just want to

6      read with you.

7                    MR. STEINBERG:  There should be a blue tab, your

8      Honor.

9                    THE COURT:  Okay.  I found it.  Page four.

10                   (Discussion had off the record.)

11                   THE COURT:  Okay.  I see it.

12                   MR. STEINBERG:  Okay?

13         That's the FDIC's own pronouncement that bailments,

14     exactly like we're talking about here, are not assets of the

15     institution and are not subject to claims.

16         Then, in tab seven, there's an advisory opinion by

17     the FDIC.  It's FDIC-87-7, dated August 17th, 1987, where the

18     FDIC opine that securities held by a bank in safekeeping are

19     not aggregated with the bank's assets and must be returned to

20     the customer.  That's at tab seven.

21         Then we move on to tab eight.  Tab eight is another

22     advisory opinion by the FDIC, FDIC-88-14, dated February 4th,

23     1988, where, again, they spoke to what is and isn't an asset

24     of the receivership estate.  In that pronouncement, the FDIC

25     referred to treasury bills and explained that a payment by a

1  client to a bank for the purchase of securities does not

2  create a deposit relationship.  The relationship which does

3  result is in the nature of a bailment rather than a

4  debtor/creditor relationship.  The treasury bills remain the

5  property of the client.

6          The FDIC further conceded that the receiver stands

7  in place of the bank which he represents and has only such

8  rights as it has.  In other words, he takes only such title

9  as the bank had subject to all the equities which existed

10  against the assets in the hands of the bank.  That's tab

11  eight.

12          Then at tab nine, we have a letter from the

13  Comptroller of Currency dated July 27, 2001, to the president

14  of a national bank, where the Comptroller's Office recognizes

15  when property is held in safekeeping or temporary custody, as

16  was the case here, the bank is a bailee and merely assumes

17  custody without authority to use it.  That's at tab nine.

18          Then in tab ten, we've cited the Comptroller's

19  Handbook, which has a section dealing with consigned items

20  and other customer services that includes safe deposit boxes,

21  safekeeping for customers' valuables, custody accounts for

22  customers' property and the like and clearly indicates that

23  that property does not affect the bank's general ledger, and

24  is segregated from the bank's assets.

25          Then at tab 11, your Honor, we have the American

```
 1   Bankers Association publication entitled Are My Trust and

 2   Custody Accounts (sic) Safe, dated June 30, 2009, where the

 3   American Bankers Association states that the types of

 4   custodial and bailee accounts we're talking about here do not

 5   become the assets of the bank and are segregated from the

 6   bank's assets.  And those custodial and bailee accounts are

 7   not subject to the claims of creditors and the bank's role

 8   was merely to hold those custodial and bailee assets for

 9   safekeeping.

10          And it says in closing:

11          "As a result, a failure of a bank will have

12      no adverse effect on trust, fiduciary or custodial

13      accounts:  They remain the property of the

14      account's owners."

15          Now, of course the Bank of America bailee letters

16   you've looked at and already interpreted in this case as a

17   matter of law provide that Colonial was to hold Bank of

18   America loans and only to be a custodian agent and bailee for

19   the secured parties.  So, we know exactly what we're talking

20   about, a bailment or a custodial account.

21          So, all of the admissions that we just read you

22   from the FDIC's publications and their related governmental

23   agencies apply to the Bank of America's property that was

24   held temporarily by Colonial.

25          Now, if they suggest to you that they're holding
```

1    Bank of America bailed property as an asset of the bank, we

2    would suggest that the Federal Financial Institutions

3    Examination Council, which proscribes standardized reporting

4    standards for the FDIC and other governmental banking

5    regulation agencies, under which all insured banks report,

6    they issue report (sic) quarterly and yearly.  And those

7    reports are called "Call Reports."  And the purpose of those

8    reports is for federal agencies like the FDIC to be able to

9    monitor the financial health of a bank.

10           And with respect to the custodial or bailee

11   accounts, exactly like we're talking about here, the Call

12   Reports identify -- and this is tab nine -- excuse me ---tab

13   12 at page nine, a custody account.  A custody account is one

14   in which securities or other assets are held by a bank on

15   behalf of a customer under a safekeeping arrangement.  Assets

16   held in such capacity are not to be reported in the balance

17   sheet of the reporting bank, nor are such accounts to be

18   reflected as a liability, which means they were never assets

19   of Colonial.

20           All those instructions make it clear that these

21   bailed properties that were given to Colonial temporarily

22   never become assets of Colonial and, of course, here we're at

23   a much stronger position, because even the bailment, itself,

24   was terminated before we ever filed suit and before this

25   Court entered its TRO.

```
 1           There's also case law definition of what an asset
 2   is of a financial institution.  And generally that definition
 3   is property which can be made available for the payment of
 4   debts.
 5           Now, as we'll see in a moment, bailed assets, the
 6   contents of safe deposit boxes, all those things that a bank
 7   holds temporarily, cannot be made available to creditors of
 8   the bank to pay them off.  And we've cited, your Honor, the
 9   In Re:  Washington Bank case, that's at tab 13, Black's Law
10   Dictionary, tab 14, and so forth.
11           And we've also cited a three-prong test used by the
12   cases to decide whether or not property is an asset of a
13   bank.  And as to all those questions, we've cited the Scott
14   case.  That's an opinion that was withdrawn, which I'll get
15   to in a moment.
16           With respect to all of those three prongs of the
17   test, they don't meet any of the prongs of the test of
18   whether or not it is an asset of the bank, none of them,
19   because it was only temporarily in their control under a
20   bailee letter.
21           Courts throughout the country have reviewed whether
22   or not property like this is property of the receipt of
23   the -- excuse me -- of the estate, once a receiver takes
24   over, and consistently held that bailed properties do not and
25   never become property of the receivership estate.
```

1              And we've cited the In Re:  Haase case for that

2    proposition, that when property is entrusted to a financial

3    institution under a bailment agreement, it doesn't become a

4    property of the estate.

5              And we've also cited the Farrell vs. Sharon Steel

6    case for the same proposition, that if you only have

7    temporary custody, you don't have any right, title, or

8    interest in that.  And likewise the Scottsdale contractors

9    case, which is an Eleventh Circuit case, to the same effect

10   that funds held temporarily don't become funds of the bank.

11             And the Bank of West Orange case and the La Fayette

12   case, and so forth, that when you enter into such an

13   arrangement with a bank where they have temporary custody, it

14   never becomes their asset.

15             And it's sort of summed up in the Clow case --

16   excuse me -- the Clow case where it says a receiver has no

17   right to property which does not belong to the individual or

18   corporation over whose estate he was appointed at the time of

19   appointment.  The receiver can take no right or title which

20   was extinguished before his appointment -- which ours was --

21   and he can acquire no other greater right or title than the

22   debtor had in the property.

23             There are a number of cases -- all those cases are

24   at tab 16.  There's a case of Andrew, State Superintendent of

25   Banking vs. Citizens' State Bank.  And that case talks about

```
 1    bonds where the bank held them as bailee when it was taken
 2    over by a receiver.  And that case said that the appointment
 3    of the receiver did not change the bailment relationship
 4    between the bank and the claimants and it would be unjust to
 5    increase the assets of the bank by property merely held in a
 6    bailment.  And that's at tab 17.
 7            Warren vs. Judson (phonetic) essentially says
 8    essentially the same thing, that the bank can't take over
 9    bailed notes that they merely held temporarily in their
10    custody and so forth.
11            Now, the FDIC was appointed by the State of Alabama
12    banking department.  That's at tab 18.  And under Alabama law
13    that Section 5-8A-25 (sic), it makes it clear that the FDIC's
14    succession to receivership is only to the assets of the bank
15    and not to property they merely held in temporary custody.
16    That's at tab 19.
17            Now, if you look at the accounting treatment,
18    Judge, under the accounting treatment under GAP, as explained
19    by the Federal Financial Institutions Examination Council,
20    GAP controls.  That's at tab 20.
21            And under GAP, bailed property does not become the
22    property of a bank.
23            So, to be a financial asset, the asset must arise
24    from a contractual agreement.  And, of course, we know what
25    the contractual agreement here says.
```

1              If you look at the IRS laws, Judge, which we did,

2     and this is -- the cases are all under tab 21 -- all those

3     cases under the IRS laws say essentially that property held

4     as a bailee never transfers or becomes to the benefit of --

5     excuse me --property held by the bailee -- yeah -- never

6     becomes the property or assets of the bailee.

7              And, your Honor, I know you gave the FDIC a number

8     of analogies as to what or what could not be an asset of a

9     financial institution, you've talked about the car this

10    morning, we talked about the family jewelry in the safe

11    deposit box.  It's my understanding that counsel just told

12    you again that Colonial Bank has the safety deposit box

13    contents as an asset and the receiver gets to administer

14    those assets.  Well, that's not accurate.

15             If you look at tab 23, you'll see that the FDIC

16    pronouncements concede that property in a safe deposit box

17    never becomes the property of a FDIC receivership.  It's a

18    document on their website entitled "Failed Bank Information.

19    Questions and Answer Guide for Colonial Bank."  And this is

20    for this specific bank, Colonial Bank.

21             And as to the issue of safety deposit boxes, it

22    says --

23             **THE COURT:**  That's tab 22, right?

24             **MR. STEINBERG:**  That is at tab 22.  And that's for

25    Colonial Bank.  And it's the safe deposit boxes -- you should

1    have a blue tab -- it says:

2            "How can I claim the contents of my safe

3        deposit box?

4            "Answer:  It is business as usual.  You can

5        go to your local branch and access your safe

6        deposit box.  No action on your part is required

7        because of this transaction."

8            And the FDIC has made similar pronouncements about

9    failed banks in general over many years.  They are collected

10   at tab 23, where essentially they say, the assets of a safe

11   deposit box never become the assets of the receivership and

12   you can take them at your will.

13           And they're consistent with the case law concerning

14   safe deposit boxes.  We have cited Camerer vs. California

15   Savings and Seitz vs. Lamay Bank & Trust at tab 24 for the

16   same exact proposition.  In fact, even when the safe deposit

17   box holder gave the president of the bank access to his box,

18   and the president of the bank comingled those assets with the

19   assets of the failed institution, the receiver of the

20   ultimately failed bank was ordered to turn those bonds back

21   over to the owner.

22           So, that brings us to the second question, Judge,

23   is:  Does this Court have jurisdiction to decide what

24   constitutes an asset of the receivership?  I think it's quite

25   clear that these goods were never assets of the receivership.

1            And, of course, we go back to Supreme Court law.

2    And the threshold question in every action before every court

3    is whether the Court has jurisdiction to adjudicate the

4    claims before it.  And that's familiar law that this Court is

5    very familiar with, U.S. vs. Ruiz, Supreme Court case.  And a

6    court's determination of its own jurisdiction is one of the

7    most basic and fundamental functions of an Article III court.

8    That's the Coit case, U.S. Supreme Court case, tab 25.

9            So, to start with, Judge, you have to determine

10   whether you have jurisdiction at the outset, rather than

11   allowing an agency to determine this issue in the first

12   instance.  And we cite for that proposition, the Eleventh

13   Circuit case of Whitaker vs. American Airlines.  That

14   essentially says you have the absolute authority to determine

15   whether you have jurisdiction.  And you have to make certain

16   factual and legal findings to determine whether you have

17   jurisdiction.

18           Now, we would suggest, Judge, that you've already

19   made those findings in your TRO order.  And those findings

20   essentially hold that the bailed assets aren't the assets of

21   the bank.  And that it would not disturb the receivership for

22   those assets to be returned to Bank of America.

23           So, if you find that the Bank of America's loan

24   documents and proceeds are not part of the receivership

25   estate because they were not the assets of Colonial, then you

1   can exercise your jurisdiction to enjoin the FDIC from taking

2   any action which would dissipate that property, which would

3   clearly be outside their statutory authority as a receiver,

4   since their authority only applies to the assets of the

5   failed institution.

6          And, remember, the statute that bars you from

7   acting only bars you from acting with respect to the assets

8   of the failed institution.

9          **THE COURT:**  You've got about two or three more

10  minutes, Mr. Steinberg.

11         **MR. STEINBERG:**  Okay.

12         **THE COURT:**  I mean I'll read all of these

13  materials, just like I'll read the cases the FDIC has given

14  me, but I've got to get back to another hearing,

15  unfortunately.

16         **MR. STEINBERG:**  Your Honor, there are two cases --

17  it's interesting to note that in these cases, where there's

18  an exact, all fours situation here, and the FDIC has been

19  enjoined, what happens in those cases is the FDIC settles

20  those cases, and while the case is on appeal, they request

21  the plaintiff to declare those opinions of the Court as moot.

22  And there are two such cases that are like that.

23         Now, this Court and the Eleventh Circuit decision

24  of Friends v. Everglades is free to give vacated opinions any

25  value that you think it's worth.  But that's the Cummings

```
 1   case, which is one of their cases they just cited, cited with
 2   approval.
 3           And in the Cummings case, that was a case where the
 4   receiver wanted to act with respect to property that it
 5   possessed after it took the receivership, but really wasn't
 6   an asset of the underlying failed institution.  And in that
 7   case, the federal court said, no, if it's not an asset of the
 8   failed institution, one, this Court gets to make the decision
 9   that it's not an asset of the failed institution and
10   determine whether we have jurisdiction; and, two, if it's not
11   an asset of the institution, you're not acting as a receiver
12   over that asset and you can be enjoined and you can be
13   subject to court supervision.
14           THE COURT:  Where can I find the Cummings case?
15           MR. STEINBERG:  Yes, your Honor.  The Cummings case
16   is at tab 27.
17           And an almost identical case, the Scott case --
18   that's at tab 28 -- a similar situation.  After the FDIC lost
19   this exact battle over whether they could be enjoined for
20   trying to obtain control of assets which aren't theirs, once
21   the case went on appeal, they settled it and asked that the
22   underlying opinion being vacated.  And that's at tab 28.
23           And, you know, that's a similar case.  They were
24   certain real estate assets that were allegedly pledged as
25   collateral.  It was later discovered that some of the real
```

1     estate was not covered by the collateral documents.  The

2     plaintiff asked for his property back.  The RTC said no, once

3     we're in receivership, you can't get your property back, even

4     though they admitted that there was a mistake in the

5     underlying documents.  And the Court said, no, I get to

6     decide whether or not that property is the property of the

7     estate; if it's not the property of the estate, I can act and

8     I can enjoin or order the FDIC to act in a manner which is

9     fair and appropriate.

10          Now, our position is, under the bailee letters,

11    this Court has the authority to act because the bailee

12    letters only have a temporary possession, there were

13    terminated, we have a right to it, and it never becomes the

14    property of the receivership estate.

15          It's also important, Judge, the last question is

16    can you make the decision now?  Our position is you must make

17    the decision now.  If you look at the claims process, which

18    they say they want us to go through -- and the case law is

19    very clear on the claims process -- the claims process only

20    applies to creditors of the bank.  Bank of America is not a

21    creditor of Colonial Bank.  And it's clear from the cases

22    we've cited, In Re:  Parker, and the other cases that we've

23    cited and that can be found -- let's see -- if you look at

24    1821(d), the exhaustion process, if you look at All Season's,

25    and they say that the FIRREA only applies to claims of

1  creditors against the RTC, and we are not in that position of

2  a creditor of the RTC.

3            And if you also look at Chicago Title, and

4  FDIC vs. Source One -- they are both at tab 30 -- they

5  essentially say that when you're in the position like BoA,

6  with bailee assets that never become their assets, then you

7  do not have to file a claim, you do not have to go through

8  the claims process, this is outside the claims process, and

9  those are cases that denied the RTC's motion to dismiss for

10 lack of subject matter jurisdiction, because these assets

11 were not part of the assets of the bank, and the party

12 pursuing the assets was not a creditor of the bank.  And the

13 Court ruled, if you're not a creditor of the bank, and the

14 underlying bank never had those assets, then you do not have

15 to go through the claims process, because you're not a

16 claimant, and that decision must be made by the Court now,

17 because, obviously, we're in a situation with a failed bank,

18 there are a lot of claims for these monies, they have our

19 bailed assets, and we want those assets protected.

20            So, your Honor, we believe all of the three

21 questions you asked have been answered in the affirmative by

22 Bank of America, but have not been addressed by the FDIC.  We

23 believe you have ample authority to enjoin them.

24            Thank you, your Honor.

25            **THE COURT:**  All right.  Thank you, Mr. Steinberg.

```
 1              Mr. Rojas, you have five minutes, if you'd like.
 2         MR. ROJAS:  Thank you, your Honor.
 3              I'll probably need less than that, because I think
 4    I can sum up essentially the fallacy and the position that
 5    has been advanced by Bank of America by pointing out that the
 6    problem with their arguments is they are putting the cart
 7    before the horse.
 8              And your Honor did ask those three questions.  But
 9    what's critical here and what the case law establishes is
10    that the sequence of those questions is the key.
11              The first question that needs to be asked is who is
12    it that makes the determination of whether or not something
13    is within the estate or within the receivership or is an
14    asset?  And counsel goes on at length and there's a number of
15    tabs about what is considered or not considered to be an
16    asset.  And that may very well be as we said at the beginning
17    that at the end of the day, if assets are traced or they are
18    specifically identified and are found to have been assets
19    that were received from these bailments and that they were in
20    fact assets that were supposed to be specially deposited, and
21    we can identify where they are, that they may very well be
22    deemed not assets of the estate and released to Bank of
23    America.  That may very well be the case.  No question about
24    that.
25              THE COURT:  But the evidence I have before me
```

1    indicates that the answer to that question is yes as of right

2    now.

3            **MR. ROJAS:**  Well, actually, no, your Honor.  You do

4    not have any evidence before you as to what specific funds

5    there are.  Do we have a dollar amount?  Do we have a

6    specific dollar amount for a particular account?  Do we have

7    any way to trace the dollar?  That's one of the issues here

8    is, we have to go through and we have been saying this, we

9    have to forensically examine where did the monies go.

10           The allegations were, if your Honor refers to their

11   complaint, upon information and belief, monies were received

12   and were supposed to have been held, and then they're saying

13   if they weren't, then that's a civil theft.  And if they

14   weren't on another basis, it would be a constructive trust.

15           Well, that's the problem.  They haven't said, yeah,

16   here it is, it's right in our name, it's real simple, here's

17   the dollar amount of that account and here's a copy of the

18   statement.  That's not before the court.  And part of the

19   process that the FDIC --

20           **THE COURT:**  They submitted the letters.

21           **MR. ROJAS:**  The letters saying what should have

22   happened.  What we're saying is we don't know if it did or it

23   didn't.

24           **THE COURT:**  All right.  But that's beside the

25   point.

```
 1           MR. ROJAS:  Your Honor, it's not because this gets
 2   back to the --
 3           THE COURT:  It is.  Because if you have property
 4   that belongs to someone like Bank of America and they turn it
 5   over to Colonial merely as a custodian, based on the record
 6   evidence I have right now, which is based solely on the
 7   complaint, the affidavits, the declarations and exhibits
 8   submitted by Bank of America, Colonial was supposed to
 9   segregate those funds and return them upon demand.  Again,
10   according to the evidence I have, Colonial did not do that.
11           So, whether it's segregated, that money as it
12   should have or not, may be relevant to a constructive trust
13   claim.  I did not base the TRO on a constructive trust
14   theory.  I based it on Florida civil theft statute, because I
15   thought it was simply easier to apply the facts that I had to
16   that legal theory.  And under a civil theft theory, I'm not
17   sure that segregation is necessary.  It might be necessary
18   for something like conversion, common-law conversion or
19   constructive trust, but Florida's civil theft statute is
20   broader.  So, the mere fact that Colonial may not have
21   segregated the funds doesn't affect jurisdiction, I don't
22   think.
23           MR. ROJAS:  It does for the reason, your Honor,
24   respectfully, that that even more so, because then what we're
25   talking about is having a general claim, as any plaintiff
```

```
 1   would have saying there was a breach of contract or there was

 2   some violation or some tort that was committed as opposed to

 3   having some asset that's not part of the estate.  Because at

 4   least if there's an identified fund --

 5            THE COURT:  I mean, if someone had a hundred

 6   thousand dollars in their safe deposit box, and a day after I

 7   entered a TRO on that hundred thousand dollars a Colonial

 8   official took the hundred thousand and stuck it in a general

 9   purpose account for Colonial, do I have jurisdiction to

10   enjoin the FDIC from disposing of those hundred thousand

11   dollars, or not?

12            MR. ROJAS:  Your Honor, that's a different fact

13   altogether.

14            THE COURT:  I do understand that it is.

15            MR. ROJAS:  Right.  Because here the issue was that

16   that money, from what they've alleged, only on information

17   and belief was it ever even segregated.  In fact --

18            THE COURT:  No, no, but under my hypothetical now,

19   Colonial eliminated any segregation by depositing the hundred

20   thousand into a general purpose account.  Now, it's just

21   money is money and money is fungible.  Do I have

22   jurisdiction?

23            MR. ROJAS:  No, your Honor.  Once it's in the

24   fungible general assets, now we're acknowledging expressly it

25   would have been commingled with general assets, if that's the
```

```
 1    case --
 2             THE COURT:  So comingled now --
 3             MR. ROJAS:  -- then clearly there is no
 4    jurisdiction.
 5             THE COURT:  Your argument is that even if something
 6    was not an asset of the bank, if it's commingled, it becomes
 7    an asset of the bank for the purposes of the statutory
 8    jurisdiction divesting me of jurisdiction.
 9             MR. ROJAS:  Well, it would at least be in the
10    control because you can't identify -- how do you identify?
11    You would have to go through that process.
12             And that's why, if you look at 1813(c) --
13    (d)(13)(C), which he admitted, Mr. Steinberg admitted
14    reference to, it says, "no attachments shall be entered
15    against property in the possession."  That's where it talks
16    about possession --
17             THE COURT:  I know, but I don't have any evidence
18    from the FDIC whatsoever that this has been segregated --
19    that it's been commingled, you know, that it's in general
20    assets or anything else.  What I have is evidence that the
21    money was turned over, that it was supposed to be kept in a
22    segregated account.  Now I have all of these informal FDIC
23    pronouncements indicating that these sorts of funds are
24    supposed to be kept in a segregated account, so why am I
25    supposed to assume that they've all been commingled now?
```

1      **MR. ROJAS:**  Because there is no burden -- the

2  burden has not -- in fact, the FDIC is not required to come

3  (sic) in an injunction proceeding.  That is why the

4  anti-injunction clause is there.  The burden would be on the

5  plaintiff to show that FDIC did do something like that or

6  that in fact the monies were segregated, then disbursed after

7  your Honor entered orders.  There's no such evidence

8  whatsoever for that.

9      **THE COURT:**  Do you want me to set a hearing where

10  an FDIC official comes here and testifies about exactly what

11  Colonial did with the evidence?

12      **MR. ROJAS:**  Well, your Honor, I think it may be

13  appropriate at some point down the road.

14      **THE COURT:**  No, no, not the road.  I can do it now.

15      **MR. ROJAS:**  Well, your Honor, respectfully, no.

16  The position is that the statute is clear --

17      **THE COURT:**  Okay.  Let me, I'm not trying to be

18  difficult, but I'm trying to find out what evidence, if any,

19  you think would satisfy the burden.

20      Let's assume that Mr. Steinberg had subpoenaed a

21  FDIC examiner who's in charge of Colonial Bank.  And that

22  person came today and testified that the assets that belong

23  to Bank of America and that Colonial held in a custodial

24  capacity were always segregated.  And he's been able to

25  figure out that that money is completely segregated in a

1   certain account, was never commingled.

2        Do I have jurisdiction?

3        **MR. ROJAS:**  Well, there's a difference of

4   jurisdiction to decide the ultimate claim down the road?  The

5   answer would be yes.  Do you have jurisdiction to enter an

6   injunction?  The answer would be no.

7        **THE COURT:**  Why not?

8        **MR. ROJAS:**  Because 1821(j) specifically --

9        **THE COURT:**  But now it's not an asset of the bank.

10       **MR. ROJAS:**  But -- no, that's not the issue.  The

11   issue is who makes that determination.  The determination is

12   to be made by the FDIC, not by the Court.

13       Now, there is --

14       **THE COURT:**  But if I don't enter an injunction and

15   this case goes on its merry path, I can enter a judgment

16   against the FDIC?

17       **MR. ROJAS:**  Yes, your Honor.  Yes, your Honor, you

18   can.

19       As a matter of fact, there are -- the Merrill Lynch

20   case is a classic example.  That's why we said the Merrill

21   Lynch case actually helps us.  Because the Merrill Lynch

22   case, what ended up happening was it came back to the Court,

23   and the Court did enter -- not an injunction, but entered

24   damages and did award proper relief.  And your Honor is not

25   deprived of ultimate jurisdiction over this case.  In fact,

1   as I understand it, they have the option here of not

2   proceeding with this claims procedure, given the type of

3   claim that it is, and retaining the litigation in this court,

4   whether it be here or there might be a motion on venue, we

5   don't know.  But the bottom line is federal court would

6   potentially still have jurisdiction at the end of the day to

7   review the whole thing.  And if the FDIC did something

8   unlawful, then the FDIC will be accountable for that at the

9   right time and under the procedures set out under FIRREA.

10          The issue's not that.  The issue is now under the

11  injunction whether or not there can be this type of

12  restraining at this moment before that determination has been

13  made.

14          THE COURT:  No.  But I'm making that determination.

15  I mean --

16          MR. ROJAS:  I understand, your Honor.

17          THE COURT:  It uses the word "asset," Mr. Rojas.

18  That's a term of art.  It means something.

19          MR. ROJAS:  But it --

20          THE COURT:  It doesn't mean everything.  It can't

21  possibly mean everything.  Right?

22          MR. ROJAS:  Well, anything that's in its

23  possession.

24          THE COURT:  No, that possibly can't be right.

25          MR. ROJAS:  Your Honor, respectfully that's what

1   (d)(13) --

2            **THE COURT:**  Okay.  Let me give you the most extreme

3   hypothetical I can possibly think of to make my point.

4            The FDIC decides that it is going to hold every

5   single employee of Colonial hostage until they figure out

6   exactly what's going on with the Colonial records and assets

7   and money and everything else.  And some of those people want

8   to go home.  So, they file a petition for writ of habeas

9   corpus in the nearest federal district court saying please

10  let me out, I'm not being paid, I'd really like to go home,

11  I've been working 48 hours in a row and I don't want to be

12  here anymore.  Does the district court have federal

13  jurisdiction to enjoin the FDIC from keeping those people at

14  the bank against their will, even though the FDIC is acting

15  in its receivership capacity?

16           **MR. ROJAS:**  Your Honor said habeas corpus.  That's

17  a special writ --

18           **THE COURT:**  No, it isn't --

19           **MR. ROJAS:**  That's a whole different thing.

20           **THE COURT:**  -- because 1821 would apply to that,

21  too.  This case is not brought under 1821; it's brought under

22  Florida law.  Florida law allows for injunctive relief.

23  Habeas corpus federal law allows for injunctive relief.

24           So, would a federal district court have habeas

25  jurisdiction to order the FDIC to release those bank

1  employees who are being held against their will and being

2  forced to work?

3          **MR. ROJAS:**  Your Honor, I don't know about habeas

4  jurisdiction, but you would not have jurisdiction to enter an

5  injunction with regard to, for instance, damages claims

6  for --

7          **THE COURT:**  I'm not asking about damages.

8          **MR. ROJAS:**  -- false imprisonment or for --

9          **THE COURT:**  No damages.  These people just want to

10  go home.

11          **MR. ROJAS:**  That may be a different -- I don't know

12  the answer, to be honest with you --

13          **THE COURT:**  It is a different thing --

14          **MR. ROJAS:**  But I think that's a totally

15  different --

16          **THE COURT:**  It is.

17          **THE COURT REPORTER:**  Counsel, you can't speak at

18  the same time.

19          **THE COURT:**  The principle is exactly the same.

20          **MR. ROJAS:**  Your Honor, the difference here is that

21  what we're talking about are, is making a determination

22  whether or not there are assets that are within the bank's

23  possession and control under (13)(C).

24          **THE COURT:**  See, you've been jumping around from

25  position to position.  So, I want to know what the ultimate

1  position is.

2          Is it that I can't enjoin the FDIC in its

3  receivership capacity no matter what it does?  Or that I

4  can't do it when it's trying to figure out what the assets

5  are?  Or that I can't do it at this early stage because right

6  now the FDIC has to have the first shot at it?  Which of

7  those three is it or is it more than one?

8          **MR. ROJAS:**  I think the first two are related,

9  which is where the FDIC is performing its receivership

10  functions, as specifically delineated in 1821 under FIRREA,

11  under -- within those powers, as long as -- it's a function

12  question -- as long as the FDIC's acting within those powers,

13  then, yes, your Honor cannot enjoin the FDIC from doing it.

14          **THE COURT:**  So, I wouldn't be able to release those

15  bank employees.

16          **MR. ROJAS:**  Well, you see, I think that holding

17  bank employees is beyond the powers of what FIRREA envisions.

18  And I think that's really the answer --

19          **THE COURT:**  So, it's really a question of whether

20  the FDIC is exercising a statutory power.

21          **MR. ROJAS:**  Yes, is it acting, is it performing its

22  statutory powers --

23          **THE COURT:**  So, I get to make that call in the

24  first instance.

25          **MR. ROJAS:**  No, you don't, your Honor.

1          **THE COURT:**  Then how would I do it in the case of

2     the bank employee hostages?

3          **MR. ROJAS:**  Because that would not be -- well,

4     okay, I'm sorry.  A threshold question, is it within the

5     power -- is it with the face of FIRREA?  Yes.  If holding an

6     employee hostage is not within the face of FIRREA, then that

7     would be clear --

8          **THE COURT:**  So I at least get to make that

9     threshold determination --

10         **MR. ROJAS:**  Yes.

11         **THE COURT:**  -- even though you think it's very

12     differential and broad.

13         **MR. ROJAS:**  Yes, yes.  I would agree with that.

14     And the analysis -- and this is the way it was done in Bursik

15     and the way it was done in the RPM case in the Eleventh

16     Circuit, especially Bursik, which is the Eleventh Circuit,

17     which says even if you feel it's unlawful or wrong or not

18     following the wrong (sic) procedure, that's not the question.

19          The question is, is it your view, is it your

20     analysis that they were performing a function that's

21     delineated within the specific provisions of FIRREA?

22          And FIRREA defines the function to be that of a

23     receiver, that of marshaling assets, that of bringing in

24     whatever properties are there.

25          And then making determinations of what belongs to

| | |
|---|---|
| 1 | Colonial or what doesn't, what belongs to a creditor and what |
| 2 | doesn't.  That's why I said it's the sequence of the |
| 3 | questions that's the issue.  The who doesn't determine it, as |
| 4 | long as it's within the receivership function, a normal |
| 5 | receiver does as defined by FIRREA is done by the FDIC (sic). |
| 6 | Once it determines, yes, this is within the estate, |
| 7 | et cetera, then it's subject to judicial review, be it |
| 8 | through exhaustion under the claims process, or through |
| 9 | separate litigation, which I believe in this case there might |
| 10 | be a basis for separate litigation, your Honor would be able |
| 11 | to make then that review. |
| 12 | **THE COURT:**  If the FDIC decides in the middle of |
| 13 | the case that these were never assets of Colonial, do I get |
| 14 | to enter a preliminary injunction then? |
| 15 | **MR. ROJAS:**  No.  But you perhaps would be able to |
| 16 | enter a judgment. |
| 17 | **THE COURT:**  What's the difference between those |
| 18 | two? |
| 19 | **MR. ROJAS:**  Well, the judgment, they get the money, |
| 20 | it's done, it's an award versus an injunction that |
| 21 | restrains -- you talking about mandatory injunction?  The |
| 22 | difference between a mandatory injunction -- |
| 23 | **THE COURT:**  Most injunctions are mandatory, yes. |
| 24 | **MR. ROJAS:**  Well, the answer would be, no, still |
| 25 | you cannot enter an injunction, you can enter a judgment. |

1    There are case (sic) of Merrill Lynch entered a judgment,

2    (d)(6) --

3           **THE COURT:**  I know, but those cases didn't involve

4    a request for an injunctive relief.

5           **MR. ROJAS:**  Actually they did.  And the --

6           **THE COURT:**  Not in the reported opinion.

7           **MR. ROJAS:**  Well, in the original case like Sharpe

8    is a good example.  The original request was for injunctive

9    relief that was eventually mooted out.  And when it went

10   forward was on this claim of whether or not the property was

11   properly part of the estate or not.  Sharpe was not an

12   injunction case.  And Merrill Lynch was also not an

13   injunction case.  These were cases that came back before the

14   Court as some of the others ones that Mr. Steinberg cited

15   today, there were cases that came back before the Court after

16   litigation, after the claims process in due course, not at

17   the injunctive stage.  So, I think that's the key difference.

18           And it's not to say that the Court will not at the

19   end of the day be able to review this.  And if the evidence

20   is presented -- you see, part of the problem, Judge, frankly,

21   is that there is no evidence right now as to which account

22   has what money that they put in.  And it's not the burden of

23   the FDIC at this stage -- in fact, there's a time for stays,

24   there's times for repudiation of contracts, there's all sorts

25   of different rules that apply under FIRREA -- I'm not going

1    to go into the whole litany of them -- but there are things

2    that need to be done, that once they're done, then things

3    are -- you know, the facts are before the Court.  Then they

4    can come before your Honor, if it's still here, and we can

5    present, have a full-blown evidentiary hearing at that time,

6    we can have a trial on the issues.

7            But that doesn't happen -- the problem is having it

8    happen within the two-week period, which is really what's

9    happening here.  That's why --

10           **THE COURT:**  You can ask for more time to have that

11   hearing.  You just don't want an injunction entered against

12   you.

13           **MR. ROJAS:**  Well, the problem is not to have an

14   injunction, that's correct.

15           **THE COURT:**  That's what would happen in the normal

16   course of events.  The defendant would say, listen, I can't

17   get everything together in the two-week period that a TRO is

18   going to last, so we're going to agree to have the injunction

19   exist for another two to three to four weeks and please set

20   an evidentiary hearing a month and a half from now.

21           **MR. ROJAS:**  Yeah, but --

22           **THE COURT:**  And everybody would agree and we'd do

23   that.  You just don't want to agree to an injunction, because

24   you don't think I have jurisdiction to issue one.

25           **MR. ROJAS:**  Well, it's not because I don't want to,

```
 1   I believe Congress said, your Honor, with all due respect.
 2         THE COURT:  Well, I understand what you're arguing.
 3         But -- let me just say that for whatever it's
 4   worth, I'm giving you the opportunity to present that
 5   evidence if you wish to.  It's your position that it's their
 6   burden and that I don't have jurisdiction to enter an
 7   injunction.  But let me just say, for whatever it's worth, in
 8   case there's an appeal, that I'm giving you the opportunity
 9   to present that evidence if you wish to.  You just don't want
10   to right now, because of your legal positions, which may in
11   the end carry the day for you.
12         MR. ROJAS:  Well, we believe the burden is on the
13   plaintiff to have put in that evidence in the first instance
14   and that they have not met that burden to establish a
15   preliminary injunction in any case.
16         THE COURT:  Under Florida civil theft law?
17         MR. ROJAS:  Especially after the change of
18   fact where there's no longer a factual --
19         THE COURT:  But there's no requirement under
20   Florida civil theft law that the accounts be segregated, is
21   there?
22         MR. ROJAS:  Not to my knowledge, your Honor.  But
23   if that's the case, then that's a general claim and not a
24   segregated claim.  And then we're looking at having general
25   claims against the bank, which are more clearly prohibited by
```

1    1821 today.

2           **THE COURT:**  I know.  But in issuing an injunction,

3    I have to look at the provision that allows me to issue that

4    relief.  Here it's Florida civil theft law.  So, to the

5    extent I get to that point, that's what guides what has to be

6    established to get an injunction, not general principles of

7    equity.

8           **MR. ROJAS:**  Except, your Honor, we're now at a

9    proceeding where -- the facts that were presented at the TRO

10   level are no longer the case.  In other words, you had a bank

11   that was under criminal investigation, with substantial risks

12   that they were gonna fail and so and so.  Now you have FDIC

13   in there.  You don't have any allegations of criminal

14   elements or criminal investigations.  The facts are changed.

15   The TRO by its own definition was self-expiring.

16          To make a preliminary injunction basis under the

17   current state of facts, the plaintiff should have the burden

18   of showing where there's a substantial likelihood of success,

19   irreparable harm, or if not, how they can perhaps claim a

20   civil theft claim against the FDIC, which to be honest, I'm

21   not sure under the dense doctrine or other statutory

22   provisions of the FIRREA, is something that they could do

23   legally in any case.

24          **THE COURT:**  I know.  But those arguments haven't

25   been many presented to me.  Your argument is a pure

1    jurisdictional one and that's what I'm going to address.

2            **MR. ROJAS:**  Because if we were not trying to waive

3    our jurisdictional argument and we're saying that they

4    haven't met their burden, we don't see that under those facts

5    there should be a need to put on evidence that is really

6    defensive evidence, because we're not even dissolving the TRO

7    at this point, it's whether or not a positive preliminary

8    injunction should be issued under the new set of facts that

9    exist.

10           **THE COURT:**  But the only new set of facts is that

11   the FDIC has come in.

12           **MR. ROJAS:**  Which we believe is a significant --

13           **THE COURT:**  I know, I know.  But my understanding,

14   assuming that the merits are properly reachable, the critical

15   thing under Florida civil theft law is that the accounts were

16   supposed to be kept segregated.  I mean, a defendant can't

17   defend against a civil theft claim that's properly made out

18   by saying, oh, I was supposed to keep them segregated, I

19   haven't segregated them, I've commingled them, therefore, you

20   don't have a civil theft claim.

21           **MR. ROJAS:**  Your Honor --

22           **THE COURT:**  It can't be that easy for a defendant.

23           **MR. ROJAS:**  Once the FDIC steps in, the

24   comprehensive framework of FIRREA would preempt the state

25   laws on this in any case.

1          **THE COURT:**  Okay.  I think I understand, Mr. Rojas.

2   Thank you very much.

3          I have a lot of reading to do.  And as of right

4   now, before doing all of that reading, I am not convinced

5   that the FDIC is correct, although I may end up agreeing with

6   Mr. Rojas's arguments.  And given that I still have another

7   evidentiary hearing to continue once all of you leave, and

8   that I start trial tomorrow, I am going to continue the

9   preliminary injunction through the close of business on

10  Thursday.

11         If I decide earlier than that, that the FDIC is

12  correct, and that I should not or cannot use equitable powers

13  to enjoin the FDIC at this point, I will simply issue a

14  one-line order telling you about that and then follow it up

15  with a memorandum opinion.

16         At the latest, by the close of business on

17  Thursday, you will have a full-blown and detailed written

18  opinion concerning my ultimate ruling on the request for a

19  preliminary injunction.

20         Okay?  I'll enter a short order.  And let me just

21  say that for now, I continue to believe that the findings set

22  forth in the TRO order are sufficient to establish the

23  elements for a preliminary injunction under Florida civil

24  theft law, and, again, given the cases that were cited to me

25  at the last hearing by Mr. Steinberg, I believe, given the

1    preliminary showing that these assets never belonged to

2    Colonial, that I am not barred under 1821(j), I think it is,

3    from enjoining the FDIC with regards to those assets.

4            But, again, I want to read the cases that everyone

5    has given me this afternoon, look at the issue a little bit

6    more carefully, and I will give you a full-blown order no

7    later than the close of business on Thursday.

8            Okay?  Thank you very much.

9            **MR. STEINBERG:**  Your Honor?

10           **MR. ROJAS:**  Your Honor?

11           **MR. STEINBERG:**  Your Honor?  May we submit a

12   supplemental brief between now and Thursday?

13           **THE COURT:**  Either side can if you wish, but if

14   you're going to do it, no later than the close of business

15   tomorrow so I have a chance to read it.

16           **MR. STEINBERG:**  Thank you, your Honor.

17           **THE COURT:**  Okay?  No replies.  Simultaneous

18   filings if you want.  Close of business tomorrow.

19           Okay?  Thank you.

20           (Proceedings concluded at 4:08 p.m.)

21                    -  -  -  -  -

22

23

24

25

1                    C E R T I F I C A T E

2      I certify that the foregoing is a correct transcript from

3      the record of proceedings in the above-entitled matter.

4

5

6        /S/Francine C. Salopek                    9-2-09
       Francine C. Salopek, RMR-CRR        Date
7      Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'constructive [1]** 65/3
**'no [1]** 64/23

**/**

**/S/Francine [1]** 110/5

**0**

**09 [1]** 110/5
**09-22384-CV-Jordan [1]** 57/4

**1**

**1-10 [1]** 57/7
**1-8-2-1 [1]** 63/25
**10 [1]** 57/7
**10-1 [1]** 58/17
**101 [1]** 58/7
**1027 [1]** 61/12
**1030 [1]** 68/22
**11 [1]** 77/25
**1111 [1]** 58/14
**12 [2]** 64/22 79/13
**12 U.S.C. 1821 [2]** 71/4 74/2
**12 U.S.C. Section 1821 [3]** 61/7 63/24 64/4
**1209 [1]** 58/10
**13 [16]**
**14 [2]** 76/22 80/10
**15 [1]** 72/4
**16 [1]** 81/24
**17 [1]** 82/6
**17th [1]** 76/17
**18 [1]** 82/12
**1807 [1]** 58/18
**1813 [1]** 94/12
**1821 [22]**
**19 [1]** 82/16
**1987 [1]** 76/17
**1988 [1]** 76/23
**1992 [2]** 60/22 61/4
**1995 [1]** 61/13

**2**

**20 [1]** 82/20
**2001 [1]** 77/13
**2008 [1]** 75/12
**2009 [3]** 57/5 59/1 78/2
**21 [1]** 83/2
**22 [2]** 83/23 83/24
**22226-3500 [1]** 58/15
**22384 [1]** 59/3
**23 [2]** 83/15 84/10
**24 [1]** 84/15
**245717 [1]** 61/4
**25 [2]** 82/13 85/8
**2500 [1]** 58/4
**27 [2]** 77/13 87/16
**28 [2]** 87/18 87/22
**28280 [1]** 58/8
**2:56 [1]** 57/6
**2:56 P.M [1]** 59/1

**3**

**30 [2]** 78/2 89/4
**305 [1]** 58/18
**31 [2]** 57/5 59/1
**33128-1807 [1]** 58/18
**33131 [2]** 58/5 58/11
**3500 [2]** 58/7 58/15

**3501 [1]** 58/14

**4**

**400 [1]** 58/17
**403 [1]** 60/21
**407 [1]** 61/17
**408 [1]** 62/10
**48 [1]** 98/11
**4:08 p.m [1]** 109/20
**4th [1]** 76/22

**5**

**51 F.3d 1027 [1]** 61/12
**523-5568 [1]** 58/18
**5568 [1]** 58/18

**7**

**7126 [1]** 58/14

**9**

**9-2-09 [1]** 110/5
**9130 [1]** 58/14
**974 F.2d 403 [1]** 60/21

**A**

**abide [1]** 66/1
**able [6]**
**about [23]**
**above [1]** 110/3
**above-entitled [1]** 110/3
**absolute [1]** 85/14
**access [2]** 84/5 84/17
**according [1]** 92/10
**account [12]**
**account's [1]** 58/14
**accountable [1]** 97/8
**accounting [2]** 82/17 82/18
**accounts [13]**
**accurate [1]** 83/14
**acknowledging [1]** 93/24
**Acosta [2]** 58/2 59/7
**acquire [1]** 81/21
**act [4]** 87/4 88/7 88/8 88/11
**acting [10]**
**action [5]** 74/23 74/23 84/6 85/2 86/2
**actual [1]** 77/13
**actually [5]** 62/22 63/25 91/3 96/21 103/5
**Adalberto [1]** 57/13
**address [2]** 61/15 107/1
**addressed [3]** 71/19 71/25 89/22
**addresses [1]** 65/22
**adjudicate [1]** 85/3
**adjudicating [1]** 62/13
**administer [1]** 83/13
**administrative [1]** 62/16
**admissions [3]** 72/23 73/12 78/21
**admitted [3]** 88/4 94/13 94/13
**advanced [1]** 90/5
**adverse [1]** 78/12
**advisory [2]** 76/16 76/22
**affect [2]** 77/23 92/21
**affidavits [1]** 92/7
**affirmative [1]** 89/21
**afraid [1]** 69/25
**after [11]**
**afternoon [6]**
**again [7]**
**against [11]**
**agencies [3]** 78/23 79/5 79/8

**agency [1]** 85/11
**agent [1]** 78/18
**aggregated [1]** 76/19
**aggrieved [1]** 67/20
**agree [5]** 75/7 101/13 104/18 104/22 104/23
**agreeing [1]** 108/5
**agreement [4]** 71/11 81/3 82/24 82/25
**Airlines [1]** 85/13
**Alabama [2]** 82/11 82/12
**Alejandro [2]** 58/9 59/12
**all [33]**
**allegations [2]** 91/10 106/13
**alleged [1]** 93/16
**allegedly [1]** 87/24
**allowing [1]** 85/11
**allows [3]** 98/22 98/23 106/3
**almost [1]** 87/17
**along [1]** 59/12
**already [3]** 60/2 78/16 85/18
**also [13]**
**although [2]** 61/8 108/5
**altogether [1]** 93/13
**always [1]** 95/24
**am [4]** 94/24 108/4 108/8 109/2
**ambit [1]** 70/25
**AMERICA [20]**
**America vs. the [1]** 59/4
**America's [2]** 78/23 85/23
**American [3]** 77/25 78/3 85/13
**amount [3]** 91/5 91/6 91/17
**ample [1]** 89/23
**analogies [2]** 67/12 83/8
**analogy [1]** 68/2
**analysis [2]** 101/14 101/20
**Andrew [1]** 81/24
**announce [1]** 59/5
**another [7]**
**answer [10]**
**answered [1]** 89/21
**answering [1]** 75/5
**anti [1]** 95/4
**anti-injunction [1]** 95/4
**any [31]**
**anymore [1]** 98/12
**anything [2]** 94/20 97/22
**appeal [5]** 61/13 62/25 86/20 87/21 105/8
**appearances [2]** 58/1 59/5
**applicable [1]** 68/22
**applies [3]** 86/4 88/20 88/25
**apply [7]**
**appointed [4]** 72/13 75/1 81/18 82/11
**appointment [4]** 66/2 81/19 81/20 82/2
**appropriate [4]** 62/15 62/20 88/9 95/13
**approval [2]** 70/24 87/2
**aren't [2]** 85/20 87/20
**arguably [4]** 66/11 68/6 68/7 68/8
**arguing [1]** 105/2
**argument [5]** 67/23 71/8 94/5 106/25 107/3
**arguments [3]** 90/6 106/24 108/6
**arise [1]** 82/23
**arising [1]** 64/12
**Arlington [1]** 58/15
**around [1]** 99/24
**arrangement [2]** 79/15 81/13
**arrangements [1]** 75/24
**art [1]** 97/18
**article [2]** 75/13 85/7

## A

**Article III [1]** 85/7
**aside [1]** 68/18
**ask [3]** 69/17 90/8 104/10
**asked [8]**
**asking [1]** 99/7
**asserting [1]** 66/13
**asset [31]**
**assets [101]**
**Association [2]** 78/1 78/3
**assume [2]** 94/25 95/20
**assumes [1]** 77/16
**assuming [1]** 107/14
**Assured [1]** 75/14
**at [83]**
**attachment [5]** 63/14 64/24 65/6 65/17 71/5
**attachments [1]** 94/14
**attention [1]** 68/21
**August [3]** 57/5 59/1 76/17
**August 17th [1]** 76/17
**AUGUST 31 [1]** 59/1
**auspices [1]** 69/16
**authorities [2]** 60/13 61/15
**authority [16]**
**available [2]** 80/3 80/7
**Avenue [2]** 58/4 58/17
**award [2]** 96/24 102/20

## B

**back [14]**
**bailed [13]**
**bailee [15]**
**bailment [11]**
**bailments [2]** 76/13 90/19
**bailor [1]** 72/20
**balance [1]** 79/16
**bank [99]**
**bank's [7]**
**Bankers [2]** 78/1 78/3
**banking [3]** 79/4 81/25 82/12
**Banking vs. Citizens' [1]** 81/25
**banks [2]** 79/5 84/9
**bar [1]** 74/18
**barred [1]** 109/2
**bars [2]** 86/6 86/7
**base [1]** 92/13
**based [3]** 92/5 92/6 92/14
**basic [1]** 85/7
**basis [3]** 91/14 102/10 106/16
**battle [1]** 87/19
**because [33]**
**become [9]**
**becomes [6]**
**before [19]**
**beginning [1]** 90/16
**behalf [2]** 59/12 79/15
**being [8]**
**belief [2]** 91/11 93/17
**Bell [1]** 60/20
**belong [6]**
**belonged [1]** 109/1
**belongs [4]** 68/12 92/4 101/25 102/1
**Bender [6]**
**Bender vs. CenTrust [2]** 61/11 71/10
**Bender's [1]** 65/1
**benefit [3]** 65/5 65/14 83/4
**beside [1]** 91/24
**better [1]** 67/23

**between [4]** 82/4 102/17 102/22 109/12
**bigger [1]** 69/22 69/24
**bills [2]** 76/25 77/4
**binding [3]** 60/14 60/14 60/15
**bit [3]** 65/19 69/24 109/5
**Black's [1]** 80/9
**blown [3]** 104/5 108/17 109/6
**blue [2]** 76/7 84/1
**BoA [1]** 89/5
**bonds [2]** 82/1 84/20
**book [1]** 73/12
**both [1]** 89/4
**bottom [2]** 60/8 97/5
**Boulevard [1]** 58/11
**box [11]**
**boxes [5]** 77/20 80/6 83/21 83/25 84/14
**branch [1]** 84/5
**breach [1]** 93/1
**Brickell [1]** 58/4
**brief [2]** 72/24 109/12
**bring [1]** 70/3
**bringing [1]** 101/23
**brings [2]** 71/8 84/22
**broad [1]** 101/12
**broader [1]** 92/20
**brought [3]** 65/12 98/21 98/21
**bunch [1]** 68/4
**burden [12]**
**Bursik [2]** 101/14 101/16
**business [6]**
**but [49]**

## C

**C-L-A-R-K-E [1]** 61/3
**California [1]** 84/14
**call [5]** 68/14 68/21 79/7 79/11 100/23
**called [1]** 79/7
**came [4]** 95/22 96/22 103/13 103/15
**Camerer [1]** 84/14
**Camerer vs [1]** 84/14
**can't [13]**
**cannot [7]**
**capacity [6]**
**capital [1]** 64/7
**car [2]** 68/11 83/9
**carefully [1]** 109/6
**Carolina [1]** 58/8
**carry [1]** 105/11
**cars [5]** 67/13 67/25 68/2 68/2 68/4
**cart [1]** 90/6
**carve [1]** 65/4
**cases [21]**
**Center [1]** 58/10
**CenTrust [5]** 61/11 64/12 64/13 64/15 71/10
**certain [5]** 64/14 68/17 85/15 87/24 96/1
**certainly [1]** 66/9
**certify [2]** 62/24 110/2
**cetera [3]** 67/2 67/7 102/7
**chance [1]** 109/15
**change [2]** 82/3 105/17
**changed [1]** 106/14
**charge [1]** 95/21
**Charlotte [1]** 58/8
**Chicago [1]** 89/3
**Circuit [13]**
**Circuit's [1]** 63/21
**circular [1]** 71/8

**citation [1]** 63/23
**cite [2]** 71/3 85/12
**cited [18]**
**cites [2]** 63/1 70/23
**Citizens' [1]** 81/25
**civil [12]**
**claim [23]**
**claimant [2]** 64/15 89/16
**claimants [1]** 82/4
**claimed [1]** 69/5
**claims [18]**
**clarifies [1]** 60/16
**Clarke [3]** 61/3 62/21 70/19
**classic [1]** 96/20
**clause [1]** 95/4
**clear [7]**
**clearly [5]** 69/3 77/22 86/3 94/3 105/25
**client [2]** 77/1 77/5
**close [5]** 108/9 108/16 109/7 109/14 109/18
**closing [1]** 78/10
**Clow [2]** 81/15 81/16
**code [1]** 59/19
**Coit [1]** 85/8
**collateral [2]** 87/25 88/1
**collected [1]** 84/19
**COLONIAL [37]**
**come [6]**
**comes [2]** 74/1 95/10
**comingled [2]** 84/18 94/2
**commingled [6]**
**committed [1]** 93/2
**common [2]** 60/3 92/18
**common-law [1]** 92/18
**company [1]** 64/13
**compelling [1]** 68/17
**complaint [5]** 60/2 60/7 66/13 91/1 92/7
**completely [1]** 95/25
**components [1]** 67/5
**comprehensive [2]** 66/24 107/24
**Comptroller [1]** 77/13
**Comptroller's [2]** 77/14 77/18
**computer [1]** 57/24
**concede [1]** 83/16
**conceded [1]** 77/6
**concerning [2]** 84/13 108/18
**concluded [1]** 109/20
**Congress [4]** 62/6 66/22 67/4 105/1
**conservator [1]** 66/2
**considered [3]** 71/13 90/15 90/15
**consigned [1]** 77/19
**consistent [1]** 84/13
**consistently [1]** 80/24
**constitutes [1]** 65/5 84/24
**constructive [12]**
**Consumer [1]** 75/12
**contents [3]** 80/6 83/13 84/2
**continue [4]** 73/7 108/7 108/8 108/21
**contract [3]** 70/20 71/13 93/1
**contractors [1]** 81/8
**contracts [3]** 70/22 71/15 103/24
**contractual [2]** 82/24 82/25
**control [9]**
**controls [2]** 60/12 82/20
**conversion [2]** 92/18 92/18
**convinced [1]** 108/4
**copies [1]** 70/3
**copy [1]** 91/17
**Corporate [1]** 58/13

**C**

corporation [8]
Corporation vs. Clarke [1] 61/3
corpus [3] 98/9 98/16 98/23
correct [6]
could [8]
Council [2] 79/3 82/19
counsel [5] 58/12 75/7 83/11 90/14
 99/17
counterclaimants [1] 63/4
country [1] 80/21
course [8]
court's [3] 60/1 68/21 85/6
courts [5] 62/9 62/12 69/1 70/14 80/21
covered [1] 88/1
create [1] 77/2
creditor [6]
creditors [5] 75/22 78/7 80/7 88/20
 89/1
criminal [3] 106/11 106/13 106/14
critical [2] 90/9 107/14
CRR [2] 58/16 110/6
Cummings [8]
Currency [1] 77/13
current [1] 106/17
custodial [8]
custodian [3] 75/25 78/18 92/5
custody [12]
customer [3] 76/20 77/20 79/15
customers [1] 68/7
customers' [2] 77/21 77/22
CV [1] 57/4

**D**

D-7126 [1] 58/14
Dadeland [1] 58/11
damages [5] 62/13 96/24 99/5 99/7
 99/9
date [3] 72/11 72/12 110/6
dated [4] 76/17 76/22 77/13 78/2
Datran [1] 58/10
day [5] 90/17 93/6 97/6 103/19 105/11
days [1] 72/4
deal [3] 70/8 70/17 71/15
dealing [2] 73/13 77/19
deals [4] 63/11 70/16 71/16 75/2
dealt [3] 64/12 70/9 70/19
debtor [2] 77/4 81/22
debtor/creditor [1] 77/4
debts [1] 80/4
decide [7]
decided [1] 61/12
decides [2] 98/4 102/12
decision [13]
declarations [1] 92/7
declare [1] 86/21
deemed [1] 90/22
defend [1] 107/17
defendant [5] 58/9 69/4 104/16 107/16
 107/22
defendant's [1] 69/8
Defendants [1] 57/8
defensive [1] 107/6
defined [1] 107/17
defines [3] 59/20 59/21 101/22
definition [6]
delineated [2] 100/10 101/21
demand [1] 92/9
demonstrated [1] 72/10

denial [1] 65/10
denied [2] 64/16 89/9
dense [1] 106/21
deny [1] 62/7
department [1] 82/12
deposit [18]
deposited [1] 90/20
depositing [1] 93/19
depository [1] 74/25
deposits [3] 70/9 71/16 71/16
deprived [1] 96/25
designated [2] 65/14 66/23
detailed [1] 108/17
determination [14]
determinations [2] 66/20 101/25
determine [8]
determines [1] 102/6
Dictionary [1] 80/10
didn't [2] 91/23 103/3
difference [5] 96/3 99/20 102/17
 102/22 103/17
different [6]
differential [1] 101/12
difficult [1] 95/18
direction [1] 63/8
disbursed [1] 95/6
discovered [1] 87/25
discuss [1] 60/25
discussed [1] 62/7
Discussion [1] 76/10
dismiss [1] 89/9
dismissed [1] 65/11
disposing [2] 65/7 93/10
disposition [1] 73/10
disputed [1] 72/21
dissipate [1] 86/2
dissolve [1] 72/24
dissolving [1] 107/6
district [13]
disturb [2] 72/18 85/21
divesting [1] 94/8
DIVISION [2] 57/3 58/13
do [33]
doctrine [1] 106/21
document [1] 83/18
documents [4] 71/22 85/24 88/1 88/5
doesn't [9]
dog [1] 61/7
dollar [4] 91/5 91/6 91/7 91/17
dollars [3] 93/6 93/7 93/11
done [10]
drain [1] 71/17
draw [1] 63/6
Drive [1] 58/14
due [3] 71/18 103/16 105/1
duties [1] 72/6

**E**

earlier [1] 108/11
early [1] 100/5
easier [1] 92/15
Eastern [3] 61/4 62/21 62/25
easy [1] 107/22
effect [3] 65/16 78/12 81/9
eight [3] 76/21 76/21 77/11
either [3] 74/13 75/23 109/13
elements [2] 106/14 108/23
Eleventh [12]
eliminated [1] 93/19
else [2] 94/20 98/7

Emory [2] 58/6 59/6
employee [3] 98/5 101/2 101/6
employees [4] 68/8 99/1 100/15 100/17
employment [3] 71/11 71/13 71/15
enacted [1] 62/6
end [7]
ended [1] 96/22
enjoin [12]
enjoined [4] 62/18 86/19 87/12 87/19
enjoining [2] 74/19 109/3
enough [1] 75/11
enter [12]
entered [8]
entitled [6]
entitlements [1] 63/18
entrusted [1] 81/2
entry [1] 66/25
envisions [1] 100/17
equitable [1] 108/12
equities [1] 77/9
equity [2] 69/7 106/7
equivalent [1] 65/16
especially [2] 101/16 105/17
Esq [6]
essentially [10]
establish [2] 105/14 108/22
established [1] 106/6
establishes [1] 90/9
estate [19]
et [3] 67/2 67/7 102/7
et cetera [3] 67/2 67/7 102/7
even [12]
event [1] 67/20
events [1] 104/16
eventually [1] 103/9
ever [2] 79/24 93/17
Everglades [1] 86/24
everybody [1] 104/22
everyone [1] 109/4
everything [4] 97/20 97/21 98/7 104/17
evidence [20]
evidentiary [3] 104/5 104/20 108/7
exact [3] 84/16 86/18 87/19
exactly [6]
Examination [2] 79/3 82/19
examine [1] 91/9
examiner [1] 95/21
example [2] 96/20 103/8
Except [2] 74/21 106/8
excuse [4] 79/12 80/23 81/16 83/5
execution [3] 63/14 64/24 71/5
exercise [3] 62/3 62/19 86/1
exercising [2] 61/24 100/20
exhaustion [2] 88/24 102/8
exhausts [1] 62/15
exhibits [1] 92/7
exist [2] 104/19 107/9
existed [1] 77/9
expedited [1] 62/24
expire [1] 66/5
expiring [1] 106/15
explain [1] 70/17
explained [2] 76/25 82/18
explanation [1] 74/8
expressly [1] 93/24
extent [2] 62/5 106/5
extinguished [1] 81/20
extreme [1] 98/2

**F**

F.2d [1] 60/21

## F

F.3d [1]  61/12
face [2]  101/5 101/6
fact [17]
fact where [1]  105/18
facts [8]
factual [2]  85/16 105/18
fail [1]  106/12
failed [14]
failure [2]  64/12 78/11
fair [1]  88/9
Fairfax [1]  58/14
fallacy [1]  90/4
false [1]  99/8
familiar [2]  85/4 85/5
family [1]  83/10
far [3]  66/9 66/9 66/9
Farrell [1]  81/5
Farrell vs. Sharon [1]  81/5
Fayette [1]  81/11
FDIC [75]
FDIC vs. Source [1]  89/4
FDIC's [6]
FDIC-87-7 [1]  76/17
FDIC-88-14 [1]  76/22
FDIC-Insured's [1]  75/15
February [1]  76/22
February 4th [1]  76/22
federal [15]
feel [1]  101/17
fellow [1]  71/11
fiduciary [2]  75/20 78/12
figure [3]  95/25 98/5 100/4
file [2]  89/7 98/8
filed [2]  60/2 79/24
filings [1]  109/18
final [4]  65/21 65/21 65/24 66/10
finally [2]  64/22 71/10
financial [7]
find [3]  85/23 87/14 95/18
finding [3]  65/21 66/19 67/8
findings [8]
fine [1]  68/12
Firm [1]  58/10
FIRREA [17]
first [13]
five [6]
FLORIDA [14]
Florida's [1]  92/19
follow [1]  108/14
following [1]  101/18
follows [2]  63/1 64/21
forced [1]  99/2
foregoing [1]  110/2
forensically [1]  91/9
form [1]  65/6
forth [6]
forward [2]  65/10 103/10
found [6]
four [3]  73/4 76/9 104/19
fours [2]  71/2 86/18
framework [2]  66/24 107/24
Francine [3]  58/16 110/5 110/6
Frank [2]  58/6 59/6
frankly [1]  103/20
free [4]  67/6 67/7 68/16 86/24
freeze [1]  69/9
Friday [3]  59/18 67/13 71/20
Friends [1]  86/24

Friends v. Everglades [1]  86/24
frozen [1]  66/9
full [3]  104/5 108/17 109/6
full-blown [3]  104/5 108/17 109/6
function [5]  61/25 100/11 101/20
  101/22 102/4
functions [2]  85/7 100/10
fund [1]  93/4
fundamental [1]  85/7
funds [11]
fungible [2]  93/21 93/24
further [3]  62/7 65/19 77/6

## G

gain [1]  74/2
GAP [3]  82/18 82/20 82/21
gave [2]  83/7 84/17
general [17]
generally [1]  80/2
get [15]
gets [4]  71/22 83/13 87/8 92/1
getting [1]  68/17
given [7]
gives [1]  74/5
giving [2]  105/4 105/8
gleaned [1]  62/5
goes [3]  61/22 90/14 96/15
gonna [1]  106/12
good [8]
goods [2]  72/2 84/25
Goodwill [1]  58/13
got [5]  64/9 71/11 76/5 86/9 86/14
gotten [3]  69/22 69/24 75/16
governmental [2]  78/22 79/4
grant [2]  66/20 69/18
granted [1]  63/7
greater [1]  81/21
Gross [7]
Gross vs. Bell [1]  60/20
Grosses [1]  61/19
Guide [1]  83/19
guides [1]  106/5

## H

Haase [1]  81/1
habeas [5]  98/8 98/16 98/23 98/24 99/3
half [1]  104/20
hand [1]  70/5
Handbook [1]  77/19
handed [1]  73/12
hands [1]  77/10
happen [1]  104/7 104/8 104/15
happened [5]  64/11 66/15 67/1 67/2
  91/22
happening [3]  68/14 96/22 104/9
happens [1]  86/19
harm [1]  106/19
haven't [4]  91/15 106/24 107/4 107/19
having [8]
he's [1]  95/24
health [1]  79/9
hear [1]  67/18
hearing [11]
held [18]
helps [1]  96/21
here's [2]  91/16 91/17
hinge [1]  62/3
history [1]  65/20
hold [4]  78/8 78/17 85/20 98/4
holder [1]  84/17

holding [4]  69/25 78/25 100/16 101/5
holds [1]  80/7
home [3]  98/8 98/10 99/10
honest [2]  99/12 106/20
Honor's [1]  67/12
Honorable [1]  57/13
horse [1]  90/7
hostage [2]  98/5 101/6
hostages [1]  101/2
hours [1]  98/11
how [6]
Hoyos [2]  58/9 59/12
hundred [5]  93/5 93/7 93/8 93/10 93/19
Hunton [2]  58/3 58/6
hypothetical [2]  93/18 98/3

## I

I'd [1]  98/10
identical [1]  87/17
identifiable [1]  69/3
identified [2]  90/18 93/4
identify [6]
III [1]  85/7
important [1]  88/15
impose [1]  65/13
imposed [1]  68/24
impress [1]  69/1
imprisonment [1]  99/8
In Re [3]  80/9 81/1 88/22
inapplicable [1]  65/2
include [1]  65/3
includes [1]  77/20
increase [1]  82/5
indicates [2]  77/22 91/1
indicating [1]  94/23
individual [1]  81/17
informal [1]  94/22
information [3]  83/18 91/11 93/16
initial [1]  73/18
initially [1]  71/9
injunction [36]
injunctions [2]  67/5 102/23
injunctive [8]
injured [1]  62/15
inquiry [1]  59/22
insolvent [1]  62/14
instance [4]  85/12 99/5 100/24 105/13
instead [1]  68/3
institution [18]
Institutions [2]  79/2 82/19
instructions [1]  79/20
Insurance [2]  58/14 59/13
insured [1]  79/5
Insured's [1]  75/15
interest [3]  67/4 72/18 81/8
interesting [1]  86/17
interfere [1]  62/2
interference [2]  63/5 67/7
interlocutory [1]  62/24
interpreted [1]  78/16
into [5]  63/20 75/4 81/12 93/20 104/1
invading [1]  66/21
investigation [1]  106/11
investigations [1]  106/14
involve [1]  103/3
involved [1]  60/23
irreparable [1]  106/19
IRS [2]  83/1 83/3
is [191]
Isani [2]  58/3 59/7

**I**
isn't [2] 76/23 98/18
issue [18]
issue's [1] 97/10
issued [1] 107/8
issues [2] 91/7 104/6
issuing [1] 106/2
items [1] 77/19
itself [2] 75/9 79/23

**J**
Jamie [2] 58/3 59/7
jewelry [1] 83/10
JOHN [1] 57/7
Jordan [2] 57/4 57/13
Jose [2] 58/9 59/11
Jr [1] 58/6
judgment [10]
judicial [1] 102/7
Judson [1] 82/7
July [1] 77/13
July 27 [1] 77/13
jumping [1] 99/24
June [1] 78/2
June 30 [1] 78/2
jurisdiction [29]
jurisdictional [2] 107/1 107/3

**K**
Kantor [1] 58/12
keep [1] 107/18
keeping [1] 98/13
kept [3] 94/21 94/24 107/16
key [2] 90/10 103/17
kind [1] 67/8
knowledge [1] 105/22
knows [1] 65/12

**L**
La [1] 81/11
lack [1] 89/10
lacks [1] 73/9
laid [1] 67/17
Lamay [1] 84/15
language [1] 68/21
later [3] 87/25 109/7 109/14
latest [1] 108/16
Laughter [1] 70/2
law [20]
laws [3] 83/1 83/3 107/25
lead [1] 59/16
least [4] 61/10 93/4 94/9 101/8
leave [1] 108/7
ledger [1] 77/23
left [1] 59/18
legal [7]
legally [1] 106/23
legitimacy [1] 62/13
legitimate [1] 62/4
length [1] 90/14
less [1] 90/3
let [8]
let's [5] 65/19 74/18 75/5 88/23 95/20
letter [2] 77/12 80/20
letters [5] 78/15 88/10 88/12 91/20 91/21
level [1] 106/10
liability [1] 79/18
light [1] 72/1

**like** [15]
likelihood [1] 106/18
likewise [1] 81/8
limitation [1] 75/2
limited [1] 74/17
line [2] 97/5 108/14
liquidate [1] 74/13
listen [1] 104/16
litany [1] 104/1
litigated [1] 64/19
litigation [6]
little [3] 65/19 69/24 109/5
LLP [3] 58/3 58/6 58/10
loan [2] 71/21 85/23
loans [1] 78/18
local [1] 84/5
long [3] 100/11 100/12 102/4
longer [2] 105/18 106/10
look [13]
looked [1] 78/16
looking [1] 105/24
lost [1] 87/18
lot [3] 67/13 89/18 108/3
Lynch [6]

**M**
makes [4] 60/9 82/13 90/12 96/11
making [4] 67/16 97/14 99/21 101/25
mandatory [3] 102/21 102/22 102/23
manner [1] 88/8
many [2] 84/9 106/25
Marcus [2] 61/14 64/16
marshaling [1] 101/23
Martin [1] 58/2
Marty [1] 59/6
materials [1] 86/13
me ---tab [1] 79/12
me --property [1] 83/5
means [2] 79/18 97/18
mechanical [1] 57/24
meet [1] 80/17
memorandum [1] 108/15
mere [1] 92/20
merely [8]
merits [1] 107/14
Merrill [6]
merry [1] 96/15
met [2] 105/14 107/4
MIAMI [6]
middle [1] 102/12
minute [1] 63/20
minutes [2] 86/10 90/1
mistake [1] 88/4
mixed [1] 68/4
modest [1] 63/5
moment [7]
MONDAY [1] 59/1
money [12]
monies [4] 89/18 91/9 91/11 95/6
monitor [1] 79/9
month [1] 104/20
moot [1] 86/21
mooted [1] 103/9
morning [1] 83/10
mortgage [4] 61/12 64/13 64/13 64/15
most [3] 85/7 98/2 102/23
motion [7]
move [1] 76/21
Mr. [13]
Mr. Bender [1] 64/15

Mr. Rojas [4] 59/16 90/1 97/17 108/1
Mr. Rojas's [1] 108/6
Mr. Steinberg [7]
must [4] 76/19 82/23 88/16 89/16

**N**
N.A [1] 57/4
name [1] 91/16
national [1] 77/14
nature [1] 77/3
nearest [1] 98/9
necessary [2] 92/17 92/17
need [5] 71/25 76/2 90/3 104/2 107/5
needs [1] 90/11
never [16]
News [1] 75/12
Next [1] 63/11
Night's [1] 75/14
nine [4] 77/12 77/17 79/12 79/13
no [56]
none [1] 80/18
nor [1] 79/17
normal [2] 102/4 104/15
North [2] 58/8 58/17
not because [1] 92/1
note [2] 64/22 86/17
notes [1] 82/9
notice [1] 66/5
number [5] 59/3 72/12 81/23 83/7 90/14
Number 09-22384 [1] 59/3

**O**
obtain [2] 72/5 87/20
obtaining [1] 73/17
obviously [1] 89/17
Office [1] 77/14
officer [1] 70/6
official [4] 58/16 93/8 95/10 110/6
oh [2] 69/22 107/18
once [11]
one-line [1] 108/14
ones [2] 60/24 103/14
operations [1] 63/6
opine [1] 76/18
opinion [9]
opinions [2] 86/21 86/24
opportunity [2] 105/4 105/8
opposed [1] 93/2
option [1] 97/1
Orange [1] 81/11
order [12]
ordered [1] 84/20
orders [1] 95/7
Ordinarily [1] 69/6
ordinary [2] 60/5 60/6
original [2] 103/7 103/8
other [14]
others [1] 103/14
otherwise [2] 62/4 74/21
ours [1] 81/20
out [16]
outset [1] 85/10
outside [4] 70/14 73/23 86/3 89/8
own [4] 60/8 76/13 85/6 106/15
owner [1] 84/21
owners [1] 78/14
ownership [2] 63/18 72/5

**P**
p.m [3] 57/6 59/1 109/20

16

# P

**PA [1]** 60/20
**page [16]**
**page 4 [1]** 68/23
**page 6 [1]** 62/11
**page five [2]** 61/18 72/24
**Page four [1]** 76/9
**page nine [1]** 79/13
**page one [1]** 73/5
**page six [1]** 73/3
**page three [1]** 73/4
**page two [3]** 60/8 73/8 73/11
**paid [2]** 70/10 98/10
**paragraph [1]** 60/9
**Parker [1]** 88/22
**parking [1]** 67/13
**part [8]**
**particular [3]** 63/3 63/4 91/6
**parties [3]** 67/20 69/5 78/19
**partner [1]** 59/12
**parts [8]**
**party [3]** 62/15 68/15 89/11
**path [1]** 96/15
**Patricia [2]** 58/2 59/7
**pay [1]** 80/8
**payment [3]** 74/23 76/25 80/3
**pending [1]** 65/15
**Pennsylvania [3]** 61/5 62/22 62/25
**pension [1]** 70/10
**people [4]** 68/16 98/7 98/13 99/9
**perceived [1]** 63/4
**perform [1]** 72/6
**performance [1]** 70/20
**performing [3]** 100/9 100/21 101/20
**perhaps [2]** 102/15 106/19
**period [2]** 104/8 104/17
**permanent [1]** 67/1
**permit [1]** 65/9
**person [2]** 68/12 95/22
**petition [1]** 98/8
**phonetic [1]** 82/7
**place [2]** 72/20 77/7
**placed [1]** 75/4
**plaintiff [13]**
**Plaza [1]** 58/7
**please [6]**
**pledged [1]** 87/24
**pointing [1]** 90/5
**Pollak [1]** 62/25
**portion [1]** 65/4
**position [13]**
**positions [1]** 105/10
**positive [1]** 107/7
**possess [1]** 72/11
**possessed [1]** 87/5
**possession [11]**
**possessory [1]** 72/17
**possibly [3]** 97/21 97/24 98/3
**potential [1]** 69/10
**potentially [1]** 97/6
**power [3]** 74/5 100/20 101/5
**powers [9]**
**preclude [1]** 65/6
**preempt [1]** 107/24
**preliminary [13]**
**present [3]** 104/5 105/4 105/9
**presented [3]** 103/20 106/9 106/25
**preserve [1]** 74/10
**preserved [1]** 69/10

**president [4]** 64/15 77/13 84/17 84/18
**prevail [1]** 66/12
**previously [1]** 60/2
**principle [1]** 99/19
**principles [1]** 106/6
**printout [2]** 61/18 68/23
**probably [1]** 90/3
**problem [5]** 90/6 91/15 103/20 104/7
104/13
**procedural [1]** 65/20
**procedure [3]** 67/17 97/2 101/18
**procedures [1]** 97/9
**proceed [2]** 66/15 74/13
**proceeding [4]** 65/23 95/3 97/2 106/9
**proceedings [4]** 57/24 62/16 109/20
110/3
**proceeds [2]** 71/21 85/24
**process [16]**
**produced [1]** 57/24
**prohibited [1]** 105/25
**prong [1]** 80/11
**prongs [2]** 80/16 80/17
**pronouncement [2]** 76/13 76/24
**pronouncements [4]** 75/9 83/16 84/8
94/23
**proper [2]** 62/3 96/24
**properly [3]** 103/11 107/14 107/17
**properties [2]** 79/21 80/24 101/24
**property [45]**
**proposition [6]**
**proscribes [1]** 79/3
**protect [1]** 64/14
**protected [1]** 89/19
**provide [1]** 78/17
**provided [4]** 71/3 72/2 74/8 74/21
**provides [1]** 64/23
**province [1]** 66/1
**provision [3]** 65/1 69/16 106/3
**provisions [3]** 59/19 101/21 106/22
**public [1]** 67/4
**publication [4]** 75/11 75/13 76/5 78/1
**publications [1]** 78/22
**purchase [1]** 77/1
**pure [1]** 106/25
**purpose [3]** 79/7 93/9 93/20
**purposes [1]** 94/7
**pursuant [1]** 69/15
**pursuing [1]** 89/12
**put [4]** 66/19 103/22 105/13 107/5
**putting [1]** 90/6

# Q

**quarterly [1]** 79/6
**question [18]**
**questions [11]**
**quite [1]** 84/24
**quote [2]** 63/17 75/18

# R

**rather [2]** 77/3 85/10
**Re [3]** 80/9 81/1 88/22
**reach [1]** 69/8
**reachable [1]** 107/14
**read [8]**
**reading [4]** 76/3 108/3 108/4
**real [4]** 60/11 87/24 87/25 91/16
**reality [2]** 66/21 68/1
**realize [1]** 74/13
**reason [4]** 65/9 69/17 73/9 92/23
**recalls [1]** 65/20

**receipt [1]** 80/22
**received [2]** 90/19 91/11
**receiver [25]**
**receiver's [1]** 73/23
**receiver.' [1]** 64/25
**receivership [32]**
**recognized [1]** 65/17
**recognizes [1]** 77/14
**record [8]**
**recorded [1]** 57/24
**records [1]** 98/6
**reference [4]** 60/9 61/6 63/17 94/14
**referenced [1]** 61/11
**referred [4]** 60/3 62/22 64/10 76/25
**referring [2]** 61/17 63/23
**refers [1]** 91/10
**reflected [1]** 79/18
**regard [3]** 67/24 67/25 99/5
**regarding [1]** 64/20
**regards [2]** 63/9 109/3
**regularly [1]** 64/19
**regulation [2]** 59/20 79/5
**related [2]** 78/22 100/8
**relationship [5]** 73/16 77/2 77/2 77/4
82/3
**release [3]** 61/20 98/25 100/14
**released [1]** 90/22
**relevance [1]** 61/9
**relevant [1]** 92/12
**relief [12]**
**remain [3]** 72/21 77/4 78/13
**remained [1]** 64/18
**remains [1]** 69/19
**remedies [1]** 67/7
**remember [1]** 86/6
**rendered [1]** 66/1
**replevin [1]** 66/12
**replies [1]** 109/17
**reply [3]** 73/5 73/8 73/11
**report [2]** 79/5 79/6
**reported [2]** 79/16 103/6
**Reporter [3]** 58/16 58/16 110/6
**reporting [2]** 79/3 79/17
**reports [4]** 79/7 79/7 79/8 79/12
**represents [1]** 77/7
**repudiate [2]** 70/21 71/15
**repudiation [1]** 103/24
**request [6]**
**requested [1]** 65/3
**require [1]** 65/13
**required [2]** 84/6 95/2
**requirement [1]** 105/19
**requiring [1]** 61/20
**res [3]** 66/10 66/18 69/2
**Resolution [1]** 61/2
**respect [10]**
**respectfully [4]** 69/14 92/24 95/15
97/25
**rest [2]** 66/7 75/14
**restraining [2]** 69/19 97/12
**restrains [1]** 102/21
**result [3]** 67/21 77/3 78/11
**retaining [1]** 97/3
**return [1]** 92/9
**returned [4]** 72/20 75/23 76/19 85/22
**review [5]** 67/19 97/7 102/7 102/11
103/19
**reviewed [1]** 80/21
**rights [4]** 63/12 74/5 74/24 77/8
**risks [1]** 106/11

**R**

**RMR [2]** 58/16 110/6
**RMR-CRR [1]** 110/6
**road [3]** 95/13 95/14 96/4
**Rojas [7]**
**Rojas's [1]** 108/6
**role [5]** 62/10 62/12 66/23 70/13 78/7
**Room [2]** 58/14 58/17
**row [1]** 98/11
**RPM [1]** 101/15
**RTC [12]**
**RTC's [4]** 61/20 63/5 63/9 89/9
**Ruiz [1]** 85/5
**rule [2]** 69/7 70/13
**ruled [2]** 70/12 89/13
**rules [1]** 103/25
**ruling [1]** 108/18
**running [1]** 68/16

**S**

**SA [1]** 60/20
**safe [15]**
**safekeeping [5]** 76/18 77/15 77/21 78/9 79/15
**safety [2]** 83/12 83/21
**sale [1]** 70/20
**Salopek [3]** 58/16 110/5 110/6
**same [6]**
**satisfied [1]** 67/20
**satisfy [2]** 69/10 95/19
**Savings [2]** 60/20 84/15
**say [17]**
**saying [9]**
**says [19]**
**scheme [1]** 62/6
**scope [1]** 61/23
**Scott [2]** 80/13 87/17
**Scottsdale [1]** 81/8
**Season's [1]** 88/24
**seated [1]** 59/2
**second [1]** 84/22
**section [7]**
**Section 1821 [2]** 63/11 64/23
**Section 5-8A-25 [1]** 82/13
**secured [1]** 78/19
**securities [4]** 75/19 76/18 77/1 79/14
**security [1]** 70/6
**see [9]**
**seek [2]** 61/19 65/13
**seeking [2]** 69/5 74/24
**segregate [1]** 92/9
**segregated [17]**
**segregation [2]** 92/17 93/19
**Seitz [1]** 84/15
**self [2]** 66/5 106/15
**self-expire [1]** 66/5
**self-expiring [1]** 106/15
**separate [3]** 67/18 102/9 102/10
**separated [1]** 68/3
**sequence [2]** 90/10 102/2
**served [1]** 67/6
**services [1]** 77/20
**set [9]**
**settled [2]** 68/25 87/21
**settles [1]** 86/19
**seven [2]** 76/16 76/20
**shall [3]** 66/1 74/22 94/14
**Sharon [1]** 81/5
**Sharpe [3]** 73/22 103/7 103/11

**sheet [1]** 79/17
**short [2]** 66/5 108/20
**short-term [1]** 66/5
**shot [1]** 100/6
**should [12]**
**show [2]** 69/13 95/5
**showing [2]** 106/18 109/1
**sic [8]**
**side [1]** 109/13
**significant [1]** 107/12
**similar [3]** 84/8 87/18 87/23
**simple [2]** 71/4 91/16
**simply [2]** 92/15 108/13
**Simultaneous [1]** 109/17
**since [2]** 59/22 75/17 86/4
**single [1]** 98/5
**situation [4]** 71/2 86/18 87/18 89/17
**six [3]** 73/3 75/10 76/4
**skipping [1]** 69/6
**sleep [2]** 75/14 75/17
**slowly [1]** 60/18
**Small [1]** 64/7
**solely [1]** 92/6
**somebody [1]** 68/10
**somehow [1]** 68/3
**someone [2]** 92/4 93/5
**something [9]**
**sorry [2]** 64/1 101/4
**sort [2]** 68/10 81/15
**sorts [2]** 94/23 103/24
**sought [2]** 63/3 63/7
**Source [1]** 89/4
**South [2]** 58/7 58/11
**SOUTHERN [2]** 57/2 61/14
**speak [1]** 99/17
**special [2]** 71/16 98/17
**specially [1]** 90/20
**specific [11]**
**specifically [22]**
**specifies [1]** 63/1
**spoke [1]** 76/23
**stage [3]** 100/5 103/17 103/23
**standardized [1]** 79/3
**standards [1]** 79/4
**stands [1]** 77/6
**Stanley [1]** 61/14
**start [3]** 75/5 85/9 108/8
**started [1]** 75/17
**state [5]** 81/24 81/25 82/11 106/17 107/24
**statement [1]** 91/18
**states [5]** 57/1 57/14 58/17 71/14 78/3
**statute [1]**
**statutory [9]**
**stays [1]** 103/23
**Steel [1]** 81/5
**Steinberg [1]**
**stenography [1]** 57/24
**stepped [2]** 67/3 67/3
**steps [2]** 66/14 107/23
**still [4]** 97/6 102/24 104/4 108/6
**sting [1]** 63/6
**stored [1]** 68/9
**strangely [1]** 75/11
**Street [1]** 58/7
**stronger [1]** 79/23
**stuck [1]** 93/8
**subject [8]**
**submit [2]** 69/14 109/11
**submitted [3]** 66/6 91/20 92/8

**subpoenaed [1]** 95/20
**subsection [3]** 61/8 63/13 74/22
**Subsection C [2]** 61/8 63/13
**subsections [1]** 61/8
**subsequent [1]** 62/24
**substantial [2]** 106/11 106/18
**success [1]** 106/18
**succession [1]** 82/14
**such [9]**
**sufficient [1]** 108/22
**suggest [3]** 78/25 79/2 85/18
**suit [1]** 79/24
**Suite [3]** 58/4 58/7 58/10
**sum [1]** 90/4
**summed [1]** 81/15
**Summer [1]** 75/12
**Superintendent [1]** 81/24
**supervision [1]** 87/13
**supplemental [1]** 109/12
**supposed [12]**
**Supreme [3]** 85/1 85/5 85/8
**sure [3]** 63/23 92/17 106/21
**Susan [1]** 58/12 59/13

**T**

**tab [38]**
**tabs [1]** 90/15
**taken [2]** 73/7 82/1
**taking [1]** 86/1
**talk [2]** 61/22 65/19
**talked [3]** 67/12 83/9 83/10
**talking [7]**
**talks [2]** 81/25 94/15
**tell [3]** 60/24 72/24 76/2
**telling [1]** 108/14
**temporarily [7]**
**temporary [7]**
**ten [1]** 77/18
**term [3]** 59/20 66/5 97/18
**terminate [1]** 69/18
**terminated [5]** 71/11 72/7 72/10 79/24 88/13
**test [3]** 80/11 80/17 80/17
**testified [1]** 95/22
**testifies [1]** 95/10
**theft [12]**
**theirs [2]** 72/19 87/20
**theory [3]** 92/14 92/16 92/16
**therefore [1]** 107/19
**they're [5]** 67/14 78/25 84/13 91/12 104/2
**they've [2]** 93/16 94/25
**thing [7]**
**things [3]** 80/6 104/1 104/2
**Third [3]** 60/16 60/21 62/23
**this [62]**
**though [3]** 88/4 98/14 101/11
**thought [1]** 92/15
**thousand [5]** 93/6 93/7 93/8 93/10 93/20
**three [12]**
**three-prong [1]** 80/11
**threshold [4]** 59/21 85/2 101/4 101/9
**through [10]**
**throughout [1]** 80/21
**Thursday [4]** 108/10 108/17 109/7 109/12
**tied [1]** 63/20
**time [12]**
**times [1]** 103/24

**T**

title [8]
today [3]  95/22 103/15 106/1
together [3]  68/4 68/10 104/17
told [1]  83/11
tomorrow [3]  108/8 109/15 109/18
too [2]  61/9 98/21
top [1]  60/8
tort [1]  93/2
totally [1]  99/14
trace [1]  91/7
traced [2]  69/4 90/17
transaction [1]  84/7
transcript [3]  57/12 57/24 110/2
transfer [2]  72/3 74/15
transferred [1]  72/9
transfers [1]  83/4
treasury [2]  76/25 77/4
treatment [2]  82/17 82/18
trial [2]  104/6 108/8
TRO [13]
trust [19]
trust,' [1]  65/3
trustee [1]  75/25
trying [5]  87/20 95/17 95/18 100/4
 107/2
Tryon [1]  58/7
turn [2]  84/20 92/4
turned [1]  94/21
two [15]
two-week [2]  104/8 104/17
type [3]  66/12 97/2 97/11
types [1]  78/3

**U**

U.S. [2]  85/5 85/8
U.S. Supreme [1]  85/8
U.S. vs [1]  85/5
U.S.C [1]  64/22
U.S.C. [5]  61/7 63/24 64/4 71/4 74/2
ultimate [4]  96/4 96/25 99/25 108/18
ultimately [3]  67/9 67/19 84/20
unappealable [3]  65/21 65/25 66/10
underlying [5]  69/9 87/6 87/22 88/5
 89/14
understand [5]  93/14 97/1 97/16 105/2
 108/1
understanding [4]  60/5 60/6 83/11
 107/13
undisputed [2]  72/15 72/21
unfortunately [1]  86/15
Unit [1]  58/13
UNITED [3]  57/1 57/14 58/17
universe [1]  67/11
unjust [1]  82/4
unlawful [2]  97/8 101/17
unrelated [1]  69/8
unreported [1]  61/4
until [2]  67/1 98/5
up [6]
upheld [1]  65/10
upon [7]
use [2]  77/17 108/12
used [1]  80/11
uses [1]  97/17
usual [1]  84/4

**V**

v. [1]  86/24

**VA** [1]  58/15
vacated [2]  86/24 87/22
valuables [1]  77/21
value [2]  71/13 86/25
vary [1]  60/5
venue [1]  97/4
versus [1]  102/20
view [3]  62/3 63/6 101/19
violation [1]  93/2
VOLUME [1]  57/16
vs. [9]

**W**

waive [1]  107/2
want [14]
wanted [2]  71/11 87/4
warehouse [1]  68/9
Warren [1]  82/7
Warren vs. Judson [1]  82/7
Washington [1]  80/9
we'd [1]  104/22
we'll [2]  70/17 80/5
we're [18]
we've [8]
website [1]  83/18
week [2]  104/8 104/17
weeks [1]  104/19
weren't [3]  72/19 91/13 91/14
West [1]  81/11
Westlaw [3]  61/18 62/11 68/23
what's [4]  90/9 98/6 102/17 104/8
whatever [4]  69/18 101/24 105/3 105/7
whatsoever [2]  94/18 95/8
whether [25]
while [2]  65/1 86/20
Whitaker [1]  85/13
who's [2]  67/9 95/21
whole [4]  67/17 97/7 98/19 104/1
whose [1]  81/18
Williams [2]  58/3 58/6
wish [3]  105/5 105/9 109/13
withdrawn [1]  80/14
WL [1]  61/4
word [2]  63/18 97/17
words [2]  77/8 106/10
work [1]  99/2
working [1]  98/11
worth [3]  86/25 105/4 105/7
would [44]
wouldn't [2]  68/2 100/14
writ [2]  98/8 98/17
written [1]  108/17
wrong [2]  101/17 101/18

**Y**

yeah [4]  67/13 83/5 91/15 104/21
yearly [1]  79/6
years [1]  84/9
yet [1]  69/14
you [123]
you'd [1]  90/1
you'll [1]  83/15
you're [8]
you've [5]  78/16 83/9 85/18 86/9 99/24